UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CAPITOL RECORDS, LLC, a Delaware limited liability company; CAROLINE RECORDS, INC., a New York Corporation; VIRGIN RECORDS AMERICA, INC., a California Corporation, <br><br> Plaintiffs, <br><br> v. <br><br> VIMEO, LLC d/b/a VIMEO.COM, a Delaware Limited Liability Company; CONNECTED VENTURES, LLC, a Delaware Limited Liability Company, and DOES 1-20, inclusive, <br><br> Defendants. | CASE NOS.   09 CV 10101 (RA) <br> 09 CV 10105 (RA) <br><br> **PLAINTIFFS' OPPOSITION TO VIMEO'S MOTION TO DISMISS CAPITOL RECORDS' UNFAIR COMPETITION CLAIMS (COUNT VI)** |
| EMI BLACKWOOD MUSIC, INC., a Connecticut Corporation; EMI APRIL MUSIC, INC., a Connecticut Corporation; EMI VIRGIN MUSIC, INC., a New York Corporation; COLGEMS-EMI MUSIC, INC., a Delaware Corporation; EMI VIRGIN SONGS, INC., a New York Corporation; EMI GOLD HORIZON MUSIC CORP., a New York Corporation; EMI U CATALOG, INC., a New York Corporation; EMI UNART CATALOG INC., a New York Corporation; JOBETE MUSIC CO., INC., a Michigan Corporation; and STONE DIAMOND MUSIC CORPORATION, a Michigan Corporation, <br><br> Plaintiffs, <br><br> v. <br><br> VIMEO, LLC d/b/a VIMEO.COM, a Delaware Limited Liability Company; CONNECTED VENTURES, LLC, a Delaware Limited Liability Company, and DOES 1-20, inclusive, <br><br> Defendants. | |

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION AND SUMMARY OF ARGUMENT ................................................. 1

II.   THE UNFAIR COMPETITION CLAIMS ARE NOT SUBJECT TO THE
      DIGITAL MILLENNIUM COPYRIGHT ACT ("DMCA") ............................................ 3

      A.    Plaintiffs' Unfair Competition Claim Is Not A "Copyright Claim." ...................... 3

      B.    The Court of Appeals Did Not Hold That Unfair Competition Claims Are
            Subject To The DMCA. ........................................................................................ 5

      C.    The "Extra Element" Test Is Irrelevant To Pre-72 Recordings. ............................ 9

III.  THE CDA DOES NOT IMMUNIZE VIMEO FROM STATE LAW CLAIMS FOR
      UNFAIR COMPETITION ................................................................................................ 10

IV.   PLAINTIFFS HAVE ADEQUATELY PLEADED UNFAIR COMPETITION ............. 15

V.    CONCLUSION ................................................................................................................. 21

# **TABLE OF AUTHORITIES**

**Page(s)**

### CASES

*Almeida v. Amazon.com, Inc.*,
    456 F.3d 1316 (11th Cir. 2006) ...........................................14

*ALS Scan, Inc. v. RemarQ Cmtys., Inc.*,
    239 F.3d 619 (4th Cir. 2001) ...........................................8

*Apple Corps., Ltd. v. Adirondack Group*,
    124 Misc. 2d. 351, 476 N.Y.S.2d. 716 (Sup. Ct., N.Y. Co., 1983) ........................................20

*Arista Records LLC v. Lime Grp LLC*,
    715 F. Supp. 2d 481 (S.D.N.Y. 2010)...........................................4

*Atl. Recording Corp. v. Project Playlist, Inc.*,
    603 F. Supp. 2d 690 (S.D.N.Y. 2009)...........................................4, 11, 12, 13, 14, 15

*Capitol Records, Inc. v. Greatest Records*,
    43 Misc. 2d 878, 252 N.Y.S. 2d 553 (Sup. Ct., N.Y. Co. 1964) ...........................................4

*Capitol Records, Inc. v. Naxos of Amer., Inc.*,
    4 N.Y. 3d 540, 830 N.E.2d 25 (2005)...........................................3, 4, 5, 6, 15

*Capitol Records, Inc. v. Wings Digital Corp.*,
    218 F. Supp. 2d 280 (E.D.N.Y. 2002) ...........................................20

*Capitol Records, LLC v. Vimeo, LLC*,
    826 F.3d 78 (2d Cir. 2016)...........................................1, 6, 7

*Chambers v. Time Warner*,
    282 F.3d 147 (2d. Cir. 2002)...........................................15

*Cleveland v. North Am. Van Lines*,
    1992 U.S. Dist. LEXIS 1635 (N.D.N.Y. Feb. 14, 1992) ...........................................20

*Dior v. Milton*,
    9 Misc. 2d 425, 155 N.Y.S.2d 443 (Sup. Ct. N.Y. Co.) ...........................................16

*Doe v. Friendfinder Network, Inc.*,
    540 F. Supp. 2d 288 (D.N.H. 2008)...........................................10, 11, 13

*EMI Records Ltd. v. Premise Media Corp. L.P.*,
    2008 N.Y. Misc. LEXIS 7485 (Sup. Ct., N.Y. Co., 2008) ...........................................19

*Estate of Hemingway v. Random House, Inc.*,
    23 N.Y.2d 341 (1968) ...........................................5

**TABLE OF AUTHORITIES**
<u>(continued)</u>

<u>Page(s)</u>

*Firma Melodiya v. ZYX Music, GmbH*,
    882 F. Supp. 1306 (S.D.N.Y. 1995)........................................................................4

*Fustok v. Conticommodity Services, Inc.*,
    103 F.R.D. 601 (S.D.N.Y. 1984) ...........................................................................21

*George Nelson Found. v. Modernica, Inc.*,
    12 F. Supp. 3d 635, 653 (S.D.N.Y. 2014)..............................................................16

*Gilliam v. ABC*,
    538 F.2d. 14 (2d Cir. 1976)....................................................................................20

*Gregory v. Daly*,
    243 F.3d 687 (2d Cir. 2001)...................................................................................15

*Grewal v. Cuneo*,
    2015 U.S. Dist. LEXIS 87755 (S.D.N.Y. July 7, 2015) ..........................................3

*Gucci Amer., Inc. v. Hall & Assocs.*,
    135 F. Supp. 2d 409 (S.D.N.Y. 2001)...................................................................11

*Hall v. Bed Bath & Beyond, Inc.*,
    705 F.3d 1357 (Fed Cir. 2013)..............................................................................10

*Krasnyi Oktyabr, Inc. v. Trilini Imps.*,
    2007 U.S. Dist. LEXIS 23733 (E.D.N.Y. Mar. 30, 2007)....................................16

