**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CAPITOL RECORDS, LLC, *et al.*, | Case No. 09 Civ. 10101 (RA) |
| Plaintiffs, | |
| v. | |
| VIMEO, LLC d/b/a VIMEO.COM, *et al.*, | |
| Defendants. | |
| EMI BLACKWOOD MUSIC, INC., *et al.*, | Case No. 09 Civ. 10105 (RA) |
| Plaintiffs, | |
| v. | |
| VIMEO, LLC d/b/a VIMEO.COM, *et al.*, | |
| Defendants. | |

**VIMEO'S REPLY IN FURTHER SUPPORT OF ITS MOTION TO DISMISS CAPITOL**
**RECORDS' UNFAIR COMPETITION CLAIMS (COUNT VI)**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ...................................................................................................1

ARGUMENT ...............................................................................................................................2

I.     PLAINTIFFS' UNFAIR COMPETITION CLAIMS ARE SUBJECT TO DMCA
SAFE HARBOR...................................................................................................................2

         A.     The Second Circuit's Decision Requires the Same Treatment of Plaintiffs'
Unfair Competition and Common-Law Copyright Claims ....................................2

         B.     Plaintiffs' Unfair Competition Claims Are Not Meaningfully Different
from Their Common-Law Copyright Claims...........................................................5

         C.     The Second Circuit Necessarily Decided the Issue Presented Here.......................8

II.    IF PLAINTIFFS' STATE-LAW UNFAIR COMPETITION CLAIMS ARE NOT
CLAIMS FOR INFRINGEMENT OF COPYRIGHT, VIMEO IS ENTITLED TO
IMMUNITY PURSUANT TO SECTION 230 OF THE CDA...........................................9

III.   PLAINTIFFS FAILED TO PROPERLY PLEAD UNFAIR COMPETITION ...............10

CONCLUSION ..........................................................................................................................10

## <u>TABLE OF AUTHORITIES</u>

**Page**

<u>Cases</u>

*Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.,*
    373 F.3d 296 (2d Cir. 2004) ..................................................................6, 7

*Capitol Records, Inc. v. Naxos of Am.,*
    830 N.E.2d 250 (N.Y. 2005) ...................................................................5

*Capitol Records, LLC v. Vimeo, LLC ("Vimeo III"),*
    826 F.3d 78 (2d Cir. 2016) ..................................................................*passim*

*Capitol Records, LLC v. Vimeo, LLC ("Vimeo II"),*
    972 F. Supp. 2d 537 (S.D.N.Y. 2013) ....................................................8

*Capitol Records, LLC v. Vimeo, LLC ("Vimeo I"),*
    972 F. Supp. 2d 500 (S.D.N.Y. 2013) ....................................................10

*Eyal R.D. Corp. v. Jewelex N.Y. Ltd.,*
    784 F. Supp. 2d 441 (S.D.N.Y. 2011) ....................................................7

*Field v. True Comics,*
    89 N.Y.S.2d 35 (N.Y. Sup. Ct. 1949) .....................................................7

*Fogel v. Chestnutt,*
    668 F.2d 100 (2d Cir. 1981) ..................................................................9

*Hemingway's Estate v. Random House, Inc.,*
    244 N.E.2d 250 (N.Y. 1968) ..................................................................5

*LaChapelle v. Fenty,*
    812 F. Supp. 2d 434 (S.D.N.Y. 2011) ....................................................6

*Mayer v. Josiah Wedgwood & Sons, Ltd.,*
    601 F. Supp. 1523 (S.D.N.Y. 1985) .......................................................7, 8

*Michele Pommier Models v. Men Women NY Model Mgmt.,*
    14 F. Supp. 2d 331 (S.D.N.Y. 1998) ......................................................2, 5

*Nat'l Basketball Ass'n v. Motorola, Inc.,*
    105 F.3d 841 (2d Cir. 1997) ..................................................................7

*Orange Cty. Choppers, Inc. v. Olaes Enters.,*
    497 F. Supp. 2d 541 (S.D.N.Y. 2007) ....................................................7

*Re-Alco Indus., Inc. v. Nat'l Ctr. for Health Educ., Inc.,*
    812 F. Supp. 387 (S.D.N.Y. 1993) .........................................................10

*Viacom Int'l, Inc. v. YouTube, Inc.,*
    676 F.3d 19 (2d Cir. 2012) ....................................................................4

