UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CAPITOL RECORDS, LLC, a Delaware limited liability company; CAROLINE RECORDS, INC., a New York Corporation; VIRGIN RECORDS AMERICA, INC., a California Corporation,<br><br>Plaintiffs,<br><br>v.<br><br>VIMEO, LLC d/b/a VIMEO.COM, a Delaware Limited Liability Company; CONNECTED VENTURES, LLC, a Delaware Limited Liability Company, and DOES 1-20, inclusive,<br><br>Defendants. | CASE NOS. 09 CV 10101 (RA)<br>09 CV 10105 (RA)<br><br>**PLAINTIFFS' POST-REMAND REPLY MEMORANDUM (1) IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT ON DEFENDANTS' DEFENSE UNDER SECTION 512 OF THE DMCA, AND (2) IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |
| EMI BLACKWOOD MUSIC, INC., a Connecticut Corporation; EMI APRIL MUSIC, INC., a Connecticut Corporation; EMI VIRGIN MUSIC, INC., a New York Corporation; COLGEMS-EMI MUSIC, INC., a Delaware Corporation; EMI VIRGIN SONGS, INC., a New York Corporation; EMI GOLD HORIZON MUSIC CORP., a New York Corporation; EMI U CATALOG, INC., a New York Corporation; EMI UNART CATALOG INC., a New York Corporation; JOBETE MUSIC CO., INC., a Michigan Corporation; and STONE DIAMOND MUSIC CORPORATION, a Michigan Corporation,<br><br>Plaintiffs,<br><br>v.<br><br>VIMEO, LLC d/b/a VIMEO.COM, a Delaware Limited Liability Company; CONNECTED VENTURES, LLC, a Delaware Limited Liability Company, and DOES 1-20, inclusive,<br><br>Defendants. | |

# TABLE OF CONTENTS

Introduction ........................................................................................................................... 1

    I.    PLAINTIFFS HAVE SATISFIED THE BURDEN OF PROOF OPPOSING SUMMARY JUDGMENT ................................................................................. 3

    II.   THE REASONABLE PERSON: KNOWLEDGE OF VIMEO STAFF ............... 4

    III.  THE TOTALITY OF THE CIRCUMSTANCES CREATES A TRIABLE ISSUE OF FACT ON RED FLAG KNOWLEDGE ............................................. 5

    IV.  VIMEO'S HYPOTHETICAL DEFENSES DO NOT PROVIDE IMMUNITY ......................................................................................................... 9

    V.   ALTERNATIVELY, A TRIABLE ISSUE OF FACT EXISTS AS TO VIMEO'S WILLFUL BLINDNESS TO THE SPECIFIC VIDEOS AT ISSUE ......................................................................................................................... 14

Conclusion .......................................................................................................................... 15

# TABLE OF AUTHORITIES

**CASES**

*A&M Records, Inc. v. Napster, Inc.*,
  239 F.3d 1004 (9th Cir. 2001) ............................................................................................8

*Agee v. Paramount Comm'cns., Inc.*,
  59 F.3d 317 (2d Cir. 1995) ..................................................................................................3

*Capitol Records, LLC v. Vimeo, LLC*,
  826 F.3d 78 (2d Cir. 2016) ............................................................................3, 4, 6, 8, 9, 14

*Capitol Records, LLC v. Vimeo, LLC*,
  972 F. Supp. 2d. 500 (S.D.N.Y. 2013) ........................................................................1, 5, 14

*Capitol Records, LLC v. Vimeo, LLC*,
  972 F.Supp.2d 537 (S.D.N.Y. 2013) ........................................................................10, 11, 12

*Cariou v. Prince*,
  714 F.3d 694 (2d Cir. 2013) ..............................................................................................11

*Castle Rock Entertainment, Inc. v. Carol Publishing Grp., Inc.*,
  150 F.3d 132 (2d Cir. 1998) ..............................................................................................13

*EMI Christian Music Grp., Inc. v. MP3tunes, LLC*,
  844 F.3d 79 (2d Cir. 2016) ....................................................................................1, 6, 9, 14

*Gummo v. Village of DePew*,
  75 F.3d 98 (2d Cir. 1996) ....................................................................................................4

*Lennon v. Premise Media Corp.*,
  556 F.Supp.2d 310 (S.D.N.Y. 2008) ..................................................................................11

*Seltzer v. Green Day, Inc.*,
  725 F.3d 1170 (9th Cir. 2013) ............................................................................................11

*Threshold Media Corp v. Relativity Media, LLC*,
  166 F.Supp.3d 1011, 1023, 1026-27 (C.D. Cal. 2013) ......................................................11

*United States v. AINA-Marshall*,
  336 F.3d 167 (2d Cir. 2003) ..............................................................................................14

