USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED: 3/31/2018

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

CAPITAL RECORDS, LLC, *et al.*,

        Plaintiffs,

v.

VIMEO, LLC, *et al.*,

        Defendants.

---

EMI BLACKWOOD MUSIC, INC., *et al.*,

        Plaintiffs,

v.

VIMEO, LLC, *et al.*,

        Defendants.

OPINION AND ORDER

No. 09-CV-10101 (RA)

No. 09-CV-10105 (RA)

RONNIE ABRAMS, United States District Judge:

    Plaintiffs bring this copyright-infringement action against Vimeo, LLC and Connected Ventures, LLC (collectively, "Vimeo"). In 2013, this Court granted in part and denied in part the parties' cross-motions for summary judgment and certified several questions to the Second Circuit for an interlocutory appeal pursuant to 28 U.S.C. § 1292(b). *See* Op. and Order re: Motions for Summary Judgment ("2013 Op.") at 56 (Dkt. 119), *as amended by* Op. and Order re: Reconsideration, Amendment, and Interlocutory Appeal ("Recon. Op.") (Dkt. 139). The Second Circuit accepted the interlocutory appeal and affirmed in part and vacated in part this Court's decision. *Capitol Records, LLC v. Vimeo, LLC*, 826 F.3d 78, 81 (2d Cir. 2016), *cert. denied*, 137 S. Ct. 1374 (2017). Over the following months, the parties briefed new and renewed motions in

light of the Circuit's decision. This Opinion addresses just one of those motions: Vimeo's motion to dismiss Plaintiffs' unfair-competition claims.[1] For the reasons explained below, that motion is granted in part and denied in part.

## BACKGROUND

This Court and the Second Circuit have recounted this case's factual background and explained the relevant statutory scheme. *See Vimeo*, 826 F.3d at 82–87; 2013 Op. at 2–6. For the purposes of this Opinion, the Court assumes the reader's familiarity with the case and will restate only the basics relevant to this motion.

The Digital Millennium Copyright Act of 1998 (the "DMCA") "gives qualifying Internet service providers protection from liability for copyright infringement when their users upload infringing material on the service provider's site and the service provider is unaware of the infringement." *Vimeo*, 826 F.3d at 81 (citing 17 U.S.C. § 512(c)). In effect, the DMCA provides a safe harbor to "insulate[] service providers from liability for infringements of which they are unaware, contained in material posted to their sites by users, so as to make it commercially feasible for them to provide valuable Internet services to the public." *Id.* at 82. The pertinent safe harbor protects certain qualifying service providers from being "liable . . . for infringement of copyright by reason of the storage at the direction of a user of material that resides on a system or network controlled or operated by or for the service provider." 17 U.S.C. § 512(c)(1).

Plaintiffs own the rights to innumerable songs and seek relief from Vimeo for instances where their copyrighted songs were purportedly infringed by videos posted on Vimeo's website.

---

[1] Only Capitol Records, LLC, Caroline Records, Inc., and Virgin Records America, Inc. (referred to collectively as "Plaintiffs" throughout this Opinion), assert unfair-competition claims. Thus, Vimeo's motion and this decision technically apply only to the case brought by those entities, No. 09-cv-10101, and not to the related case No. 09-cv-10105. Because Vimeo filed this motion in both cases, however, this Opinion shall likewise be filed on both dockets.

Plaintiffs' copyrighted songs include both pre-1972 and post-1972 works, but they do not assert any federal claims as to the pre-1972 recordings. Rather, as to those recordings only, Plaintiffs seek relief under state law for "Common Law Copyright Infringement and Misappropriation" and "Unfair Competition." *See* Am. Comp. ¶¶ 61–75 (Dkt. 141). Plaintiffs have a good reason for not asserting federal claims for their pre-1972 works: under the Copyright Act, there is no federal copyright protection for sound recordings made before February 15, 1972. *Vimeo*, 826 F.3d at 87; *see* 17 U.S.C. § 301(c).

The litigation in this case so far has focused on whether (and the extent to which) the DMCA safe harbor protects Vimeo from liability. This Court has already ruled on cross-motions for summary judgment on that affirmative defense. In doing so, the Court granted summary judgment to Plaintiffs on all the Videos-in-Suit featuring pre-1972 works on the theory that the DMCA safe harbor did not apply to pre-1972 works. *See* 2013 Op. at 55 & n.21. The Court then certified several questions—including the question of whether the DMCA safe harbor could protect a service provider from liability based on pre-1972 recordings—to the Second Circuit for an interlocutory appeal, stayed the case, and granted Plaintiffs leave to amend their complaint to add additional Videos-in-Suit. Plaintiffs filed their Amended Complaint on January 9, 2014. *See* Am. Comp. (Dkt. 141). In light of the stay, the Court also permitted Vimeo until 30 days after the Second Circuit's decision on interlocutory appeal to respond to the Amended Complaint. *See* Endorsed Letter (Dkt. 143).