*Metropolitan Opera Ass'n v. Wagner-Nichols Recorder Corp.*,
    199 Misc. 786, 101 N.Y.S.2d 483 (Sup. Ct., N.Y. Co., 1950) .........................15, 19

*Michele Pommier Models v. Men Women NY Model Mgmnt.*,
    1997 U.S. Dist. LEXIS 18294 (S.D.N.Y. Nov. 17, 1997)..................................3, 19

*Murawski v. Pataki*,
    514 F. Supp. 2d 577 (S.D.N.Y. 2007)...................................................................11

*New Eng. Ins. Co. v. Healthcare Underwriters Mut. Ins. Co.*,
    352 F.3d 599 (2d Cir. 2003)....................................................................................8

*New York Racing Ass'n v. Nassau Regional Off-Track Betting Corp.*,
    29 Misc. 3d 539, 909 N.Y.S.2d 866 (Sup. Ct., Nassau Co. 2010).....................3, 20

*Ohio State Univ. v. Skreened Ltd.*,
    16 F. Supp. 3d 905, 918 (S. D. Ohio 2014) ..........................................................11

# TABLE OF AUTHORITIES
## (continued)

Page(s)

*Perfect 10, Inc. v. CCBill, LLC*,
    488 F.3d 1102 (9th Cir. 2007) ...................................................................11, 12, 13

*Roy Exp. Co. v. CBS*,
    672 F.2d 1095 (2d Cir. 1982)............................................................................10, 15

*Roy Exp. Co. v. CBS*,
    503 F. Supp. 1137 (S.D.N.Y. 1980)..........................................................................4

*Rustropovich v. Koch Int'l Corp.*,
    1995 U.S. Dist. LEXIS 2785 (S.D.N.Y. Mar. 7, 1995) ...........................................4

*Sompo Japan Ins. Co. v. Norfolk S. Ry.*,
    762 F.3d 165 (2d Cir. 2014)......................................................................................9

*Stichting Ter Behartiging v. Schrieber*,
    407 F.3d 34 (2d Cir. 2005).........................................................................................8

*Telecom. Int'l. Am., Ltd. v. AT&T Corp.*,
    280 F.3d 175 (2d Cir. 2001).....................................................................................19

*UMG Recs., Inc. v. Escape Media Group, Inc.*,
    37 Misc. 3d 208, 948 N.Y.S.2d 881 (Sup. Ct., N.Y. Co., 2012) ......................11, 13

*United States v. Rainbow Rugs*,
    838 F. Supp. 11 (D. Me 1993) .................................................................................13

*Universal Commun. Sys. v. Lycos, Inc.*,
    478 F.3d 413 (1st Cir. 2007)....................................................................................11

*Xerox Corp. v. Ariz. Digital Prods.*,
    2009 U.S. Dist. LEXIS 84015 (W.D.N.Y. Sept. 15, 2009) ....................................14

### STATUTES

17 U.S.C.
    § 301(c) ..................................................................................................................8, 9
    § 512........................................................................................................................8

47 U.S.C.
    § 230.......................................................................................................................12
    § 230(c) ..................................................................................................................11
    § 230(c)(1) .............................................................................................................10
    § 230(e) ..............................................................................................................12, 13

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

§ 230(e)(2) .................................................................................10, 11, 12, 13, 14
§ 230(f).............................................................................................................10

### OTHER AUTHORITIES

Black's Law Dictionary 881 (9th ed.).............................................................14

3 P. Goldstein, *Copyright* (3d ed. 2015) § 17.5.2 ...........................................4

1 *Nimmer On Copyright*, § 1.01[B][2] (2010) .................................................9

13 *Nimmer On Copyright II* (2017) ................................................................5

B. Ringer, *Copyright Law Revision Study 26:*
   *The Unauthorized Duplication of Sound Recordings* (1957) ....................5

## I.     INTRODUCTION AND SUMMARY OF ARGUMENT

Vimeo's motion to dismiss the unfair competition claim should be denied because each of the assumptions that underpin its arguments is unsupportable:[1]

1.     Copyright claims and unfair competition claims are "not synonymous" but are separate and independent claims under New York law.  Common law copyright claims, like federal copyright claims, are strict liability claims based *solely* on unauthorized use (*e.g.,* copying, distribution) of "copyrighted works."  However, claims for unfair competition, as alleged here, unlike common law copyright claims *and* federal copyright claims, require specific conduct – bad faith activity and competition in the marketplace, or similar actions designed for commercial benefit or deception of the public.  For that reason, unfair competition claims and common law copyright claims, particularly those involving Pre-72 Recordings, are not duplicative and frequently have been pleaded concurrently.

2.     The Second Circuit did not hold that unfair competition claims concerning Pre-72 Recordings are governed by the DMCA.  Rather, the issue briefed by the parties and the Court's analysis and rationale was based on its conclusion that "infringement of copyright" in the DMCA referred to both state and federal "copyright claims."  There is no reference in the DMCA – or, for that matter, in the Court of Appeals opinion – to "unfair competition."  The answer to the certified question speaks for itself: "[o]n the first question – whether the safe harbor protects service providers from infringement liability under state *copyright laws* – we conclude it does . . . ."  *Capitol Records, LLC v. Vimeo, LLC,* 826 F.3d 78, 82 (2d Cir. 2016) (emphasis added).

---

[1]  As used herein, "Vimeo" refers to Defendants and "Plaintiffs" refers to the Plaintiff Record Companies.  The unfair competition claims brought by Plaintiffs (Amended Complaint, Schedule B) embody 233 recordings (332 claims) "fixed" prior to February 15, 1972 ("Pre-72 Recordings").  Forty-seven of these Pre-72 Recordings (59 claims) also are subject to Plaintiffs' brief on red-flag knowledge.

3.      The policy concerns enunciated by the Court of Appeals with respect to common law copyright do not apply to the unfair competition claim here.  The heart of the DMCA's policy is that service providers *acting in good faith* should not be subject to strict liability simply because third parties provide copyrighted material, but those service providers should not be immune from liability for their own acts or if they are not "innocent service providers." Exempting common law copyright claims from the DMCA would, as the Court of Appeals saw it, impose on innocent service providers strict liability for Pre-72 Recordings while the DMCA would immunize innocent service providers from exactly the same conduct with respect to federally copyrighted recordings.  On the other hand, the unfair competition claim here is based on the service provider's own bad faith, not innocent conduct, and on competition in the marketplace or similar actions designed for commercial benefit or deception of the public.  That type of conduct, as it applies to Pre-72 Recordings, has been left exclusively to the states to regulate.

4.      The issue of copyright pre-emption is a red herring.  Unlike works that are subject to federal copyright, by statute Pre-72 Recordings are not subject to pre-emption.  Therefore, no "extra element" as articulated in federal copyright law is necessary to state an unfair competition claim for Pre-72 Recordings.