*Whitman v. Am. Trucking Ass'ns, Inc.,*
   531 U.S. 457 (2001) ..................................................................................4

*Zeran v. Am. Online, Inc.,*
   129 F.3d 327 (4th Cir. 1997) ...................................................................9

## **Statutes**

17 U.S.C. § 301(a) ...............................................................................................6, 7

17 U.S.C. § 512(c) ..............................................................................................1, 3, 7

## PRELIMINARY STATEMENT

Reprising their remand strategy on the "red flag" knowledge issue, Plaintiffs purport to reckon with an adverse Second Circuit decision by mischaracterizing and otherwise ignoring it. After all, exempting Plaintiffs' unfair competition claims from the scope of the DMCA safe harbor would expose Vimeo to liability for hundreds of videos that have already been thrown out of the case for the simple reason that Vimeo never knew they existed. Yet Plaintiffs' opposition confirms that their unfair competition claims are functionally identical to their copyright infringement claims; no amount of wordsmithing can draw a meaningful distinction. There are, of course, unfair competition claims that do not sound in copyright—but none has been asserted here. Accordingly, Plaintiffs' unfair competition claims—just like their state-law copyright claims—are subject to DMCA safe harbor pursuant to Section 512(c) and must be dismissed.

Struggling against the current of logic and common sense, Plaintiffs never address, let alone dispute, that the Second Circuit determined that the DMCA safe harbor encompasses claims under "state copyright laws" because a contrary determination would defeat Congress's intent to bestow certainty on service providers and allow them to offer innovative services in an economically feasible manner. *Capitol Records, LLC v. Vimeo, LLC*, 826 F.3d 78, 89-90 (2d Cir. 2016) ("*Vimeo III*"). Excluding Plaintiffs' unfair competition claims from safe harbor would require Vimeo to monitor *every* video for pre-1972 sound recordings (an impossible task) or face "potentially crushing liabilities"—exactly what Congress sought to avoid, and the very dilemma the Second Circuit emphasized in ruling that safe harbor includes state-law copyright claims. *Id*.

Instead, Plaintiffs focus exclusively on whether an unfair competition claim can coexist with an extant common-law copyright infringement claim. But the question at issue is whether an infringement claim that was *dismissed* under the DMCA can still *survive* as an unfair competition claim. Plaintiffs cite no authority where a court has approved such a masquerade. "[T]he Second

1

Circuit has warned" that unfair competition is an "'amorphous cause of action … capable of mischievous application.'"  *Michele Pommier Models v. Men Women NY Model Mgmt.*, 14 F. Supp. 2d 331, 337-38 (S.D.N.Y. 1998) (citation omitted).  Plaintiffs' continued pursuit of their unfair competition claims exemplifies such mischief.  Vimeo's motion should be granted.

## ARGUMENT

### I.   PLAINTIFFS' UNFAIR COMPETITION CLAIMS ARE SUBJECT TO DMCA SAFE HARBOR

#### A.   The Second Circuit's Decision Requires the Same Treatment of Plaintiffs' Unfair Competition and Common-Law Copyright Claims

The Second Circuit's ruling that "safe harbor protects service providers from infringement liability under state copyright laws," *Vimeo III*, 826 F.3d at 82, answers the question presented here, regardless of whether one treats the ruling as binding (which it is) or merely highly persuasive (which it is also).  A claim premised upon the assertion that the defendant has reproduced without authorization (*i.e.*, infringed) a work of authorship protected by state law (*i.e.*, a copyrighted work) is a claim for "infringement of copyright," under the DMCA, *Vimeo III*, and common sense.  Plaintiffs' unfair competition claim expressly and repeatedly asserts and relies upon alleged "infringement" of their "exclusive" rights in state-copyrighted pre-1972 sound recordings (Am. Compl. ¶¶ 69, 70, 72, 73), and is therefore a paradigmatic claim for "infringement of copyright."

Plaintiffs seek to escape the implications of *Vimeo III* by mischaracterizing its holding and ignoring its rationale.  ***First***, Plaintiffs attempt to confine the Second Circuit's decision by arguing that it "dealt expressly" (*i.e.*, only) with claims of "***common law*** copyright" infringement.  Opp. Br. 5 (emphasis reversed); *see also id.* at 6.  But the decision never uses the phrase "***common law*** copyright infringement"; rather, it speaks in terms of "infringement" or "liability" under "state copyright <u>***laws***</u>," *Vimeo III*, 826 F.3d at 89-90 (referring to "state copyright laws" three times), or of "pre-1972 sound recordings," *id.* at 90, 92, 93.  This broad formulation acknowledges that

multiple state **laws** (and therefore causes of action) could be invoked to protect pre-1972 sound recordings; in other words, a claim for "infringement of copyright" may take different forms.