*Viacom Int'l. Inc. v. YouTube, Inc.*,
  676 F. 3d 19 (2d Cir. 2012) ..........................................................................................4, 14

**STATUTES**

17 U.S.C.
   § 301(c) ............................................................................................................................7
   § 302 .................................................................................................................................7
   § 512(g) ..........................................................................................................................12
   § 512(l) ...........................................................................................................................13
   § 512(m) .........................................................................................................................14
   § 512g(1) ..........................................................................................................................3

**OTHER AUTHORITIES**

3 Nimmer, Nimmer On Copyright,
   § 12.11[D][2] at 12-214.2 ................................................................................................13

4 M&D Nimmer, Nimmer On Copyright,
   § 12B.10[B][3][a] at 12B-174 ...........................................................................................3
   § 12B.07[A] at 12B-132-133 ..........................................................................................13

Jane C. Ginsburg, *Separating the* Sony *Sheep from the* Grokster *Goats:*
   *Reckoning the Future Business Plans of Copyright-Dependent Technology*
   *Entrepreneurs,* 50 Ariz. L. Rev. 577, 598 (2008) ............................................................3

9204220.1

**Introduction**

Vimeo's Opposition constructs a DMCA world where red flag knowledge does not exist. For that reason, in the course of its Opposition, Vimeo never answers the question posed by this Court: "How could a service provider ever be found to have red flag, put aside actual, knowledge, in light of the arguments you're making? What would an example of that look like?" July 18, 2013, Tr. at 28. Vimeo's only response at that time (*id.* at 28-29) – that such evidence would be an email from user that says "I just uploaded to Vimeo a complete rip of a feature-length film that I didn't make at the following URL and I didn't have permission to do it" – not only is unrealistic, but as the Court pointed out, sets too high a bar. *Capitol Records, LLC v. Vimeo, LLC,* 972 F. Supp. 2d 500, 522 (S.D.N.Y. 2013). Instead of dealing with this issue, in its Opposition, Vimeo all but ignores the evidence relating to "specific infringements" with which its employees interacted and bases its arguments on several erroneous premises:

1. The Court of Appeals inquiry and its analysis was limited to the certified question. The Court was not asked to consider the "totality of the circumstances"; for example facts concerning the content or context of videos, the webpages where the videos were located, the nature and reason for "the interaction" with the videos at issue, or the knowledge, job duties, and experience of the Vimeo employees who interacted with the videos. This evidence, not before the Court of Appeals, provides at least an inference that a reasonable person would or should recognize the use of specific commercial, copyrighted music[1] in the videos at issue (generally identified by both song title and artist name) and that the music was appropriated essentially in its entirety by copying and then synchronizing a commercial recording to visual material. Vimeo simply avoids and relegates to insignificance all of this and the other evidence provided by Plaintiffs by the expedient of denominating it evidence that a video contained one of

---

[1] Vimeo at times refers to "songs" or "music." Reference herein to "music" encompasses both the Record Companies' sound recordings and the Music Publishers' musical compositions.

1

Plaintiffs' songs or that a Vimeo employee viewed the video. It then creates a hypothetical third category, "evidence that any infringement is objectively obvious," and leaves it ominously blank (Opposition at 14) without disclosing what type of evidence it would deem sufficient to satisfy this criteria. (Vimeo's "Response Chart" adds nothing, invariably responding with one or two stock phrases that contain no analysis or reasoning.).

2. Vimeo does not recognize that the "reasonable person" standard presupposes that this hypothetical person is assumed to be aware of all the facts and circumstances known to Vimeo and its Staff and applies them in an objective, not subjective, way. Vimeo then further collapses red flag knowledge into a mirror image of actual knowledge by arguing that the Vimeo employees (not the reasonable person) who interacted with the videos at issue did not (and could never) have *actual knowledge* of infringement.

3. Vimeo relies on the unsupported, hypothetical possibility that the music was licensed or its exploitation was fair use notwithstanding that no Staff member claimed to believe that was the case or even to have considered these issues. If that were all that was necessary for DMCA immunity, all service providers would qualify under virtually all circumstances. Not only is there a complete lack of evidence on these defenses, to the extent this issue is relevant, the evidence is to the contrary.

4. Vimeo concocts for itself a dilemma that does not exist, claiming it must either remove all videos with music or face DMCA liability. The DMCA (and Vimeo's Terms of Service) provide Vimeo complete protection from erroneous removal, although here removal of the videos at issue would not have been erroneous (and Vimeo removed many types of videos – but not those using copyrighted music – at its sole discretion.).