On appeal, the Second Circuit vacated this Court's decision to the extent this Court had held that the DMCA safe harbor did not apply to pre-1972 recordings. The Circuit "conclude[d] that the safe harbor established by § 512(c) protects a qualifying service provider from liability for infringement of copyright under state law" as well as federal law. *See Vimeo*, 826 F.3d at 93.

3

Thus, the safe harbor applies to liability based on infringement of pre-1972 recordings. In light of the Circuit's decision, and in response to Plaintiffs' Amended Complaint, Vimeo now moves to dismiss Plaintiffs' unfair-competition claims.

## LEGAL STANDARD

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). On a Rule 12(b)(6) motion, the question is "not whether [the plaintiff] will ultimately prevail," but rather "whether his complaint [is] sufficient to cross the federal court's threshold." *Skinner v. Switzer*, 562 U.S. 521, 529–30 (2011) (internal quotation marks omitted). In answering this question, the Court must "accept[] all factual allegations as true, but giv[e] no effect to legal conclusions couched as factual allegations." *Stadnick v. Vivint Solar, Inc.*, 861 F.3d 31, 35 (2d Cir. 2017) (quoting *Starr v. Sony BMG Music Entm't*, 592 F.3d 314, 321 (2d Cir. 2010)).

In light of the procedural posture of this case, the usual motion-to-dismiss standards interact with the law of the case doctrine, which generally requires courts to adhere to their own decisions "in subsequent stages in the same case." *Johnson v. Holder*, 564 F.3d 95, 99 (2d Cir. 2009) (citation omitted). Where, as here, a case has been remanded to the district court, the doctrine also bars relitigation of issues that the appellate court expressly or impliedly decided on appeal. *See Brown v. City of Syracuse*, 673 F.3d 141, 147 (2d Cir. 2012).

## DISCUSSION

Vimeo moves to dismiss Plaintiffs' unfair-competition claims on two grounds. First, Vimeo argues that it is protected from liability for unfair competition under the DMCA safe harbor and for other reasons. Second, it argues that Plaintiffs have failed to plead facts adequately supporting their unfair-competition claims under Federal Rule of Civil Procedure 12(b)(6).

### I. Safe-Harbor Protections

Vimeo primarily asks this court to "confirm that the DMCA safe harbor applies" to Plaintiffs' unfair-competition claims and to dismiss with prejudice the claims that fall within that safe harbor. According to Vimeo, the DMCA should bar any unfair-competition claims that meet the safe harbor's various conditions and are founded on allegations of copyright infringement. *See* Vimeo Mem. at 9 ("[T]he phrase "infringement of copyright" confers protection against *all* state-law claims that seek to vindicate rights abridged by infringement of pre-1972 sound recordings, no matter what the claim is called under state law." (emphasis in original)). Plaintiffs respond that such an interpretation of the DMCA subverts the purposes of the statute and ignores the differences between copyright claims and unfair-competition claims under state law.

"As in any statutory construction case," the Court first looks to the statute's text, proceeding with the understanding that "statutory terms are generally interpreted in accordance with their ordinary meaning." *Sebelius v. Cloer*, 569 U.S. 369, 376 (2013). The DMCA safe harbor declares that certain entities "shall not be liable . . . for infringement of copyright" if they meet certain requirements. 17 U.S.C. § 512(c)(1). As the Second Circuit held on appeal in this case, this safe harbor applies equally to copyright-infringement claims under state and federal

law. *Vimeo*, 826 F.3d at 89. The question here is whether it also can apply to non-copyright claims that are founded on copyright infringement. The answer is yes. In the same way that the statute does not distinguish between federal and state copyright-infringement claims, *see id.*, it does not distinguish between copyright-infringement claims and other types of claims that result in "liab[ility] . . . for infringement of copyright." Instead, the safe harbor precludes liability for a particular type of conduct—namely, "infringement of copyright." This reading plainly encompasses copyright-infringement claims, because "[o]ne who has been found liable for infringement of copyright under state [or federal] laws has indisputably been found 'liable for infringement of copyright.'" *See id.* But it also covers other claims for which liability requires proof of copyright infringement. Whenever copyright infringement is a necessary element of a claim, liability for that claim amounts to liability "for infringement of copyright" under the DMCA because no liability could be imposed absent the relevant copyright infringement.