5.      The Communications Decency Act ("CDA") does not provide immunity from any state law "pertaining to intellectual property," including the unfair competition claim alleged here.

6.      Plaintiffs have pleaded the elements of an unfair competition claim relating to Pre-72 Recordings.  Alternatively, given the status of this case and the discovery that already has been taken, Vimeo is well-aware of the conduct involved.  Plaintiffs should be given leave to amend to allege any additional clarifying facts to the extent the Court deems it necessary.

In sum, Vimeo's motion attempts to expand, to different claims with different conduct, the "tiny exception" for common law copyright claims that the Second Circuit carved out from exclusive state protection of Pre-72 Recordings.  Dismissal of Plaintiffs' unfair competition claim is not supported by the Court of Appeals opinion, by the language or the policy of the DMCA, or by CDA.

## II.   THE UNFAIR COMPETITION CLAIMS ARE NOT SUBJECT TO THE DIGITAL MILLENNIUM COPYRIGHT ACT ("DMCA")

A.   Plaintiffs' Unfair Competition Claim Is Not A "Copyright Claim."

In *Capitol Records, Inc. v. Naxos of Amer., Inc.*, 4 N.Y. 3d 540, 830 N.E.2d 25 (2005), in a case involving Pre-72 Recordings and in response to a certified question, the New York Court of Appeals held that state law unfair competition claims are different than and distinguishable from common law copyright claims:

> Copyright infringement is distinguishable from unfair competition, which in addition to unauthorized copying and distribution requires competition in the marketplace *or* similar actions designed for commercial benefit *or* deception of the public. In response to the second sub-question, we hold that the causes of action for copyright infringement and unfair competition are not synonymous under New York law.

*Id.* at 563-64 (internal citations omitted) (emphasis added).

Many courts, including this Court, have repeated the proposition that "the essence of an unfair competition claim under New York law is that the defendant misappropriated the labors and expenditures of another. . . . Central to this notion is some element of bad faith."  *Grewal v. Cuneo*, 2015 U.S. Dist. LEXIS 87755, *44 (S.D.N.Y. July 7, 2015) (*citing Saratoga Vichy Spring Co. v. Lehman*, 625 F.2d 1037, 1044 (2d Cir. 1980)); *see, e.g., Michele Pommier Models v. Men Women NY Model Mgmnt.,*1997 U.S. Dist. LEXIS 18294, *11-12 (S.D.N.Y. Nov. 17, 1997) (same); *New York Racing Ass'n v. Nassau Regional Off-Track Betting Corp.*, 29 Misc.

3d 539, 546, 909 N.Y.S.2d 866 (Sup. Ct., Nassau Co. 2010) ("To sustain a cause of action

sounding in unfair competition, the plaintiff must show that defendants misappropriated [its

product], labors, skills, expenditures, or good will, and displayed some element of bad faith in

doing so.").  On the other hand, a claim based on common law copyright in Pre-72 Recordings,

like a federal copyright claim, requires only unauthorized use, not bad faith conduct and

competition in the marketplace or commercial benefit or deceptive conduct.  *Naxos,* 4 N.Y.3d at

563-64; *see* 3 P. Goldstein, *Copyright* (3d ed. 2015) § 17.5.2 at 17:52.3 (the elements of a

common law copyright claim are that the copyright owner "owns the copyright in issue and that

the defendant has infringed the copyright").  The difference between copyright claims and New

York unfair competition claims was summarized in *Roy Exp. Co. v. CBS*, 503 F. Supp. 1137,

1151-52 (S.D.N.Y. 1980), *aff'd. on other grounds*, 672 F.2d 1095, 1107 (2d Cir. 1982):

> The federal copyright statute protects copyrighted works against
> mere copying, even when done in good faith and even when not
> done to obtain a competitive advantage. . . .  The New York law of
> unfair competition, on the other hand, "bans any form of
> commercial immorality". . . . A cause of action for unfair
> competition requires unfairness and an unjustifiable attempt to
> profit from another's expenditure of time, labor and talent,
> elements which are not required to state a cause of  action under
> the copyright law.

The dichotomy made clear in *Naxos* is mirrored in the cases that allege separate Pre-72

Recording claims for unfair competition *and* for common law copyright.  *See, e.g., Atl.

Recording Corp. v. Project Playlist*, *Inc.,* 603 F. Supp. 2d 690 (S.D.N.Y. 2009); *Firma

Melodiya v. ZYX Music, GmbH,* 882 F. Supp. 1306 (S.D.N.Y. 1995); *Rustropovich v. Koch Int'l

Corp.*, 1995 U.S. Dist. LEXIS 2785 (S.D.N.Y. Mar. 7, 1995); *Arista Records LLC v. Lime Grp

LLC,* 715 F. Supp. 2d 481 (S.D.N.Y. 2010); *Capitol Records, Inc. v. Greatest Records*, 43 Misc.

2d 878, 252 N.Y.S. 2d 553 (Sup. Ct., N.Y. Co. 1964);[2] *see also* B. Ringer, *Copyright Law Revision Study 26: The Unauthorized Duplication of Sound Recordings* (1957), available online (via Lexis) at 13 *Nimmer On Copyright II* (2017) (a study by the Register of Copyrights as a prelude to the 1976 Copyright Act stated: "It is entirely possible for the same person to assert two separate common law property rights in a sound recordings – both a common law copyright and a right against unfair competition."). Thus, the catch phrase of Vimeo's motion – that Plaintiffs seek to dress the "exact same" common law copyright claim in the garb of unfair competition (Motion at 1, 9) – plainly is wrong.

     B.     <u>The Court of Appeals Did Not Hold That Unfair Competition Claims Are Subject To The DMCA.</u>

In line with the holding in *Naxos* that "the causes of action for copyright infringement and unfair competition are not synonymous under New York law," it is clear that the Second Circuit dealt expressly and solely with common law *copyright* claims. The Court never mentioned unfair competition or the elements of an unfair competition claim. The rationale and reasoning of the Circuit leaves available other state law claims for Pre-72 Recordings, just as Vimeo conceded at a time when it served its purpose do so. When the Record Companies asserted in their appeal brief that the issue before the Court of Appeals ignored other state law claims, including specifically unfair competition claims, Vimeo responded:

> Plaintiffs claim (Br. 28-29) that providing safe harbor against state law copyright claims based on pre-1972 sound recordings "ignores the existence of state law claims for unfair competition,

---

[2]   Vimeo does not even refer to the seminal *Naxos* case or any of the other cases cited above but relies on – and misreads – an almost 50 year-old case that did not deal with Pre-72 Recordings. Motion at 2, 11, *citing Estate of Hemingway v. Random House, Inc.*, 23 N.Y.2d 341 (1968). In that case, the common law copyright claim and the unfair competition claim failed for the reason that both were contingent on the plaintiff's claimed ownership of oral conversations which were not protectable under any theory. *Id.* at 348-350. Thus, as the Court held, "[t]he reasoning which denies [the plaintiffs] protection or recovery on theories of common law copyright [*i.e.*, no rights in oral conversations] also operates to deny recovery on any theory of unfair competition." *Id.* at 350. The court in *Estate of Hemingway* never stated a blanket rule that common law copyright claims and unfair competition claims are identical or duplicative, no such rule exists, and that is not the case here.