**Second**, Plaintiffs fail entirely to come to grips with the stated rationale of the Second Circuit's decision. Judge Leval, writing for the unanimous panel, explained that both the text of the DMCA and Congress's intent compel the conclusion that "the safe harbor protects service providers from infringement liability under state copyright laws." *Id.* at 82. While Plaintiffs grudgingly acknowledge (Opp. Br. 6-7) the Second Circuit's textual analysis, they ignore its detailed explanation of why Congress's goals would be frustrated by the narrow construction of Section 512(c) advocated by Plaintiffs. That explanation bears repeating, as it effectively resolves this motion: Congress sought to relieve service providers like Vimeo from having to "scour matter posted on their services to ensure against copyright infringement" and thereby to make it "economically feasible" for them to provide innovative services to the public. *Vimeo III*, 826 F.3d at 90. To construe the DMCA as leaving service providers subject to state-law liability for infringement of pre-1972 sound recordings, regardless of the particular cause of action asserted, "would defeat the very purpose Congress sought to achieve in passing the statute" by forcing providers to choose between incurring "heavy costs of monitoring every posting" or "potentially crushing liabilities," which remain significant due to the enduring popularity of many older works. *Id*. Plaintiffs offer no defense of their position against this rationale.

This rationale applies to any claim that depends on asserted infringement of pre-1972 sound recordings, no matter how styled, and no matter how many additional elements are asserted. Requiring a service provider to face potential liability for "unfair competition," but not "common law infringement," makes no sense when both claims are premised upon the same alleged infringement of pre-1972 sound recordings. Exposing service providers to liability for copyright

3

infringement under one type of state-law regime, but not another, would implicate and frustrate the same policy concerns animating the Second Circuit's decision.  To pretend otherwise is to assume that the Second Circuit unwittingly planted a bomb for Plaintiffs to exploit on remand. The Second Circuit deserves more credit.  *Cf. Whitman v. Am. Trucking Ass'ns, Inc.*, 531 U.S. 457, 468 (2001) (Congress "does not … hide elephants in mouseholes").

Unable to respond to the Second Circuit's analysis and application of the policy concerns underlying the DMCA, Plaintiffs make up their own DMCA policy—specifically, that the statute supposedly was intended to apply only to claims of "strict liability" copyright infringement asserted against service providers acting in "good faith."  Opp. Br. 2.  But no such limitation to "strict liability" claims exists; the DMCA safe harbor covers ***all*** claims of infringement seeking monetary relief, including for willful or contributory infringement.  *See Viacom Int'l, Inc. v. YouTube, Inc.*, 676 F.3d 19, 41 (2d Cir. 2012) (a "finding of safe harbor application necessarily protects a defendant from ***all*** affirmative claims for monetary relief," including for "direct infringement, vicarious liability, and contributory liability") (emphasis added).  And the DMCA already addresses intentional misconduct through a variety of provisions, including a notice-and-takedown regime, repeat infringement protocols, and disqualification based on actual or "red flag" knowledge of infringement.  By satisfying the multiple requirements for DMCA safe harbor, the service provider perforce establishes its "good faith."  *See Vimeo III*, 826 F.3d at 88 ("completely" agreeing with Copyright Office's assessment that safe harbor is available "for certain good faith acts on the Internet").  The DMCA does not, however, require a defendant to disprove willfulness in response to a claim of willful or contributory infringement.  The whole point of safe harbor is to insulate the service provider from having to adjudicate merits issues; it would be meaningless if that burden could be imposed simply by alleging willfulness.

4

### B.   Plaintiffs' Unfair Competition Claims Are Not Meaningfully Different from Their Common-Law Copyright Claims

As Vimeo explained in its opening brief (at 10-12), Plaintiffs' unfair competition claims are a type of state copyright law claim.  Though Plaintiffs do their best to elevate form over substance, a failed copyright claim cannot be rescued with an "unfair competition" label.