The Court of Appeals opinion does not support and is not consistent with Vimeo's approach. The Court did not have to, and did not, review any of the voluminous evidence

9204220.1

relating to specific videos at issue and to the facts and circumstances of the Vimeo employees who interacted with the videos. This evidence is the something "more" not subsumed in the certified question and that the Court found lacking. *Capitol Records, LLC v. Vimeo, LLC*, 826 F.3d 78, 97 (2d Cir. 2016). Plaintiffs have now provided this evidence that raises a triable issue of fact as to red flag knowledge, almost all of which is uncontroverted. Vimeo does little to refute the detailed factual analysis that its Staff knew much more and did much more than view the videos at issue and hear the music. As explained later, they knew Vimeo permitted and invited copyrighted music to be incorporated in its videos, they knew what the specific music was, and they knew that it was copied wholesale from commercial recordings and synchronized with visual images to create the videos Vimeo publicly performed. That is infringement. *Agee v. Paramount Comm'cns., Inc.*, 59 F.3d 317, 322 (2d Cir. 1995) ("A synchronization of previously recorded sounds onto the soundtrack of an audiovisual work" is infringement).

## I. PLAINTIFFS HAVE SATISFIED THE BURDEN OF PROOF OPPOSING SUMMARY JUDGMENT

Plaintiffs accurately described that they need not "prove" red flag knowledge with "certainty" at the summary judgment stage, but need only adduce evidence that a reasonable jury *could* find red flag knowledge. Opening Brief at 2-3. In deciding that issue, the Court needs to consider that under the red flag knowledge standard, "'apparent' does not mean, 'in fact illegal,' nor does it mean 'conclusively exists.'" Jane C. Ginsburg, *Separating the* Sony *Sheep from the* Grokster *Goats: Reckoning the Future Business Plans of Copyright-Dependent Technology Entrepreneurs,* 50 Ariz. L. Rev. 577, 598 (2008); *see* 4 M&D Nimmer, Nimmer On Copyright, § 12B.10[B][3][a] at 12B-174. ("That language [in section 512g(1)] recognizes that at times service providers will be aware of 'facts or circumstance from which infringing activity seems apparent'—yet, at the end of the day, 'the material or activity may ultimately be determined to be non infringing".). The Court of Appeals' discussion of shifting the burden of proof on red flag

3

knowledge was with reference to "the burden of persuading the *factfinder,* sometimes called the burden of persuasion". *Capitol Records,* 826 F.3d at 94 & n. 9 (emphasis added). The Court did not change the summary judgment standard. *See, e.g.,Gummo v. Village of DePew*, 75 F.3d 98, 107 (2d Cir. 1996) (in ruling on a motion for summary judgment against a party who will bear the ultimate burden of proof at trial, "the district court must view the evidence in the light most favorable to the party opposing summary judgment and must draw all permissible inferences . . . in favor of that party.").

## II. THE REASONABLE PERSON: KNOWLEDGE OF VIMEO STAFF

"The red flag provision turns on whether the provider was subjectively aware of facts that would have made the specific infringement 'objectively obvious' to a reasonable person." *Viacom Int'l. Inc. v. YouTube, Inc.*, 676 F. 3d 19, 31 (2d Cir. 2012). Thus, while the red flag standard does not "assume" expertise in music or copyright or otherwise, it also does not assume a total lack of such experience or knowledge; it assumes whatever knowledge or expertise Vimeo and Vimeo Staff possessed. *Capitol Records,* 826 F.3d at 97 ("It is of course entirely possible that an employee of the service provider who viewed a video did have expertise or knowledge with respect to the market for music or the laws of copyright").

Vimeo Staff did not have to be experts in copyright law to have red flag knowledge, and red flag knowledge does not require legal analysis or a legal determination of infringement.[2] (Otherwise only lawyers could have red flag knowledge and, according to Vimeo, not even lawyers.) However, the knowledge, experience, and expertise that Vimeo Staff possessed was much more than running a for-profit business that used intellectual property. Vimeo employees

---

[2] However, Vimeo Staff were familiar with the concept of copyright. For example: when asked whether the recorded music he used in videos were "covered by copyright," a Vimeo Staff member responded "It's likely". Verdugo Depo. (Frackman Decl., Ex. 5, Dkt. 89-2) at 193:13-194:6. Vimeo Staff advised users "[w]e can't officially tell you that using *copyrighted music* is okay. *But*. . ." , and discussed internally that "big media companies might dispute our use of *copyrighted music* in our videos"). Plaintiffs' Post-Remand Supplemental Statement of Undisputed and/or Genuinely Disputed Material Facts ("SSUF"), ¶ ¶ 79, 159 (emphases added).

not only worked in (and ran) a business based on intellectual property, they dealt with music and copyright issues (including their DMCA agent and copyright compliance officer, who himself uploaded infringing videos). SSUF 1, 139-52, 52-55, 166; Depo. Ex. 119 (Dkt. 93-14 at p. 62); Plaintiffs' original SUF (Dkt. 72), ¶ 370. They consulted with their lawyer on copyright issues involving music. SSUF 39. Vimeo Staff were technically adept at and actually synchronized and uploaded copyrighted music themselves and recognized when other videos contained such music. SSUF 21, 25, 29, 39-59, 119-23, 127, 157.