Claims for unfair competition under New York law fall within this category when they are predicated on copyright infringement. Fundamentally, unfair competition occurs when one party takes "the skill, expenditures and labors of a competitor," and misappropriates for their own "commercial advantage" the "benefit or property right belonging to another." *Big Vision Private Ltd. v. E.I. du Pont de Nemours & Co.*, 610 F. App'x 69, 70 (2d Cir. 2015) (citation and internal quotation marks omitted). Usually, such misappropriation manifests itself as "the taking and use of the plaintiff's property to compete against the plaintiff's own use of the same property[.]" *Roy Exp. Co. Establishment of Vaduz, Liechtenstein v. Columbia Broad. Sys., Inc.*, 672 F.2d 1095, 1105 (2d Cir. 1982). Unfair-competition claims also require the plaintiff to show that the defendant misappropriated the property in bad faith. *Apogee Handcraft, Inc. v. Verragio, Ltd.*, 65 N.Y.S.3d 27, 29 (N.Y. App. Div. 2017); *see also Empresa Cubana Del*

6

*Tabaco v. Gen. Cigar Co. Inc.*, 385 F. App'x 29, 32 (2d Cir. 2010) (gathering cases). When unfair-competition claims are based on a defendant's alleged misappropriation of copyrighted works, plaintiffs must demonstrate both that the defendant infringed their copyright through the "unauthorized copying and distribution" of their property and that the defendant "compet[ed] in the marketplace or [took] similar actions designed for commercial benefit . . . or [deceived] the public." *Capitol Records, Inc. v. Naxos of Am., Inc.*, 830 N.E.2d 250, 266 (N.Y. 2005) (citations omitted).

Here, Plaintiffs explicitly premise their unfair-competition claims on Vimeo's (or its users') purported infringement of their copyrights to the pre-1972 recordings. They allege no other misappropriation of property or underlying conduct on which they could base their unfair-competition claims. Thus, if Vimeo is liable to Plaintiffs for unfair competition on Plaintiffs' theory, Vimeo will necessarily be liable for the infringement of copyright. The DMCA safe harbor therefore applies to Plaintiffs' unfair-competition claims to the extent that Vimeo otherwise meets the statute's requirements.

Plaintiffs in their opposition papers make two types of arguments in response to this conclusion. First, they contend that copyright claims and unfair-competition claims are different. Plaintiffs are correct that proving unfair competition requires more than merely proving copyright infringement. *See Naxos*, 830 N.E.2d at 266. They are also correct that unfair competition is a "broad and flexible doctrine" under New York law. *Dow Jones & Co., Inc. v. Int'l Sec. Exch., Inc.*, 451 F.3d 295, 302 n.8 (2d Cir. 2006) (citation omitted). "Whatever the breadth and flexibility of such a claim," however, "it depends upon the allegation of facts that, if true, would constitute misuse of plaintiffs' property." *Id.* And here Plaintiffs must be able to impute that alleged misuse of their property to Vimeo: it must be Vimeo—not its users—who

7

unfairly competes with Plaintiffs through the purported misappropriation of their property. Here, the only "misuse[s]" of property that Plaintiffs allege are the infringements of their copyrights to the pre-1972 recordings. Thus, Plaintiffs' unfair-competition claims cannot succeed unless Vimeo is held liable for the infringement of these copyrights. That conclusion is true regardless of whether Plaintiffs can plead the other elements of an unfair-competition claim, such as bad faith and competition (neither of which is required for a copyright-infringement claim). *See generally Naxos*, 830 N.E.2d at 266. If Vimeo is not legally responsible for the infringement of Plaintiffs' copyrights, then it has not committed any misappropriation of their property. Without misappropriation, Plaintiffs' unfair-competition claims fail. For the reasons explained above, such a result places these claims squarely within the reach of the DMCA safe harbor.