> conversion, and misappropriation" leading to the result that
> "common law copyright claims would be limited by the DMCA,
> but other state common law claims would not."  This a red herring.
> The entire Copyright Act – including the DMCA – deals only with
> *copyright* claims; unfair competition conversion and
> misappropriation are different torts with different elements.
> (emphasis by Vimeo).

Vimeo Reply Brief (No. 14-1048, ECF 192) at 46. [3]

Consistent with its position, the linchpin of Vimeo's argument to the Court of Appeals was that the words "infringement of copyright" as used in the DMCA implicated both federal *copyright* and common law *copyright*.  *See, e.g.,* Vimeo Brief (No. 14-1048, ECF 190) at 36-37 (emphasizing and pointing the Court of Appeals to the language "infringement of copyright" in the DMCA, equating it to common law copyright, and citing to the discussion in *Naxos* concerning common law copyright protection); *id.* at 36 ("Plaintiffs' claims 'for common law *copyright infringement*' are subject to the DMCA's safe harbors.") (emphasis by Vimeo). Vimeo concluded:  "Vimeo is therefore entitled to DMCA safe harbor with respect to Plaintiffs' common-law 'copyright infringement' claims."  *Id.* at 38.  Vimeo even identifies *Count V* – the count that pleads a claim for common law copyright infringement – as the claim that is the subject of its argument on appeal.  *Id.* ("It is on this basis that Plaintiffs plead claims for common law *copyright infringement*. . . .  (Count V)." (emphasis by Vimeo).  As referenced in the title of Vimeo's motion, *Count VI* alleges the claim for unfair competition.

The Court of Appeals agreed with Vimeo that common law "copyright" claims are covered by the DMCA.  826 F.3d at 87-93.  (This opposition does not need to re-litigate that issue.)  The sole, repeated textual underpinning of the Court's reasoning was that the use in the

---

[3]   Vimeo tries to sidestep this admission by pointing to the fact that in a footnote to this statement it stated: "Congress already allows state-law claims, such as unfair competition and conversion, to be brought concurrently with federal copyright claims, belying Plaintiffs' claim (BR 29) of 'inconsistent treatment.'"  Vimeo then cited a case involving copyrightable computer programs, not uncopyrightable Pre-72 Recordings.  It cannot avoid the admission that "the entire Copyright Act – including the DMCA – deals only with *copyright* claims."

DMCA of the specific term "infringement of copyright" referred to both state and federal copyright.  *See, e.g., id*. at 89 ("a *literal and natural reading* of the text of § 512(c) leads to the conclusion that its use of the phrase 'infringement of copyright' does include infringement of state laws of copyright.  One who has been found liable for infringement of copyright under state laws has indisputably been found 'liable for infringement of copyright.'") (emphasis added); *id.* at 90 ("we find no reason to doubt that § 512(c) protects service providers from liability for infringement of all copyrights established under the laws of the United States, regardless whether established by federal law or by local law"); *id.* at 93 ("we conclude that the safe harbor established by § 512(c) protects a qualifying service provider from liability for infringement of copyright under state law.").  That equivalency between common law and federal copyright claims, basic to the Court of Appeals' reasoning, also was expressed in its conclusion.  *Id.* at 99 (DMCA "protects service providers against liability for copyright infringement under state law with respect to pre-1972 sound recordings, as well as under the federal copyright law for post-1972 recordings.").

The standard for imposing liability on service providers also is different between "copyright claims" and unfair competition claims.  As the second Circuit has construed the DMCA, a service provider may be exposed to liability for infringement of copyright when it has actual or red-flag knowledge of "specific infringing activity" or when it receives a financial benefit from infringing activity that it has the right and ability to control.  A claim for unfair competition, and the state law policy decision to provide protection from such unfair competition, operates under a wholly different standard.  Unfair competition is not centered on the service provider's unique type of specialized DMCA "specific" knowledge but on a distinctly different element of bad faith conduct and commercial business conduct.  Vimeo essentially concedes this "critical" distinction: "as applicable here, requiring a showing of bad faith is

critical to avoid imposing significant liability on innocent service providers and significant costs

on online platforms that host user generated content." Motion at 16. State unfair competition

claims of the type alleged here redress bad-faith, culpable conduct, not the conduct of "innocent"

service providers the DMCA was designed to protect. *ALS Scan, Inc. v. RemarQ Cmtys., Inc.*,

239 F.3d 619, 625 (4th Cir. 2001).

The Court of Appeals intended to create a "tiny exception" to § 301(c) for common law

copyright claims precisely because it determined they were essentially the same, both in

language and elements, as federal copyright claims, and therefore should be treated the same. To

apply the DMCA to conduct that is not the same as copyright infringement, that is not pre-

empted by federal law, and that the state has long determined to be culpable, greatly expands that

"tiny exception" *and* is contrary to the federal policy expressed in section 301(c).[4]

It is apparent from the foregoing that the law of the case doctrine does not apply to the

unfair competition claim. Vimeo's argument that it does assumes that the Court of Appeals

considered and decided the issue presented by this motion. As discussed above, it did not; the

Court's language, reasoning, and conclusions described a common law copyright claim, not the

separate unfair competition claim. Nor was the issue decided by "necessary implication."