*First*, Plaintiffs argue (Opp. Br. 3-5) that New York law recognizes common-law copyright claims and unfair competition claims as torts that can be separately asserted.  This proves nothing; the same set of facts often may implicate more than one tort cause of action.  More to the point, none of the cases Plaintiffs cite stands for the proposition that an unfair competition claim asserting infringement of pre-1972 sound recordings cannot also subsume and in effect constitute a claim for "infringement of copyright" within the meaning of the DMCA (or otherwise).[1]  Plaintiffs' own authority undermines their argument.  In *Capitol Records, Inc. v. Naxos of Am.*, 830 N.E.2d 250 (N.Y. 2005) (cited at Opp. Br. 3), the Court of Appeals held that a claim of unfair competition based on copyright infringement is merely a claim "which, ***in addition to*** unauthorized copying and distribution" of a plaintiff's work, ***also*** "requires competition in the marketplace or similar actions designed for commercial benefit, or deception of the public."  *Id.* at 266 (emphasis added, citations omitted).  That is, such a claim of unfair competition first requires a plaintiff to establish copyright infringement—the very element ***excused*** by the DMCA safe harbor when it applies.  Because the DMCA excuses a service provider's "unauthorized copying and distribution," a

---

[1]   To be sure, the tort of unfair competition ***can*** include many non-copyright variants, *e.g.*, claims based on "passing off," breach of fiduciary duty, and trade secret disclosure, none of which apply here.  *See* Vimeo Br. 12 n.8. But New York courts do not hesitate to dismiss unfair competition claims when they merely duplicate common-law copyright claims.  *See, e.g.*, *Hemingway's Estate v. Random House, Inc.*, 244 N.E.2d 250, 256 (N.Y. 1968) (rejecting unfair competition claim that "does no more than put another label on the same allegations as those upon which [a failed common-law copyright claim] was based"); *cf. Michele Pommier Models*, 14 F. Supp. 2d at 338 (unfair competition claim cannot "resuscitate a failed tortious interference claim").

plaintiff alleging unfair competition premised on the same acts cannot establish that claim. *Cf. LaChapelle v. Fenty*, 812 F. Supp. 2d 434, 448-49 (S.D.N.Y. 2011) (state unfair competition claim "necessarily" fails where Lanham Act claim fails, even though not preempted by Copyright Act).

**Second**, Plaintiffs argue (Opp. Br. 4) that an unfair competition claim cannot be one for infringement of copyright because it has additional elements, *e.g.*, "bad faith" and use for commercial immorality. These additional elements do not substantively transform a claim of common-law copyright infringement into something different; they merely describe particular *varieties* of copyright infringement. The viability of the tort, as pleaded here, still rises or falls on whether the plaintiff can demonstrate unauthorized reproduction of a work of authorship for which the plaintiff has exclusive rights—a garden variety copyright claim.

As Vimeo observed (at 11-12), the Second Circuit uses the "extra element" test to determine whether a state-law claim is "equivalent" to a federal copyright claim. *See Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 305-06 (2d Cir. 2004); 17 U.S.C. § 301(a) (preempting common-law and state-law claims seeking to vindicate rights "equivalent to" exclusive federal rights). Plaintiffs brush aside this test (Opp. Br. 9-10) because it arises from Section 301(a)'s preemption clause, but offer no explanation why common-law copyright claims should be treated any differently than federal copyright claims when it comes to evaluating whether they sufficiently differ from a claim for unfair competition. The "extra element" test provides a sensible, generally applicable means for the Court to employ to determine whether a claim of unfair competition is "equivalent" to one for copyright infringement, ensuring that such claims remain subject to the DMCA safe harbor and do not wreak the havoc that Congress and the Second Circuit wished to avoid. Plaintiffs do not dispute that such a test, if applied, would find their unfair competition claims to be "equivalent" to their common-law copyright claims. Indeed, Plaintiffs

concede (Opp. Br. 10 & n.6) they did not assert unfair competition claims for any federally protected works precisely because such claims would fail the test.[2]

Moreover, Plaintiffs do not dispute that any extra elements in a copyright-based unfair competition claim do not change the fundamental character of the wrongdoing: "infringement of copyright." 17 U.S.C. § 512(c). As one court put it when addressing "commercial immorality":

> It is an extra element in the same sense that awareness and intent are: it alters the scope of the action but not its nature. That is, it would permit the action to go forward when the infringing conduct is immoral, but not when it is not immoral. ***The basic act which constitutes the infringement of plaintiff's rights, however, is the same as that of copyright.***