### III. THE TOTALITY OF THE CIRCUMSTANCES CREATES A TRIABLE ISSUE OF FACT ON RED FLAG KNOWLEDGE

As this Court determined, the relevant consideration is whether the "totality of the circumstances" evidences or gives rise to an inference that a jury could find a triable issue of fact as to red flag knowledge. *Capitol Records,* 972 F.Supp.2d at 522. *To begin with,* Vimeo concedes what is now irrefutable: (1) the videos at issue contained Plaintiffs' music; and (2) at least one Vimeo Staff watched all or part of each video. Opposition at 2.[3] Vimeo also informs the Court that it "need not delve into" whether "each of the Vimeo employees or interns who 'interacted' with a Video-in-Suit actually (1) viewed the whole Video (2) for the purpose of assessing infringement." Opposition at 7. (Vimeo then contests these facts but the evidence supports them and, in any event, they are not necessary to red flag knowledge.) SSUF 135-38; Plfs.' Resp. to Vimeo's Post-Remand Suppl. SUF at ¶¶ 23-24.

That, however, is *not the end* of the evidence, as Vimeo claims. The admitted use of Plaintiffs' music (that Vimeo euphemistically calls "a non-original audio component") was anything but "happenstance". Opposition at 3. Vimeo Staff, including those who interacted with the videos at issue, themselves copied Plaintiffs' (and other popular) music and incorporated it in

---

[3] Vimeo now says that these points "were never really in dispute" for purposes of this motion (Opposition at 2). That is not an accurate description of its previous position. *See, e.g., Capitol Records,* 972 F.Supp.2d at 522.

5

videos that they uploaded to the Vimeo website. SSUF 29, 39-59, 119-23. *See EMI Christian Music Grp., Inc. v. MP3tunes, LLC,* 844 F.3d 79, 93 (2d Cir. 2016) (executives used website to download infringing material). They participated in projects using Plaintiffs' copyrighted music and appeared in videos using Plaintiffs' copyrighted music. SSUF 58-59. They knew how to synchronize music to visual material and they knew that videos they uploaded used commercial music. SSUF 29, 39-59. Vimeo Staff taught users how to synchronize music, encouraged the use of music, and knew and advised users of the importance of music in videos. ("You know it, I know it, and our ears know it: videos and music go great together.") SSUF 47, 103-118, 154-67, 169-73; Plaintiffs' original SUF, ¶60. They featured videos with copyrighted music to promote the website (Staff Picks, HD Channel, and the Vimeo signature genre, "lipdubs"). SSUF 71-88, 103-118. *See MP3tunes*, 844 F.3d at 93 (jury can rely on evidence of actively encouraging infringement together with other evidence in deciding entitlement to safe harbor.).

Vimeo Staff devised a credit convention that they advised users to implement for the express purpose of identifying both the song and the recording artist whose commercial music was copied in the specific video. SSUF 61-68. (The example Vimeo gave users referred to one of Plaintiffs' recording artists, The Beatles.) SSUF 67. *Vimeo admits that of the 307 videos at issue, at least 300 came with music credit information in one form or another.* SSUF 61. The identification of the music generally was displayed prominently before the video was played. *Id.; see* Video Exs. 1-306; SSUF 7. Thus, the music not only was "recognizable"; it was specifically identified.[4] Vimeo employees commented on or reviewed comments by others that recognized the music in the specific video (including by name and/or artist) and its appeal.[5]

---

[4] The Court of Appeals questioned what was meant by the word "recognizable" in the certified question. *Capitol Records*, 826 F.3d at 96. In view of the credits, among other things, that is a moot point.

[5] In addition to the several comments quoted previously (Opening Brief at 7), other *examples* include the following Staff comments: "So much fun and very cool song selection . . ." (Video 6, employee Jonathan Marcus); "Vimeo is full of awesome music, agreed." (Video 35, Vimeo employee Karen Abad); "my love by bird and the bee" *[cont.]*

9204220.1

SSUF 17-19, 21, 24-26, 28.  They knew, used, and recognized copyrighted commercial music and recording artists.[6]  Staff who interacted with the videos were obviously fans of particular artists and "liked" videos that featured these artists.  Opening Brief at 8; SSUF 21, 25, 28, 80.  Vimeo grasps at straws when it claims that the presence of a title to the music in a video at issue could mean that the "song in the video could, for example, belong to the uploader".  Opposition at 15 n.11.  If Vimeo means that the uploader could have performed or written the song, then why didn't he or she say so?  More to the point, the music obviously did not "belong to the uploader" (*e.g.*, The Beatles, etc.).  Vimeo points to one song and artist where it contends, without evidence, that the credit has no meaning.  *Id.*  But clearly that video identifies someone *other* than the uploader as the artist (as is the case for every video at issue).[7]