Second, Plaintiffs argue that the purpose of the DMCA limits the safe harbor's reach to copyright-infringement claims. Specifically, they contend that the DMCA was designed to protect only innocent online service providers from liability for copyright infringement. According to Plaintiffs, placing unfair-competition claims under the safe harbor's protections would undermine this purpose because such claims require a showing of bad faith. As an initial matter, because the DMCA's "text is clear," this Court "need not consider . . . extra-textual evidence" such as the statute's "legislative history [and] purpose." *See NLRB v. SW Gen., Inc.*, 137 S. Ct. 929, 941–42 (2017). Moreover, the purpose of the DMCA supports rather than undermines the textual analysis above. The DMCA is aimed at protecting online service providers, but only to the extent that they lack actual or "red flag" knowledge of copyright infringement and otherwise comply with the statute's requirements. *See generally Vimeo*, 826 F.3d at 82–84. One of those requirements is the implementation of and compliance with procedures by which copyright holders can notify the provider that particular infringing content

8

should be taken down. *See id.* In the DMCA, Congress formalized a careful compromise, the purpose of which "was to make economically feasible the provision of valuable Internet services while expanding protections of the interests of copyright owners through the new notice-and-takedown provision." *Id.* at 90.

The DMCA safe harbor recognizes both that services like Vimeo's contain an inherent risk of copyright infringement (of which Vimeo and other service providers are plainly aware) and that such providers should nonetheless be protected from liability for specific instances of copyright infringement of which they are unaware. Applying the DMCA safe harbor to unfair-competition claims founded on copyright infringement ensures that service providers are aware of the infringing activity that forms the basis for the claims brought against them. Often—and perhaps always—the DMCA analysis for establishing knowledge or red-flag knowledge will go hand-in-hand with the unfair-competition analysis for establishing bad faith, because it is difficult to imagine a finding of "bad faith misappropriation" of Plaintiffs' copyrights without some sort of awareness that the copyrights were being infringed. *See LoPresti v. Massachusetts Mut. Life Ins. Co.*, 30 A.D.3d 474, 476 (N.Y. App. Div. 2006). Regardless of how "bad faith" may differ from actual or red-flag knowledge, the safe harbor's purpose remains the same: the DMCA is designed to preclude liability for third-party users' posts that include "infringements of which the service providers were unaware." *Vimeo*, 826 F.3d at 90. That purpose applies equally to copyright-infringement claims and to unfair-competition claims that seek liability for the infringement of copyright.

Plaintiffs also note in their opposition that Vimeo's current position on whether the DMCA safe harbor applies to unfair-competition claims may be inconsistent with its position before the Court of Appeals. Ps' Mem. Opp. at 5–6 & n.3. Plaintiffs deploy this argument,

9

however, only to demonstrate that the Second Circuit has not already considered whether unfair-competition claims can fall within the DMCA safe harbor. Because this Court has independently concluded that the DMCA safe harbor applies to Plaintiffs' unfair-competition claims, the Court need not address whether the Second Circuit too decided the question in Vimeo's favor. Similarly, the Court need not address Vimeo's alternative argument that the Communications Decency Act of 1996 independently bars Plaintiffs' claims.

Having agreed with Vimeo on the applicability of the safe harbor generally, the Court must still establish how that ruling affects the Videos-in-Suit. In Vimeo's motion, it asks the Court to dismiss 273 of Plaintiffs' unfair-competition claims, for which Vimeo asserts Plaintiffs "do not allege 'red flag' knowledge." Vimeo Mem. at 22. Plaintiffs do not contest that these claims fail to allege any red flag knowledge and, thus, that they necessarily fall within the DMCA safe harbor under this Court's (and the Second Circuit's) prior rulings in this case. Those 273 claims are therefore dismissed.

Vimeo also asks, however, that the Court dismiss the remaining 59 claims for which it says Plaintiffs "cannot demonstrate 'red flag' knowledge[.]" Vimeo Mem. at 22. Plaintiffs respond that these 59 remaining claims are "subject to Plaintiffs' brief on red-flag knowledge"—apparently in reference to Plaintiffs' post-remand summary-judgment briefing, which is still pending before this Court. *See* Ps' Mem. Opp. at 1 n.1. Vimeo has not explained in its motion to dismiss why the remaining 59 claims should be dismissed under Rule 12(b)(6) rather than under Rule 56 based on the parties' post-remand summary judgment motions. The Court thus declines to grant Vimeo's motion to dismiss 59 of the unfair-competition claims based on the safe harbor at this stage.