Neither this Court nor the Court of Appeals ever discussed the unfair competition claim, its

elements, or the application of the DMCA to that claim. *See, e.g.*, *New Eng. Ins. Co. v.*

*Healthcare Underwriters Mut. Ins. Co.*, 352 F.3d 599, 606 (2d Cir. 2003) ("Put simply, the law

of the case 'does not extend to issues an appellate court did not address.'"); *Stichting Ter*

*Behartiging v. Schrieber*, 407 F.3d 34, 44-45 (2d Cir. 2005) ("The doctrine is, however, simply

not applicable here, because neither the district court nor this court was ever squarely presented

---

[4]   Congress clearly knew how to differentiate between "copyright" claims, as used in Section 512, and the more
general "common law and statutes," as used in section 301(c) referring to continuing state law rights in Pre-72
Recordings." As discussed *infra* (pp. 10-15), Congress also knew how to differentiate between the term "copyright"
and the more inclusive "pertaining to intellectual property" used in the CDA.

with the question. . . ."); *see also Sompo Japan Ins. Co. v. Norfolk S. Ry.*, 762 F.3d 165, 175 (2d Cir. 2014) (the district court "did not violate the mandate rule by addressing on remand an issue that was not decided by this Court in the original appeal.").[5]

C.      The "Extra Element" Test Is Irrelevant To Pre-72 Recordings.

Vimeo acknowledges that Pre-72 Recordings are not subject to pre-emption but nevertheless argues that the unfair competition claim does not include the "extra element" necessary to save from pre-emption other types of works that are based on *copyrightable* material.  Motion at 10-12.  That, however, is not the issue on this motion.  Not only are Pre-72 Recordings not subject to federal copyright, they are expressly exempt from pre-emption. 17 U.S.C. § 301(c); *see generally* 1 *Nimmer On Copyright*, § 1.01[B][2], at 1-68 (2010) ("a work that by reason of its content falls outside that 'subject matter' [of copyright] is not subject to pre-emption; as to those works, the states are free to fashion their own protection, even by way of rights that are 'equivalent' to copyright.").  An "extra element" of the type necessary to save from *pre-emption* claims that are based on works *within* the scope of copyright and arguably "equivalent" to copyright simply is irrelevant to Pre-72 Recordings.  Moreover, as discussed, under New York law, unfair competition claims related to Pre-72 Recordings do have additional required elements and are conceived to protect against different conduct.  That these additional elements may not be the type required to save federally *copyrightable* works from preemption is

---

[5]    Vimeo argues that the certified question necessarily encompasses all state law claims that relate to Pre-72 Recordings (Motion at 8-9).  That is belied by the arguments of the parties on appeal, by the reasoning of the opinion, and ultimately by the answer of the Circuit to the certified question quoted above.  Of course, the Court of Appeals may construe a certified question in any way it chooses.  Moreover, the Court did in fact, answer the question as posed, *i.e.,* the safe harbor of 512(c) does apply to Pre-72 Recordings in the context presented to the Court – common law copyright claims.  That the Circuit vacated the partial summary judgment also does not support Vimeo.  This Court's summary judgment was based solely on the holding that applying the DMCA to *any* state law Pre-72 Recording claim would violate the proscription of § 301(c).  This Court, therefore, did not have to go any further or to analyze the unfair competition claim separately.

9

not germane.[6]  *See Roy Export,* 672 F.2d at 1106 (works not subject to federal pre-emption

support a claim for unfair competition); *see also Hall v. Bed Bath & Beyond, Inc.*, 705 F.3d

1357, 1372 (Fed Cir. 2013) ("principles of patent law preemption do not overrule potential

causes of action based on unfair commercial practices").

## III.   THE CDA DOES NOT IMMUNIZE VIMEO FROM STATE LAW CLAIMS FOR UNFAIR COMPETITION

The CDA gives limited immunity to "provider[s] of an interactive computer service" that

publish "information provided by another information content provider."  47 U.S.C. § 230(c)(1).

At the same time, Congress determined that "any law pertaining to intellectual property" would

not be subject to CDA immunity.  Section 230(e)(2).  Congress decided that the potential

benefits of giving service providers blanket immunity for violations of intellectual property laws,

as opposed to the CDA's primary focus (as its name denotes) to protect minors from obscene and

indecent material, were outweighed by the costs of doing so.  *Doe v. Friendfinder Network, Inc.,*

540 F. Supp. 2d 288, 300 (D.N.H. 2008).  Therefore, Congress carved out from CDA immunity

"any" intellectual property law:

> No effect on intellectual property law.  Nothing in this section shall
> be construed to limit or expand *any law pertaining to* intellectual
> property.

Section 230(e)(2)[7] (emphasis added).  The dispositive issue here, then, is whether the

CDA's blanket exclusion from service provider immunity of "*any* law *pertaining to* intellectual

---

[6]   That is why Vimeo's contention that if Plaintiffs believed they had an unfair competition claim that stood apart from copyright they would have included it for their post-72 recordings that are subject to federal copyright (Motion at 12) misses the point.

[7]   Thus, whether Vimeo is a qualifying "provider of interactive computer service" or the material at issue is "obtained from another information provider" is largely beside the point (and, in any event, presents a potential factual issue).  Even assuming without conceding that is the case, Vimeo would not have CDA immunity as a result of § 230(e)(2).  And there is some question whether Vimeo does qualify in the first instance.  *See* 47 U.S.C. § 230(f) (no CDA immunity from claims if defendant is "responsible, in whole or in part, for the creation or development of information").

property" includes state law claims as well as federal claims. Vimeo's argument that CDA immunity applies here is misplaced because the carve-out in § 230(e)(2) includes state as well as federal intellectual property law and because the claim for unfair competition is a claim "pertaining to intellectual property."

In a brief footnote, Vimeo half-heartedly argues that the "intellectual property" law carve-out in § 230(e)(2) applies only to federal intellectual property claims (Motion at 15 n. 10) relying on one out-of-circuit case. *Perfect 10, Inc. v. CCBill, LLC*, 488 F.3d 1102, 1118-19 (9th Cir. 2007). However, virtually every case that has decided the issue, outside of *Perfect 10's* circuit where that decision must be followed by lower courts, including several courts in this district, has held that the CDA does not provide immunity for state law intellectual property claims such as claims for unfair competition. (The Second Circuit has not yet confronted the issue.) *See Atl. Recording Corp.,* 603 F. Supp. 2d at 703-04 (Chin, D. J.); *Friendfinder Network,* 540 F. Supp. 2d at 298-99; *Murawski v. Pataki*, 514 F. Supp. 2d 577, 591 (S.D.N.Y. 2007) ("Section 230(c) thus immunizes internet service providers from defamation and other non-intellectual property, state law claims arising from third party conduct"); *Gucci Amer., Inc. v. Hall & Assocs.,* 135 F. Supp. 2d 409, 417 (S.D.N.Y. 2001) (unfair competition claim; "The legislative history cited by [defendant] indicates only that Section 230(c) immunizes [internet service providers] from defamation and other, non-intellectual property, state law claims arising from third-party content."); *UMG Recs., Inc. v. Escape Media Group, Inc.,* 37 Misc. 3d 208, 216-18, 948 N.Y.S.2d 881 (Sup. Ct., N.Y. Co., 2012) (dismissing CDA affirmative defense to state law common law copyright and unfair competition claims for Pre-72 Recordings, stating "the word 'any' [in Section 230(e)(2)] means what it says."), *rev'd. on other grounds*, 107 A.D.3d 51, 964 N.Y.S.2d 106 (2013); *see also, e.g., Universal Commun. Sys. v. Lycos, Inc.*, 478 F.3d 413, 422-23 (1st Cir. 2007) (no CDA immunity for state trademark dilution claim); *Ohio*

11

*State Univ. v. Skreened Ltd.*, 16 F. Supp. 3d 905, 918 (S. D. Ohio 2014) (no CDA immunity for state right of publicity claim).