*Mayer v. Josiah Wedgwood & Sons, Ltd.*, 601 F. Supp. 1523, 1535 (S.D.N.Y. 1985) (emphasis added); *accord, e.g.*, *Briarpatch Ltd.*, 373 F.3d at 306 ("Like the elements of awareness or intent, the enrichment element here limits the scope of the claim but leaves its fundamental nature unaltered."); *Nat'l Basketball Ass'n v. Motorola, Inc.*, 105 F.3d 841, 851 (2d Cir. 1997) ("commercial immorality" is "in no meaningful fashion distinguishable from infringement"); *Eyal R.D. Corp. v. Jewelex N.Y. Ltd.*, 784 F. Supp. 2d 441, 447 (S.D.N.Y. 2011) (plaintiff's allegations of intent or bad faith not sufficient to distinguish between claims); *Orange Cty. Choppers, Inc. v. Olaes Enters.*, 497 F. Supp. 2d 541, 556 (S.D.N.Y. 2007) (allegation of using plaintiff's property to compete with defendant "is the very essence of an infringement claim" and thus the "unfair competition and copyright infringement claims are duplicative in substance and objective"). The same holds true here; the "basic acts" underlying Plaintiffs' unfair competition claims are that Vimeo infringed Plaintiffs' rights in pre-1972 sound recordings. An allegation of bad faith or

---

[2]     Even before Section 301(a) was passed by Congress, New York courts recognized that, to give full respect to federal law, unfair competition claims must be dismissed where they duplicate copyright claims, because "[i]f mere copying of copyrighted matter were to constitute unfair competition, almost every copyright owner could resort to … calling his cause of action one for unfair competition." *Field v. True Comics*, 89 N.Y.S.2d 35, 36 (N.Y. Sup. Ct. 1949).

commercial immorality does not make the claim substantively different from infringement—just a particular **species** of infringement, akin to alleging willful and contributory infringement under federal copyright law (which are subject to the safe harbor, *see supra* Part I.A).  "To call such conduct [bad faith] adds nothing" but a "judgmental label."  *Mayer*, 601 F. Supp. at 1535.

*Third*, Plaintiffs' pleadings demonstrate the absence of any factual allegations unique to unfair competition:  the substantive allegations in Plaintiffs' Amended Complaint are **identical** to those made by the owners of the musical compositions—whose complaint does not include an unfair competition claim—with only the words "sound recordings" and "musical compositions" interposed.  *Compare* No. 09-cv-10101, Dkt. 141 (sound recordings), ¶¶ 1-6, 20-29 ("Facts Applicable to All Claims"), *with* No. 09-cv-10105, Dkt. 139 (musical compositions), ¶¶ 1-6, 25-34 ("Facts Applicable to All Claims").  This confirms that Plaintiffs' unfair competition claims are entirely duplicative of their common-law copyright claims.

### C.    The Second Circuit Necessarily Decided the Issue Presented Here

Although the Court need not involve the law-of-the-case doctrine to grant this motion, there is no doubt that the Second Circuit's ruling that "the safe harbor protects service providers from infringement liability under state copyright laws," *Vimeo III*, 826 F.3d at 82, necessarily encompasses all state-law claims asserting infringement of pre-1972 sound recordings.  The entire point of interlocutory appeal was to obtain a definitive ruling on this issue.  Plaintiffs thus ignore that: (1) this Court certified the issue in terms of whether "the DMCA's safe-harbor provisions are applicable to [pre-1972] sound recordings," *Vimeo II*, 972 F. Supp. 2d at 556, and did not parse the question by cause of action; (2) certification would have been futile if it did not provide the prospect of complete relief as to these works, *id.* at 552; and (3) the Second Circuit vacated the grant of summary judgment to Plaintiffs, again without regard to cause of action.  It is these actions and the text of the decision that inform the mandate, not isolated quotes from briefs.

Plaintiffs had ample opportunity (and arguably were duty-bound) to inform this Court of any position that the certification would not resolve all issues relating to whether their claims based on pre-1972 sound recordings were subject to the DMCA safe harbor or to argue that the Second Circuit should not construe the DMCA to apply to unfair competition claims premised upon copyright infringement.  Having failed to squarely raise the issue at that time, they should not be rewarded with an opportunity to relitigate the appeal.  *See Fogel v. Chestnutt*, 668 F.2d 100, 109 (2d Cir. 1981) ("It would be absurd that a party who has chosen not to argue a point on a first appeal should stand better as regards the law of the case than one who had argued and lost.").