Vimeo Staff reviewed videos as part of their job and in order to categorize, manage, and "curate" them including by burying, whitelisting, and placing them on Staff Channels, and in order to determine whether they complied with Vimeo's Terms of Service, Guidelines, and were consistent with Vimeo's "brand", *i.e.,* were "Vimeoesque".  SSUF 2-4, 8-28, 71-102.  The Staff's interactions with the videos at issue required them to review the videos in whole or in substantial part and to analyze and consider the entire video including the music which they

---

(Video 35, employee Daniel Hayek);  "it's by Air, the French electro lounge group. . . Thank you for doing this" (Video 42, Vimeo employee Daniel Hayek);  "I'm REALLY impressed with this, it covers a whole new territory for lip dubbing; closer to an actual music video . . ." (Video 51, Vimeo employee Jake Lowick);  "love this song!" (Video 66, Vimeo employee Karen Abad);  "Awesome song, awesome video," (Video 199, Vimeo employee Sam Morrill).  Comments by users included "that song never gets old" (Video 3);  "So much fun and very cool song selection" (Video 6);  "one of my favorite Radiohead tracks" (Video 15);  "I purchased the Beach Boy Pet Sounds.  I thought to myself, wouldn't it be nice to do a lip dub to 'Wouldn't It Be Nice'" (Video 17);   "my fav song on the album" (Video 99);  "Love the track, great fit and feel" (Video 56);  "Nice editing and music choice"; and "Great use of music and edits to drive the narrative.  Fantastic track" (Video 65).

[6]  For example, Vimeo employees created and uploaded videos at issue containing music owned by Plaintiffs and others.  Some had music industry experience.  They had personal music collections.  They recognized popular music.  SSUF 21, 24-25, 29, 39-59, 80, 119-23, 141-152.

[7]   It is not necessary that a defendant be aware of the owner of the music that was infringed, although here Vimeo concedes (for purposes of their motion) that Plaintiffs owned the music.  Nor is it necessary that the artist or the recording be identifiable.  All Post-72 Recordings are protected by federal copyright.  17 U.S.C. § 302 (copyright subsists from creation for 70 years after author's death.)  All Pre-72 recordings are protected by state law.  17 U.S.C. § 301(c) (state law claims exist until February 15, 2067.)

7

knew was integral to the videos. For example, "liking" a video was "an indication to a person whose video you watched that you enjoyed it," and was meant to promote that video to Vimeo users. SSUF 12, 15, 28. "Commenting" on a video was part of Vimeo Staff's duties to promote a particular video and create relationships with users. SSUF 15-16, 28. *See A&M Records, Inc. v. Napster*, *Inc.*, 239 F.3d 1004, 1020 & n. 5 (9th Cir. 2001) (knowledge "apparent" where, among other things, executives downloaded copyrighted songs from the system and "promoted the site with 'screenshots listing infringing files'.") "Whitelisting" a video was a determination that it complied with Vimeo Guidelines and was suitable for inclusion on the Vimeo website. SSUF 89-95. "Burying" a video required reviewing and making an evaluation of the video's contents and its placement on the website. SSUF 98-102. Vimeo Staff Channels reflected the Staff's "editorial" function to select videos (including that they not have "bad music") that were inspiring and interesting and which were then showcased and promoted. SSUF 71-88. When exposed to the videos at issue, Vimeo Staff heard more than a brief snippet of music, contrary to the Court of Appeals speculation. (*Capitol Records,* 826 F.3d at 96). Although even brief exposure would have been sufficient under the circumstances, the fact is that in the videos at issue the music generally was played throughout, in whole or in substantial part, was integral to the video, was not modified, and was not in the background. SSUF 7, 135-38. The music essentially was the "soundtrack." *See* SSUF 161. Vimeo Staff could not help but hear *and* focus on it in doing their job.

Vimeo Staff knew that major record companies, including Plaintiffs, objected to the use of their music, had not licensed it for use by Vimeo, and issued licenses to other user generated content sites with which Vimeo was in competition. SSUF 1, 48, 54-56, 141-42, 146-47, 156. Vimeo explored ways to detect the copyrighted music they knew existed or to license music but decided not to carry through. SSUF 141-44, 146-47. They knew that the copyright owners of

8

the music would demand payment (and Vimeo even reserved for such payment). Vimeo Staff was advised by its counsel, as early as February 2009, to stop using copyrighted music in videos uploaded to the website. SSUF 39. Vimeo knew and let its users know it was a home for copyrighted music.[8] SSUF 154-67; 103-118. *See MP3tunes*, 844 F.3d at 93 (telling users it was legal to download music evidenced red flag knowledge).