10

## II. Unfair-Competition Claims under 12(b)(6)

Vimeo alternatively argues that Plaintiffs' remaining unfair-competition claims must be dismissed under Fed. R. Civ. P. 12(b)(6) because they fail to adequately plead bad faith. Under New York law, "bad faith" can take on many meanings in the unfair-competition context. Certainly unethical behavior, "fraud, deception, or an abuse of a fiduciary or confidential relationship" can demonstrate bad faith. *Schroeder v. Pinterest Inc.*, 133 A.D.3d 12, 30 (N.Y. App. Div. 2015) (citation omitted); *see also Macy's Inc. v. Martha Stewart Living Omnimedia, Inc.*, 127 A.D.3d 48, 57 (N.Y. App. Div. 2015). "Bad faith" can also refer to an "attempt . . . to exploit the good will and reputation" of a rightful property owner "with the intent to sow confusion" between the original and infringing works. *See Star Indus., Inc. v. Bacardi & Co.*, 412 F.3d 373, 388 (2d Cir. 2005); *see also Out of Box Promotions, LLC v. Koschitzki*, 55 A.D.3d 575, 578 (N.Y. App. Div. 2008). Other courts have indicated that bad faith might be as broad as any "attempt[] to capitalize on" or exploit the property owner's efforts or other commercial advantage. *See Saratoga Vichy Spring Co. v. Lehman*, 625 F.2d 1037, 1044 (2d Cir. 1980); *see also Eagle Comtronics, Inc. v. Pico Prod., Inc.*, 256 A.D.2d 1202, 1203 (N.Y. App. Div. 1998). Regardless, "[m]ere negligence or recklessness is insufficient to sustain this claim; instead, a plaintiff must establish bad faith by showing that the defendant acted out of a dishonest purpose." *Big Vision Private Ltd. v. E.I. DuPont De Nemours & Co.*, 1 F. Supp. 3d 224, 275 (S.D.N.Y. 2014) (citations and internal quotation marks omitted), *aff'd*, 610 F. App'x at 72.

According to Vimeo, Plaintiffs' unfair-competition claims rely on the same facts as their state copyright-infringement claims and thus fail to allege that Vimeo acted in bad faith as to any of the particular videos—largely for the same reasons that this Court concluded that Plaintiffs have failed to allege actual knowledge of copyright infringement on the part of anyone at Vimeo

with regard to many of the Videos-In-Suit. Plaintiffs disagree about the scope of the conduct at issue. Instead of going video by video, Plaintiffs propose that the Court examine the entire course of conduct at issue in this case to assess bad faith. In Plaintiffs' view, unfair competition encompasses "any form of commercial immorality" and is an "adaptable and capacious" and "broad and flexible" doctrine. Ps' Mem. Opp. at 15 (quoting *Roy Exp. Co.*, 672 F.2d at 1105). The question here is whether Plaintiffs' unfair-competition claims—and, ultimately, their allegations of bad faith—should be assessed on a video-by-video basis or on the basis of a broader set of conduct.

Given that this Court has already held that the DMCA safe harbor applies to Plaintiffs' unfair-competition claims, however, it need not decide this question. Under either standard for assessing bad faith, Plaintiffs have alleged sufficient facts to make their remaining 59 unfair-competition claims plausible. As to each of those claims, Vimeo apparently concedes that Plaintiffs have alleged red-flag knowledge. *See* Vimeo Mem. at 22. The Court at this stage must accept these allegations as true and draw all reasonable inferences in Plaintiffs' favor. *See Stadnick*, 861 F.3d at 33. And bad faith generally "may be inferred from the [defendant's] actual or constructive knowledge of the [plaintiff's]" property right. *Star Indus., Inc.*, 412 F.3d at 389. There are also other allegations in the Amended Complaint from which a jury could reasonably infer that Vimeo had some sort of more general intent to profit at Plaintiffs' expense from its users' infringements of the pre-1972 recordings. Thus, based on the Amended Complaint and Vimeo's concession that Plaintiffs have at least alleged red-flag knowledge as to the remaining unfair-competition claims, those 59 claims survive Vimeo's motion to dismiss on 12(b)(6) grounds. When the Court considers the parties' motions for summary judgment, it will decide

whether there is sufficient evidence of bad faith for those 59 claims to survive or succeed on summary judgment.

## CONCLUSION

For the reasons explained above, Vimeo's motion to dismiss is granted in part and denied in part. The DMCA safe harbor applies to Plaintiffs' unfair competition claims. Thus, all such claims for which there is no allegation of at least red-flag knowledge are dismissed. The 59 remaining claims survive Vimeo's motion to dismiss and will be further scrutinized based on the parties' pending summary judgment motions. If the parties deem it necessary to supplement their current motions in light of this decision, they may submit a joint letter no later than April 13, 2018, setting forth a proposed schedule and page limit for supplemental or amended briefs, or other materials, to the Court.

The Clerk of Court is respectfully directed to terminate the motions pending at Dkt. 167 in Case No. 09-cv-10101 and Dkt. 160 in Case No. 09-cv-10105.

SO ORDERED.

Dated: March 31, 2018
New York, New York

Ronnie Abrams
United States District Judge