The Court in *Atl. Recording Corp.* fully analyzed the issue of the scope of the CDA "intellectual property" exception in a case that included claims for both common law copyright infringement *and* unfair competition based on Pre-72 Recordings.  Judge Chin engaged in the detailed textual analysis of § 230 that he noted was missing from *Perfect 10*.  603 F. Supp. 2d at 703 n. 11.  First, the Court compared the language in § 230(e)(2) to the language in the other subsections of § 230(e):

> In four different points in section 230(e), Congress specified whether it intended a subsection to apply to local, state, or federal law.  *See* 47 U.S.C. §§ 230(e)(1) ("any other *Federal* criminal statute"), (3) ("any *State* law" and "any *State* or *local* law"), (4) ("any similar *State* law").  It is therefore clear from the statute that if Congress wanted the phrase "any law pertaining to intellectual property" to actually mean "any *federal* law pertaining to intellectual property," it knew how to make that clear, but chose not to.

603 F. Supp. 2d at 703. (emphasis in original).

Second, the Court then dealt with the specific language of § 230(e)(2):

> Moreover, the modifier "any" in Section 230(e)(2), employed without any limiting language, "amounts to 'expansive language [that] offers no indication whatever that Congress intended [a] limiting construction.'"  This conclusion is bolstered by the fact that, as discussed above, the "surrounding statutory language" supports the conclusions that Congress intended the word "any" to mean any state or federal law pertaining to intellectual property. *See ACLU v. Dep't of Def.*, 643 F.3d 59, 69 (2d Cir. 2008) (holding that word "any" in statute "deserves an expansive application where the surrounding statutory language and other relevant legislative context support it").

*Id.* at 704.  (certain citations omitted).

Judge Chin concluded "as a matter of law" that § 230(e)(2) does not provide immunity for both federal and state intellectual property claims, specifically those alleged by the record

company plaintiffs.  The motion to dismiss the common law copyright and unfair competition claims relating to Pre-72 Recordings was denied.  *Id.*  Similarly, in *Friendfinder Network,* the Court also did not find the Ninth Circuit's resolution of this issue to be persuasive and engaged in its own detailed analysis.  In summary, that Court interpreted the language of § 230(e)(2) – particularly the modifier "any" – to be expansive rather than limited.  Comparing section 230(e)(2) to other subparts of section 230(e) that specifically identified applicable federal or state law, the Court noted that when Congress wished to distinguish between state and federal law in the CDA, it did so explicitly.  540 F. Supp. 2d at 299-302.

Although Vimeo uses the heading "Plaintiffs' Unfair Competition Claims Are Not Subject to the CDA's 'Intellectual Property' Exemption" (Motion at 14), it never actually discusses the interpretation of § 230(e).  That is because unfair competition claims clearly "pertain[] to intellectual property."  In denying the motion to dismiss, the Court in *Atl. Recording Corp.* necessarily held (by implication) that both the record companies' common law copyright claims and unfair competition claims "pertain[ed] to intellectual property."  *See Escape Media Grp.,* 37 Misc.3d at 217-18 (to the same effect). [8]  That is consistent with the broad and inclusive language of 230(e)(2) ("any," "pertaining to").  *See, e.g., United States v. Rainbow Rugs*, 838 F. Supp. 11, 14 (D. Me 1993) ("the word 'pertain' is very sweeping in nature, not requiring an overly close nexus to the subject matter to which it refers.  Indeed, under common usage, the word 'pertain' merely requires some connection, even if weak, to the subject matter.") (*citing* Webster's Third New International Dictionary 1688 (1981) ("to have some connection with or relation to something")).  It also reflects the legal dictionary definition of "intellectual property":

---

[8]   Even the Court in *Perfect 10,* while disagreeing on the scope of § 230(e)(2), acknowledged that "States have any number of laws that could be characterized as intellectual property laws: trademark, *unfair competition*, dilution, right of publicity and trade defamation, to name just a few."  488 F.3d at 1119 n. 5 (emphasis added); *see Escape Media*, 37 Misc.2d at 217 (quoting *Perfect 10*).

> a category of intangible rights protecting commercially valuable
> products of the human intellect.  The category comprises primarily
> trademark, copyright, and patent rights, but also includes trade
> secret rights, publicity rights, moral rights, and rights against unfair
> competition.

Black's Law Dictionary 881 (9th ed.); *see Almeida v. Amazon.com, Inc.*, 456 F.3d 1316, 1322-23

(11th Cir. 2006) (holding state right of publicity claim is an intellectual property right under

CDA and quoting Black's Law Dictionary); *see also, e.g., Xerox Corp. v. Ariz. Digital Prods.*,

2009 U.S. Dist. LEXIS 84015 * 20-21 (W.D.N.Y. Sept. 15, 2009) ("'Intellectual Property' is a

broad concept, often defined to include the following types of rights:  patents, trademarks,

copyrights, trade secrets, moral rights, rights of publicity, and rights against unfair competition.

Thus, it is commonly accepted that the term 'intellectual property' includes more than just

patents, trademarks, and copyrights.").

Unable to escape the conclusion that CDA immunity does not apply to state unfair

competition claims, Vimeo advances a novel theory, not supported by any case, that "[i]f the

Court concludes that the unfair competition claims are not claims for 'infringement of copyright'

under the DMCA, then *by definition* they are not claims 'pertaining to intellectual property'

under the CDA."  Motion at 14 (emphasis added).  That *ipse dixit* simply has no basis.  As

discussed at length above (and as pleaded, *e.g.*, in *Atl. Recording Corp.*), unfair competition

claims are not "copyright claims" but are "by definition" separate claims under New York law.

And conversely "by definition" not all "intellectual property" claims are "copyright claims."

Congress used different and recognizable defined terms in the two statutes (passed within three

years of each other) – the narrow (unmodified) term "copyright" and the broader phrase "any law

pertaining to intellectual property."  Had the DMCA been intended to apply to all "intellectual

property" claims, Congress certainly knew how to say it.  Had the exception in § 230(e)(2) been

intended to be limited to federal "copyright claims," Congress knew how to say that too.  It did

neither.  The DMCA and the CDA individually or jointly, do not provide blanket and complete immunity for all activities involving intellectual property.  Thus, providers of interactive computer services may be liable for a variety of intellectual property claims not subject to *either* CDA immunity or the DMCA.  That is the case here.