## II.   IF PLAINTIFFS' STATE-LAW UNFAIR COMPETITION CLAIMS ARE NOT CLAIMS FOR INFRINGEMENT OF COPYRIGHT, VIMEO IS ENTITLED TO IMMUNITY PURSUANT TO SECTION 230 OF THE CDA

If Plaintiffs' unfair competition claims are not premised upon infringement of copyright but rather on some other (unspecified) acts of unfair competition, then Vimeo is necessarily immune from suit pursuant to Section 230 of the CDA.  *See* Vimeo Br. 14-15.  Plaintiffs do not challenge Vimeo's satisfaction of the requirements for CDA immunity;[3] rather, they argue (Opp. Br. 13-14) that an unfair competition claim can still "pertain to" intellectual property even if it is not a copyright infringement claim.  This misses the point; even assuming the CDA applies to state-law claims (*but see* Vimeo Br. 15 n.10), Plaintiffs offer no explanation how ***their*** unfair competition claims do not sound in copyright infringement, but nonetheless still "pertain to" (some other form of) intellectual property.  Nor do Plaintiffs dispute that, through the combination of the DMCA and the CDA, Congress sought to comprehensively protect service providers like Vimeo from ***all*** content-related claims based on users' activity.  *See Zeran v. Am. Online, Inc.*, 129 F.3d

---

[3]   Plaintiffs weakly suggest there may be "some question" about whether Vimeo qualifies for CDA immunity based on videos allegedly uploaded by employees.  Opp. Br. 10 n.7.  But as Vimeo has already explained (Vimeo Br. 6 n.4, 14 n.9), those videos are excluded from this motion.

327, 330 (4th Cir. 1997). Plaintiffs' unfair competition claims either sounds in copyright (and is subject to the DMCA safe harbor, *see supra* Part I) or it doesn't (and is barred by the CDA). It is not some mythical beast that changes its shape on Plaintiffs' command.

## III.   PLAINTIFFS FAILED TO PROPERLY PLEAD UNFAIR COMPETITION

Plaintiffs do not dispute that they are obligated to sufficiently allege bad faith. *See* Vimeo Br. 15-16. While Plaintiffs recite (Opp. Br. 16-19) a lengthy wish list of what they think can be "inferred" from their Complaint—characterizations that are not contained in the pleading and thus cannot be considered, *Re-Alco Indus., Inc. v. Nat'l Ctr. for Health Educ., Inc.*, 812 F. Supp. 387, 394 (S.D.N.Y. 1993)—they nonetheless fail to direct the Court to any non-conclusory factual allegations of bad faith by Vimeo that pertain to Plaintiffs' unfair competition claim. For example, Plaintiffs do not: (1) identify any allegations of Vimeo's intent to deceive or mislead consumers, which distinguishes Plaintiffs' claims from the cases they cite (Opp. Br. 20); or (2) allege that Vimeo had any knowledge, whether actual or "red flag," of more than 270 of the videos at issue. Ultimately, Plaintiffs only allege Vimeo was generally aware of the fact that users could upload infringing content.[4] This cannot suffice as evidence of bad faith since it would be true of any party that provides users with the ability to upload their own content; if this did suffice, then bad faith adds absolutely nothing to a claim of copyright infringement against an online service provider.[5]

<u>CONCLUSION</u>

Plaintiffs' unfair competition claims should be dismissed with prejudice.

---

[4]   Plaintiffs point to a handful of statements by employees communicating with users, but the Court has already held that these sporadic statements cannot show that Vimeo encouraged infringement, either on an individual or aggregate basis. *Vimeo I*, 972 F. Supp. 2d at 534.

[5]   Plaintiffs' request for leave to amend (Opp. Br. 20 n.11) should be denied because: (1) Local Rule 7.1(b) precludes a party from seeking new relief in an opposition brief; (2) Plaintiffs did not submit a letter to the Court indicating an intention to amend, in violation of this Court's individual practices (Rule 4.C); and (3) Plaintiffs identify no facts that would save their claim.

Dated: August 31, 2017
         New York, New York

Respectfully submitted,

/s/ Robert L. Raskopf

Robert L. Raskopf
Todd Anten
QUINN EMANUEL URQUHART & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000

- and -

Michael A. Cheah
VIMEO, INC.
555 West 18th Street
New York, New York 10011
(212) 314-7457

*Attorneys for Defendants Vimeo, Inc. and
Connected Ventures, LLC*

11