## IV. VIMEO'S HYPOTHETICAL DEFENSES DO NOT PROVIDE IMMUNITY

Vimeo's contention that the music in the videos at issue may be fair use or may be licensed is pure speculation. No Vimeo Staff came forward to claim that he or she considered fair use or license when viewing a video at issue, let alone that any facts led to the belief that a particular video was licensed or the use of music was fair use. Vimeo has not identified a single video at issue that factually supported fair use of music or the existence of a license. None of the uploaders ever claimed – even after his or her videos were taken down – that the music was licensed or a fair use. The apparently rehearsed testimony of certain Vimeo Staff, who recited by rote the words "fair use" and "license," amounts to they "couldn't know" – could never know. Opposition at 10. At best, Vimeo Staff, if they were ignorant of the copyright law and didn't even know what fair use entailed or whether or not a license existed, never did and never could consider those issues. In fact, Vimeo Staff *intentionally ignored* such "legal" issues. *E.g.,* Opening Brief at 15 ("legality doesn't matter when it comes to [the] uploading rules…"); *see Capitol Records,* 826 F.3d at 97 ("If the facts actually known by an employee of the service provider make infringement obvious, the service provider cannot escape liability through the mechanism of the safe harbor on the ground that the person with knowledge of those facts never thought of the obvious significance of what she saw in relation to infringement.").

---

[8] The knowledge and background referred to in this last paragraph are relevant to the way that a reasonable person would understand the use of music in the specific videos that were viewed. It is not "generalized knowledge" that copyrighted music was being used or could be used somewhere on the website. It is knowledge that Vimeo Staff brought with them when they viewed videos and, therefore, knowledge attributed to the reasonable person.

9

As Vimeo would have it, there never can be red flag knowledge because Vimeo (or any service provider) can not know for sure whether music is licensed or is fair use. *See, e.g.*, Opposition at 3 ("even an expert cannot determine on sight whether the use of a song in a video is licensed or fair use"); Opposition at 7 ("How would a Vimeo employee even know how to determine whether the use of a song in a video is fair use or licensed…"). So, Vimeo simply concludes that *all* of the videos – without specifying or analyzing any video at issue – may be subject to the affirmative defense. That is contrary to even Vimeo's original position that the use of copyrighted music "can conceivably be justified by a *colorable* claim of license or fair use." *Capitol Records, LLC v. Vimeo, LLC,* 972 F.Supp.2d 537, 547 (S.D.N.Y. 2013), quoting Vimeo Reply Mem. of Law in Support of Motion for Reconsideration and Certification at 5 (emphasis added). No "colorable claim" of license or fair use exists with respect to the videos at issue.

Speculative Fair Use: There is no basis to even speculate whether any of the videos made fair use of the music. As Plaintiffs pointed out (without response from Vimeo), on its face the videos at issue do not reflect traditional fair use subject matter (*e.g.*, criticism) and do not satisfy any of the fair use criteria. Opening Brief at 18-19. The use is not transformative and is for a commercial purpose; all or a substantial portion of the music was used; the music are creative works; and, the use has an impact on a traditional market for Plaintiffs' music. The uncontroverted evidence further argues against fair use. The music was used in its entirety or substantial part, and unmodified, was an integral and important part of the video, typically used for virtually the entire length of the video, and generally the only audio in the video. *See* SSUF 7, 135-38. And, of course, Plaintiffs' music was used (frequently showcased and promoted) as part of Vimeo's highly successful commercial business.

Fair use is not a defense under these circumstances. Vimeo itself recognized this fact in its advice to a user ("adding a third party's copyrighted content to a video generally . . .

10

constitutes copyright infringement," but adding "Go ahead and post it"). Original SUF ¶ 305. Vimeo repeated this advice to all users: "using much of the copyrighted work will weigh against fair use; even uses that are small as a percentage of the overall work might weigh against fair use if the heart of the work is used – for example a famous song riff"; "using a commercial music recording in its entirety as the background song of your video is not usually considered fair use". *See* Opening Brief at 18-19; SSUF 168 (citing Berkley 2nd Suppl. Decl. Exs. R-S).[9] It was not by accident that Vimeo Staff was told by counsel not to use (and to stop using) copyrighted music in videos – not that it was fair use. SSUF 39.