## IV.    PLAINTIFFS HAVE ADEQUATELY PLEADED UNFAIR COMPETITION

The standard of review on this motion requires all inferences be drawn in favor of Plaintiffs.  *Gregory v. Daly*, 243 F.3d 687, 691 (2d Cir. 2001) (when reviewing a motion to dismiss a Court must "accept as true all of the factual allegations set out in plaintiffs' complaint, draw inferences from those allegations in the light most favorable to Plaintiff, and construe the complaint liberally."); *see also, e.g., Chambers v. Time Warner*, 282 F.3d 147, 152 (2d. Cir. 2002) (same).  The Court also may consider any written instrument attached to the complaint as an exhibit or any statements or documents incorporated in it by reference (*id.),* including websites.  *Atl. Recording Corp.*, 603 F. Supp. 2d at 693 n. 3.  The liberal pleading standard is to be applied here in the context of unfair competition claims, which "have been broadly described as encompassing any form of commercial immorality," and which New York law holds to be "adaptable and capacious" and "broad and flexible."  *See Roy Export Co. v. CBS,* 672 F.2d 1095, 1105 (2d Cir. 1982); *Metropolitan Opera Ass'n v. Wagner-Nichols Recorder Corp.*, 199 Misc. 786, 792, 101 N.Y.S.2d 483 (Sup. Ct., N.Y. Co., 1950), *aff'd mem.*, 279 A.D. 632, 107 N.Y.S.2d 795 (1951); *see also Naxos*, 4 N.Y.3d at 555 ("Congress intended that the owner of rights to a sound recording should rely on the 'broad and flexible' power of the common law to protect those property rights after public dissemination of the work.  As *Metropolitan Opera* so aptly observed more than five decades ago, the common law 'has allowed the Courts to keep pace with constantly changing technological and economic aspects so as to reach just and realistic results.'").

After arguing at length the incorrect premise that common law copyright claims and unfair competition claims based on Pre-72 Recordings are "the exact same claims," Vimeo switches gears to assert that Plaintiffs' unfair competition claim fails to state a claim precisely because "bad faith is an essential element of a New York unfair competition claim." Motion at 15. Contrary to Vimeo's assertion, the Amended Complaint (ECF 141) alleges and incorporates by reference into the unfair competition claim numerous facts that directly and inferentially evidence Vimeo's bad faith. The pleading is more than sufficient to survive a motion to dismiss. *See, e.g., George Nelson Found. v. Modernica, Inc*., 12 F. Supp. 3d 635, 653 (S.D.N.Y. 2014) (allegations of prior knowledge of plaintiff's rights in trademark and use with the intention of capitalizing on Plaintiff's reputation and goodwill supported "inference of bad faith"); *Krasnyi Oktyabr, Inc. v. Trilini Imps*., 2007 U.S. Dist. LEXIS 23733, *30-31 (E.D.N.Y. Mar. 30, 2007) (bad faith sufficiently alleged through factual allegations of complaint, noting that "awareness [of plaintiff's rights] can give rise to an inference of bad faith") (*citing Centaur Communications, Ltd. v. A/S/M Communications, Inc*., 830 F.2d 1217, 1228 (2d Cir. 1989)).[9] Among other things, the Amended Complaint alleges, directly and by inference, the following:

- Plaintiffs expend large sums of money to create, produce, and exploit their rights in and to Pre-72 Recordings. (¶¶ 14, 70.) Vimeo has capitalized on and profited from the popularity and success of Plaintiffs' Pre-72 Recordings developed by Plaintiffs, (¶¶ 2, 4, 6, 20, 24, 26, 28), and Vimeo intended and knew that Plaintiffs would be damaged as a result. (¶¶ 73-74).

---

[9]   Vimeo apparently concedes and does not argue that the element of competition in the marketplace *or* other similar conduct has been adequately pleaded. It has. Moreover, the parties to an unfair competition claim need not be in direct competition with one another. *See Dior v. Milton*, 9 Misc. 2d 425, 155 N.Y.S.2d 443, 454 (Sup. Ct. N.Y. Co.) *aff'd.*, 2 A.D.2d 878, 156 N.Y.S.2d 996 (N.Y. App. Div. 1st Dept. 1956).

- Vimeo is aware and has knowledge of the use of Plaintiffs' Pre-72 Recordings and of Plaintiffs' rights, knows that famous Pre-72 Recordings owned by Plaintiffs are being used on its website, and knows that it must obtain licenses from the owners of those recordings, including Plaintiffs. (¶¶ 3-4, 24-26.) Plaintiffs gave Vimeo notice of a representative sample of Plaintiffs' Pre-72 Recordings that were being used on Vimeo's website. Additional copies of many of the same works continued to be made available on and by Vimeo. (¶ 27.)

- The uses of Plaintiffs' Pre-72 Recordings by Vimeo are precisely the types of audiovisual commercial uses licensed by Plaintiffs – for example to television shows and other internet services, and serve to compete unfairly with Plaintiffs' licensed uses. (¶¶ 5, 14, 70-71.)

- Vimeo actively promotes and induces users to post audiovisual works that feature Plaintiffs' Pre-72 Recordings, including through its own employees' creation and dissemination of audiovisual works embodying Plaintiffs' Pre-72 Recordings, and by promoting (including on its home page) an entire class of infringing recordings known as "lip dubs," a term coined by Vimeo's founder. (¶¶ 23-26.) Vimeo advised users how to make such videos and provided them with instructions and tools to embody Plaintiffs' Pre-72 Recordings in videos and then "license" them to Vimeo. (¶¶ 4, 24-26.) While Vimeo prohibits and removes certain types of content, it encourages rather than prohibiting or removing videos that include Plaintiffs' Pre-72 Recordings. (¶ 29.)

- Vimeo conveyed directly and indirectly to its users and misled them into believing that it was permissible and legal for them to use Plaintiffs' recordings. (¶¶ 4, 24-26.)

- Vimeo promotes and showcases audiovisual works containing Plaintiffs' Pre-72 Recordings, and Vimeo Staff take an active and pervasive role in users' conduct by among other things reviewing and commenting on and promoting posted videos, "liking" them, selecting videos to be featured and showcased, creating groups and channels, and assisting users with technical and creative issues.  (¶¶ 2-4, 23-24, 26.)

- Vimeo provides anonymity to its users who used Plaintiffs' Pre-72 Recordings and provided them protection through private or password protected channels that Plaintiffs could not access.  (¶¶ 2, 22.)  Vimeo has given users a safe haven to engage in unlawful conduct.  (¶¶ 24-26, 29.)

- Vimeo encouraged, permitted, and disseminated audiovisual works that adapted, edited, combined, and truncated Plaintiffs' Pre-72 Recordings.  Vimeo thereby used Plaintiffs' Pre-72 recordings in connection with visual material creating unauthorized works, linking Plaintiffs and Plaintiffs' recordings to audiovisual works over which Plaintiffs had no control or approval, including videos editing Plaintiffs' Pre-72 Recordings and combining them with other recordings.  (¶¶ 5, 20, 21, 24-26; ¶ 16, incorporating by reference Schedule B identifying videos, recordings, and corresponding web site pages.)