Phantom License: Random (and anonymous) users are not licensed by major record companies to use their valuable music (*Capitol Records,* 972 F.Supp.2d at 548-49), let alone licensed to disseminate that music on the internet for worldwide performance, viral download and distribution, or the making of an unauthorized derivative work. Further, there is no evidence any user had the right to sublicense any such (hypothetical) rights to Vimeo. Vimeo itself (unlike other similar websites such as YouTube) admittedly did not have a license to use Plaintiffs' music in its business. That is sufficient to defeat any license claim. Presumably, for that reason, the videos at issue did not indicate they were licensed by the copyright owner to the uploader. In addition, as this Court pointed out, "the copyrighted songs were an integral part of the videos: the videos played the songs essentially unmodified and in their entirety, and the length of the video corresponded to the length of the song." Therefore, "[a] jury could conclude .

---

[9] The cases cited by Vimeo (Opposition at 9) are not analogous to the videos at issue. Each case analyzed in detail the fair use factors and determined, among other things, the following: *Cariou v. Prince*, 714 F.3d 694, 706 (2d Cir. 2013) (artist physically altered a set of photographs to "manifest an entirely different aesthetic."); *Seltzer v. Green Day, Inc.*, 725 F.3d 1170, 1174, 1176-77 (9th Cir. 2013), ("video backdrop" depicted a wall covered in graffiti that included a modified and defaced copy of a poster of the plaintiff's work for the purpose of commenting); *Lennon v. Premise Media Corp.*, 556 F.Supp.2d 310, 317, 322 (S.D.N.Y. 2008) ("fifteen-second excerpt" of the song approximately one hour and five minutes into a movie was used for purposes of criticism and commentary.); *Threshold Media Corp v. Relativity Media, LLC*, 166 F.Supp.3d 1011, 1023, 1026-27 (C.D. Cal. 2013) (snippets of songs lasting 19 seconds, 16 seconds, 28 seconds, and 41 seconds used for "commentary and analysis").

11

. . that the individual users did not have permission to use the well-known songs in their videos."
*Id.* at 547.

Moreover, Vimeo employees who interacted with the videos at issue also made their own videos using Plaintiffs' music knowing they did not have a license. SSUF 29, 39-59, 119-23. Vimeo Staff knew that no royalties were paid the copyright owners, knew licenses were needed from the owners of the music, and knew music copyright owners – and specifically Plaintiffs – would and did object to the unlicensed use of their music. SSUF 1, 41, 48, 54-56, 153, 164. Vimeo never required users to obtain a license. To the contrary, Vimeo's stated policy was to permit the unlicensed use of music unless and until the owner located the infringement and sent a takedown notice. ("We allow it.") SSUF 163; *see also* SSUF 124, 154-62, 164-67. Despite all the evidence, Vimeo supports its position by claiming that its only alternatives are to "remove at first sight all videos containing music or risk a safe-harbor trial," Opposition at 9. As a matter of policy, Vimeo decided not to remove *any* videos at issue. Vimeo ignores that it (and other service providers) are protected from a claim of "wrongful" removal by Terms of Service (providing, among other things, that Vimeo can "block or remove videos . . . in its sole discretion.") (Depo. Ex. 304 [Dkt. 94-13 at p. 22]) and by the DMCA. § 512(g). Nimmer fully answers Vimeo's non-existent dilemma:

> To avoid placing the service provider on the horns of a dilemma, the [DMCA] statute affords relief under these circumstances:
>
>> '[A] service provider shall not be liable to any person for any claim based on the service provider's good faith disabling of access to, or removal of, material or activity claimed to be infringing … regardless of whether the material or activity is ultimately determined to be infringing.'
>
> The same dispensation applies if the service provider acted in response not to a notification, but 'based on facts or circumstances from which infringing activity is apparent,' even though those appearance might not ultimately pan out.

12

4 M&D Nimmer § 12B.07[A] at 12B-132-133 (footnotes omitted)  Conduct ultimately may prove to be non-infringing because defenses such as fair use and license are *not* simply assumed to provide DMCA immunity but rather are to be adjudicated at trial.  § 512(l) (failure to qualify for safe harbor "should not bear adversely" on any other defense).  In the case of apparent infringement that is not actual knowledge of infringement – and here the evidence leads to the conclusion of infringement – a service provider cannot (and need not) raise purely hypothetical defenses.  Rather, upon obtaining such knowledge it must "expeditiously" remove the apparent infringing material. That is precisely what Vimeo did by removing other copyrighted material such as movies and television shows.  *See, e.g.,* Decl. of Andrew Pile (Dkt. 57), ¶¶ 23-28.  Fair use and license are mixed questions of fact and law which, under the circumstances, should await a jury determination or a motion directed to the specific videos and the facts supporting (or more likely negating) those defenses.  Opening Brief at 18-19.[10]