- Vimeo used Plaintiffs' Pre-72 recordings to attract users in order to increase its brand recognition and value, appropriating Plaintiffs' reputation and diverting users from its competitors who had paid Plaintiffs for the right to use their recordings, (¶¶ 2, 5, 20, 24, 26(d)) 29, 70), and to profit from advertisements placed in connection with videos that Plaintiffs did not review or consent to.  (¶ 28.)

- Vimeo used Plaintiffs' Pre-72 Recordings in connection with the names of Plaintiffs' recording artists, the titles of their recordings, and/or Plaintiffs' names, misrepresenting

18

to the public that Plaintiffs and/or their exclusive recording artists had consented to the
use.  (¶ 26(d); ¶ 16, incorporating by reference Schedule B identifying videos,
recordings, and corresponding web pages.)

- Vimeo maintains an index containing the names of Plaintiffs' recording artists and the
titles of Plaintiffs' Pre-72 Recordings, and videos incorporating Plaintiff's Pre-72
recordings are designated on the Vimeo website with "keywords" referencing Plaintiffs'
artists, titles, and even words such as "Capitol."  (¶¶ 21, 26(d).)

New York courts have consistently held, starting with the oft-cited *Metropolitan Opera*
case, that "[t]here is no complete list of the activities which constitute unfair competition."  199
Misc. at 792; *see, e.g., Telecom. Int'l. Am., Ltd. v. AT&T Corp.*, 280 F.3d 175, 197-98 (2d Cir.
2001) (a claim for unfair competition "has been broadly described as encompassing any form of
commercial immorality, or simply as endeavoring to reap where one has not sown.").  Therefore,
[t]he elements of bad faith, deception or misappropriation are very "fact intensive."  *Michelle
Pommier Models*, 1997 U. S. Dist. LEXIS 18294 at *11 (denying motion to dismiss unfair
competition claim).  Vimeo knowingly set up and profited from a business, a significant portion
of which Vimeo intended to be based on unfairly commercializing Plaintiffs' expenditures of
time, labor, talent, and money. Vimeo capitalized on the foregoing to increase its revenues,
reputation, and goodwill, attract users, brand its business, and otherwise obtain a commercial
benefit.  Vimeo knew of Plaintiffs' rights and knew that what it intended, encouraged, and
directly participated in actually was taking place on its website and benefitting its business.

Separately, and certainly collectively, Plaintiffs have alleged the type of intentional,
commercial unfairness that reflects both "some element of bad faith" and deceptive conduct *or*
competitive conduct, *or* conduct designed for commercial benefit.  *See, e.g., EMI Records Ltd. v.
Premise Media Corp. L.P.*, 2008 N.Y. Misc. LEXIS 7485, *39-40 (Sup. Ct., N.Y. Co. 2008)

19

(Plaintiffs pleaded a claim for unfair competition with respect to unauthorized use and exploitation of their Pre-72 Recording where allegations included "running misleading credit information; falsely suggesting the [plaintiff's] Recording was properly licensed; 'intentionally and willfully' using [the plaintiff's] Recording, in a fashion that suggests to the public that such use was authorized, endorsed or sponsored by the proprietors of [plaintiff's] Recording;" [and] using [plaintiff's] Recording in a fashion that 'is likely to confuse and mislead the public into believing that [it] was properly licensed for use'"); *Capitol Records, Inc. v. Wings Digital Corp.*, 218 F. Supp. 2d 280, 286 (E.D.N.Y. 2002) (Plaintiffs sufficiently alleged a claim for unfair competition and that defendants acted in bad faith by using Plaintiffs' music for their own financial gain and in order to realize a commercial advantage); *Apple Corps., Ltd. v. Adirondack Group*, 124 Misc. 2d. 351, 354-355, 476 N.Y.S.2d. 716, 719 (Sup. Ct., N.Y. Co. 1983) (unfair competition based on using the names of the Beatles, "a valuable property in its own right," and by using a pre-1972 recording in a manner and a purpose not intended);[10] *New York Racing Assn.,* 29 Misc.3d at 546 (allegation that defendant participated in transmission of plaintiff's audiovisual simulcasts over defendant's website despite knowing it lacked authorization to do so stated unfair competition claim.); *see also Gilliam v. ABC,* 538 F.2d. 14, 24 (2d Cir. 1976) ("[c]ourts have long granted relief for misrepresentation of an artist's work on theories outside the statutory law of copyright, such as…the tort of unfair competition.").[11]

---

[10]   Many of the Pre-72 Recordings listed in Schedule B to Plaintiffs' Amended Complaint are Beatles recordings, and as alleged in the Amended Complaint are identified as such on Vimeo's website.

[11]   The allegations of the Amended Complaint, directly or by inference, provide notice to Vimeo of the nature of the unfair competition claim.  These allegations are supported by substantial evidence, including as revealed by discovery.  To the extent the Court believes additional facts should be alleged, Plaintiffs request leave to amend, not to assert a new cause of action but to amplify the allegations.  *See, e.g., Cleveland v. North Am. Van Lines,* 1992 U.S. Dist. LEXIS 1635, *23-24 (N.D.N.Y. Feb. 14, 1992) (granting motion to amend:  "[T]his case will not be unduly delayed by allowing an amendment because many, if not all, of the facts… have already been uncovered through discovery.  In addition the court cannot conceive of any substantial prejudice to these defendants where they should have been aware of the facts underlying the new cases of action for quite some time."); *Fustok v. Conticommodity Services, Inc.,* 103 F.R.D. 601, 604 (S.D.N.Y. 1984) ("defendants will not be prevented from

## V.   CONCLUSION

For all of the foregoing reasons, Vimeo's motion to dismiss Count VI should be denied.

DATED:   August 16, 2017                    MITCHELL SILBERBERG & KNUPP LLP

            New York, New York

By:  /s/ Russell J. Frackman
Russell J. Frackman (*pro hac vice*)
Marc E. Mayer (*pro hac vice*)
11377 West Olympic Boulevard
Los Angeles, California 90064-1683
Telephone: (310) 312-2000
Facsimile: (310) 312-3100

Christine Lepera (ctl@msk.com)
Jeffrey M. Movit (jmm@msk.com)
12 East 49th Street, 30th Floor
New York, New York 10017
Telephone: (212) 509-3900
Facsimile: (212) 509-7239

*Attorneys for Plaintiffs*

---

adequately defending against the new claims because they are already aware of many of the essential facts and can uncover additional information through the discovery process.").