     Irrelevant Counter-Notices:  Vimeo also stretches for support by claiming that users submitted counter-notifications "with regularity."  Opposition at 11.  There is no evidence that counter-notices were submitted "with regularity" with respect to the videos at issue or Plaintiffs' music.  Vimeo points to only three counter-notices – one was withdrawn and the others are not at issue.  There is no evidence that the Vimeo Staff who interacted with the videos at issue knew of the counter-notices or that they were based on or supported asserted fair use (or license).  Similarly, that a small number of videos uploaded by certain users purportedly *could* "connote an official relationship" with a record company or referred to Capitol Records or EMI (*id.*), means that Vimeo knew the identity of the owners of the music and that the owners were *not* the uploaders.  It is mere speculation that somehow this could reasonably imply a blanket Internet

---

[10]  It also merits noting and is relevant to the red flag analysis that fair use applies "*only* where there is substantial similarity between the original and allegedly infringing works, and thus actionable copying. . ." *Castle Rock Entertainment, Inc. v. Carol Publishing Grp., Inc.,* 150 F.3d 132, 144 (2d Cir. 1998) (emphasis added).  The same is true of a license defense.  3 Nimmer § 12.11[D][2] at 12-214.2.

9204220.1

license. This argument rings especially hollow when Vimeo acknowledged that only the copyright owner could authorize the use of its music, when Vimeo knew that Plaintiffs did not, and when there was no evidence of consent. SSUF 1, 41, 69-70, 125, 139, 153. Tellingly, the overwhelming majority of videos did not even contain any statement of this kind, unavailing as it is.

V. **ALTERNATIVELY, A TRIABLE ISSUE OF FACT EXISTS AS TO VIMEO'S WILLFUL BLINDNESS TO THE SPECIFIC VIDEOS AT ISSUE**

This Court previously analyzed the willful blindness issue but in a different context than presented here. The Court granted summary judgment to Vimeo because none of the examples provided by Plaintiffs related to the specific videos at issue and, therefore, would require monitoring in violation of § 512(m). *Capitol Records,* 972 F. Supp. 2d at 523-25. In its brief discussion, the Court of Appeals also emphasized that willful blindness "must relate to specific infringing material" and not require monitoring. *Capitol Records,* 826 F.3d at 98. These impediments to willful blindness do not exist here.

In *Viacom*, the Court quoted with approval its opinion in *United States v. AINA-Marshall*, 336 F.3d 167, 170 (2d Cir. 2003), that a person who "was aware of a high probability" of a fact and "consciously avoided confirming that fact" engaged in "conscious avoidance amounting to knowledge." 676 F.3d at *35*. Subsequent to the Court of Appeals opinion here, the Court in *MP3tunes* provided an illustration of this principle. As in *MP3tunes,* the facts discussed herein that evidence red flag knowledge also support willful blindness as to "*groups of works.*" Such a finding is not precluded by § 512(m) even without evidence that specific infringing music was heard by the defendants. 844 F.3d at 92-94. Among other things, Vimeo was not aware of any authorization to Vimeo or to random users to use Plaintiffs' recorded music (and knew that Plaintiffs objected to *Vimeo's* use of their music). Vimeo was implemented to facilitate and expressly encouraged infringement of music. Vimeo executives and other employees personally

14

9204220.1

used the website to infringe music. Vimeo was premised on the notion and advised users that the use of music was allowed and would be ignored. SSUF 1, 29, 39-59, 69-70, 103-118, 119-24, 127, 139, 154-67, 169-73. Vimeo and Vimeo Staff also knew of the specific music being used in the videos at issue, and that it was copied from commercial music (such as iTunes).[11] SSUF 21, 25, 39-59, 60-68, 80, 103-118, 169-173.

Vimeo purported to blind itself from what it easily could have confirmed – that these specific videos infringed copyrights in the music identified. After all, Vimeo communicated directly with users, either individually or collectively, on a number of issues, including copyright issues. They had an easy way to ask – if they had to ask – what music was being used and whether it was owned by users or its use was consensual, or otherwise permissible. They refused to do so.

## Conclusion

It is respectfully submitted that, at a minimum, a triable issue exists as to red flag knowledge and willful blindness with respect to the 307 videos at issue.

DATED: August 31, 2017  
          New York, New York

MITCHELL SILBERBERG & KNUPP LLP

By:   /s/ Russell J. Frackman  
Russell J. Frackman (*pro hac vice*)  
11377 West Olympic Boulevard  
Los Angeles, California 90064-1683  
Telephone: (310) 312-2000  
Facsimile: (310) 312-3100  
*Attorneys for Plaintiffs*

---

[11] Vimeo tries to distinguish *MP3tunes* as a website that was overwhelmingly infringing. That is not a requirement, nor should it be, of red flag knowledge or willful blindness. Otherwise, a large website could infringe massively and be protected because infringement was only a tiny percentage of its use. (The number of infringements of only Plaintiffs' music here is not insignificant.) But, in any event, there is no reason to insulate Vimeo from its blindness to specific facts and specific infringements in specific videos.

9204220.1