UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CAPITOL RECORDS, LLC, a Delaware Limited Liability Company; CAROLINE RECORDS, INC., a New York Corporation; VIRGIN RECORDS AMERICA, INC., a California Corporation,

Plaintiffs,

v.

VIMEO, LLC d/b/a VIMEO.COM, a Delaware Limited Liability Company; CONNECTED VENTURES, LLC, a Delaware Limited Liability Company; and DOES 1-20, inclusive,

Defendants.

09-CV-10101 (RA)

OPINION AND ORDER

EMI BLACKWOOD MUSIC, INC., a Connecticut Corporation; EMI APRIL MUSIC, INC., a Connecticut Corporation; EMI VIRGIN MUSIC, INC., a New York Corporation; COLGEMS-EMI MUSIC, INC., a Delaware Corporation; EMI VIRGIN SONGS, INC., a New York Corporation; EMI GOLD HORIZON MUSIC CORP., a New York Corporation; EMI U CATALOG, INC., a New York Corporation; EMI UNART CATALOG, INC., a New York Corporation; JOBETE MUSIC CO., INC., a Michigan Corporation; and STONE DIAMOND MUSIC CORPORATION, a Michigan Corporation,

Plaintiffs,

v.

VIMEO, LLC d/b/a VIMEO.COM, a Delaware Limited Liability Company; CONNECTED VENTURES, LLC, a Delaware Limited Liability Company; and DOES 1-20, inclusive,

Defendants.

09-CV-10105 (RA)

OPINION AND ORDER

RONNIE ABRAMS, United States District Judge:

Before the Court is a motion for attorneys' fees and costs brought by Defendants Vimeo, Inc. (formerly Vimeo, LLC) and Connected Ventures, LLC (together, "Vimeo") pursuant to the fee-shifting provision of the Copyright Act. *See* 17 U.S.C. § 505. Vimeo is the prevailing party in a long-running copyright-infringement lawsuit filed by Plaintiffs Capitol Records, LLC, Caroline Records, Inc., Virgin Records America, Inc., EMI Blackwood Music, Inc., EMI April Music, Inc., EMI Virgin Music, Inc., Colgems–EMI Music, Inc., EMI Virgin Songs, Inc., EMI Gold Horizon Music Corp., EMI U Catalog, Inc., EMI Unart Catalog, Inc., Jobete Music Co., Inc., and Stone Diamond Music Corporation (collectively, "Plaintiffs") in 2009.

Plaintiffs brought infringement claims predicated on the use of copyrighted musical recordings in hundreds of videos hosted on Vimeo's website. This case raised several issues of first impression regarding the applicability of one of the safe-harbor provisions of the Digital Millennium Copyright Act ("DMCA") to Vimeo, which would provide a complete affirmative defense to Plaintiffs' claims. Following an interlocutory appeal to the Second Circuit, Vimeo ultimately prevailed on all claims at summary judgment after the Court determined that the DMCA safe-harbor provision applied to Vimeo. As Vimeo itself has previously recognized, this case raised "many difficult or new" issues. Dkt. 137 at 5.[1] Nonetheless, as the prevailing party, it now seeks nearly six million dollars in attorneys' fees from Plaintiffs under the Copyright Act's fee-shifting provision.

An award of attorneys' fees to Vimeo, however, would not serve the purposes of the Copyright Act. Plaintiffs asserted reasonable claims that raised novel, complex questions of law, and they litigated those claims reasonably and in good faith. This case also presents little need for

[1] This case consists of two consolidated actions. Unless otherwise noted, all docket citations refer to Case No. 09-CV-10101 rather than Case No. 09-CV-10105.

either compensation or deterrence. Accordingly, Vimeo's motion for attorneys' fees is denied. The Court will, though, award Vimeo $16,461.70 in costs as a prevailing party on its interlocutory appeal.

## BACKGROUND

The Court assumes the parties' familiarity with the factual background of this case, which has been recounted extensively in the prior opinions of this Court and the Court of Appeals for the Second Circuit. *See Capitol Recs., LLC v. Vimeo, LLC ("Vimeo I")*, 972 F. Supp. 2d 500, 504–07 (S.D.N.Y. 2013); *Capitol Recs., LLC v. Vimeo, LLC ("Vimeo II")*, 972 F. Supp. 2d 537, 542–43 (S.D.N.Y. 2013); *Capitol Recs., LLC v. Vimeo, LLC ("Vimeo III")*, 826 F.3d 78, 82–86 (2d Cir. 2016), *cert. denied*, 580 U.S. 1217 (2017); *Capitol Recs., LLC v. Vimeo, LLC ("Vimeo IV")*, 2021 WL 2181252, at *1–2 (S.D.N.Y. May 28, 2021); *Capitol Recs., LLC v. Vimeo, Inc. ("Vimeo V")*, 125 F.4th 409, 413–18 (2d Cir. 2025), *reh'g granted in part and amended*, 151 F.4th 13 (2d Cir. 2025).[2] The Court will restate here only those facts necessary to resolve the instant motion.[3] The parties have divided the procedural history of this case into two "stages," as explained below. "Stage I" involves the procedural history of this case through the Second Circuit's 2016 decision in *Vimeo III*, which resolved Vimeo's interlocutory appeal of this Court's decisions on the parties' cross-motions for summary judgment in *Vimeo I* and *Vimeo II*. "Stage II" involves the post-remand history of this case following *Vimeo III*, including the Court's grant of summary judgment to Vimeo in *Vimeo IV* and the Second Circuit's 2025 affirmance of *Vimeo IV* in *Vimeo V*.

---

[2] Unless otherwise noted, case quotations omit all internal citations, quotations, footnotes, omissions, and alterations.
[3] The Court draws much of the following procedural history from its opinion in *Vimeo IV*. 2021 WL 2181252, at *1–2.

### I. Stage I: Summary Judgment and Interlocutory Appeal

Defendants operate the website Vimeo.com, which is an internet platform that permits users to upload and share original videos. Notably, Vimeo.com requires users to have participated in the creation of the videos that they upload. Plaintiffs, which are record and music-publishing companies, initially filed this action against Defendants in 2009, bringing infringement claims under the Copyright Act relating to musical recordings used in 199 videos that appeared on Vimeo's website (the "Videos-in-Suit").[4] Defendants asserted an affirmative defense, claiming that they were entitled to so-called "safe harbor" protection pursuant to Section 512(c) of the DMCA.[5] *Vimeo I*, 972 F. Supp. 2d at 510. As articulated by the Second Circuit in *Vimeo III*, the DMCA

> immunize[s] those [service providers] that qualify for the statute's benefits from liability for copyright infringements posted by users on the providers' websites if the service providers are unaware of the infringements, and . . . expressly relieve[s] them of any obligation to monitor the postings of users to detect infringements as a condition of qualifying for the safe harbor. Service providers, however, forfeit entitlement to the safe harbor if they fail to expeditiously remove the infringing material upon receipt of notification of the infringement or upon otherwise becoming aware of it.

*Vimeo III*, 826 F.3d at 83 (discussing 17 U.S.C. § 512(c) and 17 U.S.C. § 512(m)).[6] This case raised many issues of first impression, including, but not limited to, the legal framework governing when a service provider is deemed to have actual or constructive (also called "red flag") knowledge

---

[4] Although the exact number of Videos-in-Suit changed over time, the Court uses the term in this Opinion and Order to refer to all videos put at issue over the course of this litigation.

[5] The DMCA contains three other safe harbors which were not at issue in the instant litigation. *See* 17 U.S.C. § 512(a) (protecting service providers that act as conduits for transmission of material); *id.* § 512(b) (protecting service providers that provide temporary storage); *id.* § 512(d) (protecting service providers that link users to online locations).

[6] The Court previously concluded that Vimeo met the threshold criteria to qualify for the Section 512(c) safe harbor. *Vimeo I*, 972 F. Supp. 2d at 510–17. As the Second Circuit would later explain, "[t]o qualify for the safe harbors, a party must establish that it meets various threshold criteria, including that it must be a 'service provider' as defined in the statute; . . . that it must have adopted and reasonably implemented a policy that, essentially, bans users who repeatedly infringe copyrights; that it must have appointed an agent for receipt of notices of infringements; and that it must accommodate standard technical measures used by copyright owners to identify infringements of copyrighted works." *Vimeo III*, 826 F.3d at 83 n.3.

of infringement, the circumstances in which willful blindness is a proxy for knowledge, the factual showing necessary for a plaintiff to establish the foregoing, and whether the DMCA's safe harbor provisions applied to sound recordings fixed prior to February 15, 1972.

After the close of discovery, the parties filed cross-motions for summary judgment. *See* Dkt. 52; Dkt. 68. In September 2013, the Court granted summary judgment, in part, in favor of Vimeo. *Vimeo I*, 972 F. Supp. 2d at 519. The Court ruled in Vimeo's favor on 144 of the Videos-in-Suit, finding that Plaintiffs had not come forward with any evidence that Vimeo employees had viewed them, and thus that these employees had not acquired knowledge of their infringing content. *Id.* at 523. As to the remaining 55 videos, the Court found that triable issues of material fact existed concerning whether Vimeo had acquired either actual or "red flag" knowledge of copyright infringement, which would disqualify Vimeo from the DMCA's safe harbor. *Id.* It also held that Plaintiffs' evidence was insufficient to suggest that Vimeo's employees were willfully blind to infringing content in any of the Videos-in-Suit, which would be another basis from which to impute knowledge or awareness of specific instances of infringement. *Id.* at 523–25. The Court further held, with respect to 10 of the remaining 55 videos that had been uploaded by Vimeo employees, that there were triable issues of fact regarding whether the videos had been uploaded by employees acting as agents of Vimeo (which would disqualify Vimeo from the safe harbor) or in their personal capacities (which would not). *Id.* at 518–19. However, the Court granted summary judgment to Plaintiffs on all videos that implicated sound recordings first recorded before February 15, 1972, holding that the DMCA safe harbors did not apply to these recordings. *Id.* at 536–37. Finally, the Court considered and rejected an alternative ground advanced by Plaintiffs as to why Vimeo failed to qualify for the Section 512(c) safe harbor, holding that Vimeo did not

have the "right and ability to control [infringing] activity" on its platform. *Id.* at 525 (quoting 17 U.S.C. § 512(c)(1)(B)).

Upon Vimeo'smotion for reconsideration, the Court granted summary judgment in its favor on 17 additional videos. *Vimeo II*, 972 F. Supp. 2d at 556. The Court concluded that there was insufficient evidence that Vimeo employees had watched 15 of the videos and that, with respect to two of the videos, the infringing activity—which consisted of playing a copyrighted song briefly in the background—was not "objectively obvious," so as to disqualify Vimeo from protection under the safe harbor. *Id.* at 545–46 (quoting *Viacom Int'l, Inc. v. YouTube, Inc.*, 676 F.3d 19, 31 (2d Cir. 2012)). As to the remaining videos for which Vimeo sought reconsideration—many of which prominently featured recognizable songs by well-known artists in essentially unaltered form—the Court held that genuine issues of fact existed concerning whether Vimeo had red flag knowledge of the videos' infringing content. *Id.* at 546–49.

In *Vimeo II*, the Court also granted Plaintiffs leave to file an amended complaint alleging 1,476 new instances of infringement. *Id.* at 550. It further granted Vimeo's motion to certify two questions for interlocutory appeal. One of those certified questions was "[w]hether, under *Viacom Int'l, Inc. v. YouTube, Inc.*, [676 F.3d 19 (2d Cir. 2012),] a service provider's viewing of a user-generated video containing all or virtually all of a recognizable, copyrighted song may establish 'facts or circumstances' giving rise to 'red flag' knowledge of infringement." *Id.* at 556. The other was "[w]hether the DMCA's safe-harbor provisions are applicable to sound recordings fixed prior to February 15, 1972." *Id.* The Second Circuit also "granted Plaintiffs' request for interlocutory review of a third issue: whether Plaintiffs' evidence showed willful blindness that could justify imposition of liability on Vimeo, notwithstanding the safe harbor provisions." *Vimeo III*, 826 F.3d at 87.

On appeal, the Second Circuit answered the first question in the negative. Specifically, it held that:

> A copyright owner's mere showing that a video posted by a user on the service provider's site includes substantially all of a recording of recognizable copyrighted music, and that an employee of the service provider saw at least some part of the user's material, is insufficient to sustain the copyright owner's burden of proving that the service provider had either actual or red flag knowledge of the infringement.

*Vimeo III*, 826 F.3d at 86. For videos where employee interaction with a well-known song was the sole indicator of red flag knowledge, the Circuit further held that:

> Vimeo is entitled to summary judgment . . . as to the red flag knowledge issue, unless plaintiffs can point to evidence sufficient to carry their burden of proving that Vimeo personnel either knew the video was infringing or knew facts making that conclusion obvious to an ordinary person who had no specialized knowledge of music or the laws of copyright.

*Id.* at 98. The Circuit also concluded, after undertaking a *de novo* statutory interpretation, that "the safe harbor established by § 512(c) protects a qualifying service provider from liability for infringement of copyright under state law," and thus that the safe harbor applies to pre-1972 recordings. *Id.* at 93. As for the third question, the Circuit concluded that the evidence cited by Plaintiffs "cannot support a finding of the sort of generalized encouragement of infringement" to impose liability through a theory of willful blindness. *Id.* at 99. The Second Circuit thus vacated the Court's partial denial of Vimeo's summary judgment motion and partial grant of summary judgment to Plaintiffs on the pre-1972 recordings issue, affirmed the Court's ruling on the willful-blindness issue, and remanded for further consideration in light of its holding.

## II. Stage II: Post-Remand

Following the Second Circuit's decision and remand in *Vimeo III*, the Court considered the parties' renewed cross-motions for summary judgment. In *Vimeo IV*, the Court applied the new standard articulated in *Vimeo III* for red flag knowledge and granted summary judgment to Vimeo

as to all videos uploaded by third parties, reasoning that Plaintiffs had established neither that "Vimeo employees possessed, as a general matter, the 'relevant knowledge and experience that informed the issue of red flag knowledge,'" nor that "the nature of the interactions between Vimeo employees and the Videos-in-Suit raise[d] a triable issue of fact as to whether those employees became aware of facts that made infringement 'objectively obvious'" under the standard set forth in *Vimeo III*. *Vimeo IV*, 2021 WL 2181252, at *7. The parties then stipulated to Plaintiffs' dismissal with prejudice of the claims predicated on the 26 remaining employee-uploaded Videos-in-Suit, *see* Dkt. 235, and the Court entered final judgment, dismissing all other claims with prejudice. Dkt. 238. Plaintiffs appealed this final judgment; in *Vimeo V*, the Second Circuit affirmed this Court's grant of summary judgment to Vimeo predicated on Plaintiffs' failure to establish red flag knowledge in *Vimeo IV*, and affirmed the Court's prior ruling, in *Vimeo I*, that Vimeo did not have the "right and ability to control" infringing activity. *Vimeo V*, 125 F.4th at 422, 428–29.

Vimeo—which thus prevailed on all of Plaintiffs' claims—now seeks attorneys' fees under 17 U.S.C. § 505, the Copyright Act's fee-shifting provision. Dkt. 251 ("Defs. Mot."); Dkt. 252 ("Defs. Br."). It requests $5,974,520.87 in fees from Plaintiffs, of which $4,771,751.89 was incurred in Stage I and $1,202,768.98 was incurred in Stage II.[7] Defs. Br. at 22. Plaintiffs filed an opposition to this motion, Dkt. 257 ("Pls. Opp'n"), to which Vimeo replied. Dkt. 262 ("Defs. Repl.").

Vimeo also seeks the costs of its interlocutory appeal (which resulted in the Second Circuit's *Vimeo III* opinion). As the prevailing party, Vimeo submitted an itemized bill of costs

[7] Stage II does not include the costs of preparing Vimeo's motion for fees, which Vimeo also seeks. Defs. Br. at 22. It claims to have "voluntarily exclud[ed] fees for all attorneys and staff who billed fewer than 20 hours to this case, resulting in the removal of 40 out of 62 timekeepers (nearly two-thirds), [forgoing] over $80,000.00 in fees." *Id.* (emphasis omitted).

for $16,461.70. *Capitol Recs., LLC v. Vimeo, LLC*, No. 14-1048 (2d Cir. June 30, 2016), Dkt. 281 ("Defs. Bill of Costs"). Plaintiffs submitted objections, *id.*, Dkt. 283 (2d Cir. July 11, 2016) ("Pls. Bill of Costs Opp'n"), to which Vimeo responded. *Id.*, Dkt. 289 (2d Cir. July 15, 2016) ("Defs. Bill of Costs Repl."). On March 31, 2021, the Second Circuit referred the issue to the Court "to be decided with the other costs of the overall proceeding." *Id.*, Dkt. 328 (2d Cir. Mar. 31, 2021) ("Costs Referral Order").

**LEGAL STANDARD**

"Section 505 of the Copyright Act provides that a district court 'may . . . award a reasonable attorney's fee to the prevailing party.'" *Kirtsaeng v. John Wiley & Sons, Inc.*, 579 U.S. 197, 199 (2016) (quoting 17 U.S.C. § 505). The Supreme Court, though, has "established a pair of restrictions" on the exercise of this discretion. *Id.* at 202. It has made clear that such fees should be awarded to the prevailing party "only as a matter of the court's discretion" after a case-specific assessment, rather than "as a matter of course." *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 533–34 (1994). And it has further stated that, in deciding whether to fee-shift, "a court may not treat prevailing plaintiffs and prevailing defendants any differently; defendants should be encouraged to litigate meritorious copyright defenses to the same extent that plaintiffs are encouraged to litigate meritorious claims of infringement." *Kirtsaeng*, 579 U.S. at 202 (quoting *Fogerty*, 510 U.S. at 527).

In *Kirtsaeng* and *Fogerty*, the Supreme Court also identified "several nonexclusive factors" to guide this discretion, such as "frivolousness, motivation, objective unreasonableness, and the need in particular circumstances to advance considerations of compensation and deterrence." *Kirtsaeng*, 579 U.S. at 202 (quoting *Fogerty*, 510 U.S. at 534 n.19); *see Atticus Ltd. Liab. Co. v. Dramatic Publ'g Co.*, 145 F.4th 257, 276 (2d Cir. 2025). Although "the objective

(un)reasonableness of [the] losing party's litigating position" is an important factor which "carries significant" and "substantial weight" in the analysis, it is not "controlling" or "dispositive": a court must "view all the circumstances of a case on their own terms, in light of the Copyright Act's essential goals." *Kirtsaeng*, 579 U.S. at 207–09; *see Manhattan Review LLC v. Yun*, 765 F. App'x 574, 576 (2d Cir. 2019) (summary order) (similar). Further, a court may consider other relevant factors beyond those articulated in *Kirtsaeng* and *Fogerty* "so long as they are consistent with the Copyright Act's 'purpose of enriching the general public through access to creative works,' striking a balance between encouraging authors' novel contributions and enabling others to build upon that creative work." *Capitol Recs., LLC v. ReDigi Inc.*, 2022 WL 1046463, at *3 (S.D.N.Y. Apr. 7, 2022) (quoting *Fogerty*, 510 U.S. at 527); *see also Kirtsaeng*, 579 U.S. at 205 (noting that the objective-reasonableness factor "promote[s] the Copyright Act's purposes[] by enhancing the probability that both creators and users (*i.e.*, potential plaintiffs and defendants) will enjoy the substantive rights the statute provides").

**DISCUSSION**

**I. Attorneys' Fees**

The parties agree that Vimeo is the "prevailing party" in this litigation, but dispute its entitlement to a "reasonable attorney's fee." 17 U.S.C. § 505; *see* Defs. Br. at 10; Pls. Opp'n at 14. "Briefly stated," there is no question that Vimeo "fought a fair fight and won." *Agence France Presse v. Morel*, 2015 WL 13021413, at *3 (S.D.N.Y. Mar. 23, 2015), *aff'd*, 645 F. App'x 86 (2d Cir. 2016). Nevertheless, "[t]his was a close case on the merits, involving novel legal issues," and the nonexclusive factors articulated in *Kirtsaeng* and *Fogerty*, as well as the other relevant circumstances of this case, "persuade[] the Court that the purposes of the Copyright Act are not furthered by awarding fees and costs pursuant to § 505." *Id.*

### A. Objective Unreasonableness and Litigation Conduct

The Court begins with Vimeo's contention that the arguments Plaintiffs advanced in this litigation, as well as their litigation conduct more generally, were objectively unreasonable. A finding of "objective unreasonableness . . . requires the claims at issue be clearly without merit or otherwise patently devoid of a legal or factual basis." *Oppenheim v. Goldberg*, 2024 WL 4252563, at *1 (S.D.N.Y. Sept. 20, 2024); *see also Viva Video, Inc. v. Cabrera*, 9 F. App'x 77, 80 (2d Cir. 2001) ("Objective unreasonableness is generally used to describe claims that have no legal or factual support."). "Although a position is not unreasonable merely because it is weak, '[a] district court that has ruled on the merits of a copyright case can easily assess whether the losing party advanced an unreasonable claim or defense.'" *ReDigi*, 2022 WL 1046463, at *5 (quoting *Kirtsaeng*, 579 U.S. at 207). Moreover, a party's "unreasonable litigation tactics are also a relevant consideration under the Copyright Act," *id.* at *7, as "an award of fees" is not "limited to cases involving unreasonable claims." *Canal+ Image UK Ltd. v. Lutvak*, 792 F. Supp. 2d 675, 681 (S.D.N.Y. 2011); *see also Viva Video, Inc.*, 9 F. App'x at 80 (noting that "bad faith in the conduct of the litigation is a valid ground for an award of fees" under Section 505).[8] "[I]mportantly," though, "ultimate dismissal for lack of liability does not render a copyright claim objectively unreasonable—the standards are distinct." *Oppenheim*, 2024 WL 4252563, at *1; *see also Insurent Agency Corp. v. Hanover Ins. Co.*, 2020 WL 86813, at *5 (S.D.N.Y. Jan. 8, 2020) ("[T]he

[8] Further, although "frivolousness and objective unreasonableness are not necessarily coextensive," *Gordon v. McGinley*, 2013 WL 1455122, at *2 n.3 (S.D.N.Y. Mar. 28, 2013), "the factors of objective unreasonableness and frivolousness are often analyzed together, as the test for frivolousness largely duplicates that of objective unreasonableness." *Walsh v. Townsquare Media, Inc.*, 2022 WL 1302216, at *2 (S.D.N.Y. May 2, 2022). After all, as courts in this District have recognized, "frivolousness is a particularly intense form of objective unreasonableness." *TCA Television Corp. v. McCollum*, 2017 WL 2418751, at *14 (S.D.N.Y. June 5, 2017), *R. & R. adopted*, 2018 WL 2932724 (S.D.N.Y. June 12, 2018); *see Matthew Bender & Co. v. W. Publ'g Co.*, 240 F.3d 116, 126 (2d Cir. 2001) (defining "frivolous" in this context as "lacking any plausible merit"). As "the parties do not brief the issue of frivolousness separately from objective reasonableness," though, there is "no need for [the Court] to analyze the factors separately." *Walsh*, 2022 WL 1302216, at *2; *see Agence France Presse*, 2015 WL 13021413, at *5.

grant of a motion for summary judgment does not in itself render a claim unreasonable."), *R. & R. adopted*, 2020 WL 1080774 (S.D.N.Y. Mar. 6, 2020).

**1. Claims Asserted**

Vimeo first argues that "the facial unreasonableness of Plaintiffs' initial Complaint and subsequent litigation through Stage I of this litigation weighs substantially in favor of an award of attorneys' fees." Defs. Br. at 14. It advances two primary arguments: (1) that "for the vast majority of asserted videos," Plaintiffs had "zero evidence" that Vimeo had knowledge (red flag or otherwise) to support a claim of infringement; and (2) that Plaintiffs "over-litigated [their] claims on summary judgment, requiring Vimeo to expend an inordinate amount of hours responding to Plaintiffs' burdensome submissions." *Id.* at 14–15.

The Court begins by assessing whether the central argument raised by Plaintiffs in this case—that Vimeo was ineligible for DMCA safe-harbor protection—was objectively unreasonable. "Courts within this Circuit regularly hold that a party's good faith decision to litigate complex or undecided issues of law is not objectively unreasonable." *ReDigi*, 2022 WL 1046463, at *5 (collecting cases); *see also Agence France Presse*, 2015 WL 13021413, at *4 ("[I]t is . . . important that litigants be encouraged to test objectively reasonable legal theories in order to better develop the jurisprudential landscape. This weighs strongly against the awarding of attorneys' fees in this case."); 5 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 14.10[D][5][a] (2026) (noting that this factor "weighs against awarding of fees to the extent that the case involved issues of first impression . . . [or involved] a novel or complex question of law"). This principle is particularly salient where, as here, a plaintiff obtains "an initial favorable judgment in the district court before reversal" by the Circuit, which further indicates that "the claims raised legitimate questions of law requiring appellate clarification rather than being so

devoid of merit that dismissal was inevitable." *Canadian Standards Ass'n v. P.S. Knight Co.*, 2025 WL 2389451, at *3 (W.D. Tex. Aug. 18, 2025); *see also Agence France Presse*, 2015 WL 13021413, at *5 (holding that the defendants' victory "on several significant issues at both the motion to dismiss and summary judgment stages . . . do[es] not support the theory that awarding § 505 fees and costs . . . would promote the purpose of the Copyright Act"); *John Wiley & Sons, Inc. v. Kirtsaeng*, 2016 WL 7392210, at *2 (S.D.N.Y. Dec. 21, 2016) (holding, on remand, that a plaintiff's claim was not objectively unreasonable in part because its arguments "persuaded this Court, the Court of Appeals, and three Justices of the Supreme Court").

Plaintiffs' claims in this litigation were reasonable, and Vimeo's arguments to the contrary are unpersuasive and colored by hindsight. It is true, as Vimeo points out, that "[f]or the 199 videos in Plaintiffs' initial Complaint, this Court found," on summary judgment, that "'there is no evidence that Vimeo acquired actual or red flag knowledge'" as to 153 of the 199 asserted Videos-in-Suit. Defs. Br. at 14–15 (quoting *Vimeo I*, 972 F. Supp. 2d at 523); *see Vimeo II*, 972 F. Supp. 2d at 544–49. But the Court did find a "triable issue of fact" as to whether Vimeo employees had viewed the remaining videos, and thus whether Vimeo had acquired actual or red flag knowledge of infringement as to those videos. *Vimeo I*, 972 F. Supp. 2d at 520–23; *Vimeo II*, 972 F. Supp. 2d at 544–49.

Moreover, as Plaintiffs note, the legal standards governing, and the factual showing required to receive, DMCA safe-harbor protection had not been addressed by the Second Circuit when Plaintiffs filed suit in 2009. In *Viacom International, Inc. v. YouTube, Inc.*, decided in 2012, about three years after Plaintiffs filed the instant action, the Second Circuit addressed, for the first time, a "series of significant questions of statutory construction" related to the various bases for and limitations on the DMCA safe harbors. 676 F.3d at 26. For example, with respect to the

statutory provisions related to actual and red flag knowledge, the Circuit held that "actual knowledge or awareness of facts or circumstances that indicate specific and identifiable instances of infringement will disqualify a service provider from the safe harbor," and further clarified that "the actual knowledge provision turns on whether the provider actually or 'subjectively' knew of specific infringement, while the red flag provision turns on whether the provider was subjectively aware of facts that would have made the specific infringement 'objectively' obvious to a reasonable person." *Id.* at 31–32.

Even following *Viacom*, the evidentiary showing necessary to present or defeat a safe-harbor defense under the DMCA was not settled law, particularly with respect to the question of actual or red flag knowledge of infringement. For example, as Vimeo itself argued when it sought to certify an interlocutory appeal of the Court's summary judgment ruling, there was a "substantial ground for difference of opinion" on the question of whether a "service provider [is] able to determine whether a particular work is infringing solely by the act of viewing it." Dkt. 122 at 23. And the Circuit would first articulate the "allocation of shifting burdens of proof" on red flag knowledge of infringement—which it contemporaneously observed "will necessarily have an important bearing on determining entitlements to summary judgment"—in its opinion resolving Vimeo's interlocutory appeal. *Vimeo III*, 826 F.3d at 95. This holding clarified that, while "a service provider's entitlement to the safe harbor is properly seen as an affirmative defense," and while a service provider must make an initial showing of entitlement to that defense, the burden remains "on the copyright owner," following discovery, to "demonstrate that the service provider acquired knowledge of the infringement, or of facts and circumstances from which infringing activity was obvious, and failed to promptly take down the infringing matter." *Id.* at 94–95. In other words, the law governing the factual showing required for Plaintiffs to defeat Vimeo's

defense on the basis of actual or red flag knowledge of infringement was uncertain at the time they litigated the parties' cross-motions for summary judgment.

Notably, though, Plaintiffs' assertions regarding Vimeo's actual or red flag knowledge were one of many bases on which, they argued, the Court could have concluded that Vimeo was ineligible for DMCA safe-harbor protection for all of the Videos-in-Suit, including those for which Plaintiffs had not adduced evidence of actual or red flag knowledge of infringement during discovery. These arguments also raised serious, novel, and difficult legal issues, many of which were clarified, but not definitively resolved, in *Viacom*.[9]

For example, Vimeo argues that Plaintiffs' alternative theory of knowledge—that Vimeo was "willfully blind" because it did not devote resources to investigating infringement—was "objectively unreasonable" because this Court held that "service providers are under no affirmative duty to seek out infringement." Defs. Br. at 15. But this issue was not so straightforwardly resolved. In *Viacom*, for example, the Circuit had left open the possibility that a theory of liability predicated on willful blindness could be advanced where defendants "made a deliberate effort to avoid guilty knowledge." 676 F.3d at 35. To attempt to meet their burden under this standard, Plaintiffs "cite[d] to evidence suggesting that Vimeo ha[d] turned a blind eye to infringement of musical recordings," including staff responses to user questions and internal email threads. *Vimeo I*, 972 F. Supp. 2d at 524. The Court considered this evidence and found it to be "insufficient," under the standard set forth in *Viacom*, because it did not demonstrate that "Vimeo took affirmative steps to blind itself to infringement on a wholesale basis." *Id.* at 525. But "it is not the case that

[9] In a hearing on Vimeo's motion for reconsideration of the Court's opinion in *Vimeo I*, which resolved the parties' cross-motions for summary judgment, Vimeo conceded as much. *See* Dkt. 137 at 4:25–5:6 (counsel for Vimeo) ("To state that your Honor had a lot of issues to address, many difficult or new, in . . . [*Vimeo I*] is an understatement. . . . We argued for three hours in front of your Honor that day."). In that same hearing, too, the Court acknowledged the unclear state of the law applicable to this case, particularly concerning the evidentiary showing required to find the existence of red flag knowledge. *See id.* at 26:16–31:7.

[Plaintiffs] adduced nothing in support of [their] claim." *Canal+ Image UK Ltd.*, 792 F. Supp. 2d at 689; *cf. BWP Media USA Inc. v. Polyvore, Inc.*, 2016 WL 3926450, at *9 (S.D.N.Y. July 15, 2016) (noting that plaintiffs' "inability to substantiate any of their allegations" after their claims survived a motion to dismiss "does not as a matter of law require an award of fees.") (quoting *Viva Video, Inc.*, 9 F. App'x at 80), *aff'd in relevant part*, 922 F.3d 42 (2d Cir. 2019).

Plaintiffs' arguments regarding Vimeo's lack of entitlement to the DMCA safe harbors for recordings "fixed . . . before February 15, 1972" also raised a difficult issue of first impression. *Vimeo I*, 972 F. Supp. 2d at 536–37. Plaintiffs advanced an interpretation of the statute with which the Copyright Office and a New York Appellate Division panel had agreed, and which persuaded this Court to grant summary judgment to Plaintiffs on this issue "for all applicable Videos-in-Suit." *Vimeo I*, 972 F. Supp. 2d at 536–37; *see* U.S. Copyright Office, Federal Copyright Protection for Pre-1972 Sound Recordings, 130–32 (2011); *UMG Recordings, Inc. v. Escape Media Grp., Inc.*, 107 A.D.3d 51, 57–59 (1st Dep't 2013). The Second Circuit adopted an alternative interpretation of the statute and vacated the Court's grant of summary judgment on this issue. *Vimeo III*, 826 F.3d at 87–93. But an interpretation endorsed by the Copyright Office, a state appellate court, and this Court is not objectively unreasonable merely because the Circuit ultimately disagreed. *Cf. VMG Salsoul, LLC v. Ciccone*, 824 F.3d 871, 887 (9th Cir. 2016) ("It plainly is reasonable to bring a claim founded on the only circuit-court precedent to have considered the legal issue, whether or not our circuit ultimately agrees with that precedent.").

Further, "in the related context" of sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure, the Second Circuit has found a claim to be objectively unreasonable only where there is "no reasonable argument to extend, modify, or reverse the law as it stands." *We Shall Overcome Found. v. Richmond Org.*, 330 F. Supp. 3d 960, 968–69 (S.D.N.Y. 2018) (quoting *Star*

*Mark Mgmt., Inc. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd.*, 682 F.3d 170, 177 (2d Cir. 2012)); *see also Ho Myung Moolsan Co. v. Manitou Min. Water, Inc.*, 665 F. Supp. 2d 239, 263 (S.D.N.Y. 2009) (similar).

This principle applies with equal force to attorneys' fees awarded pursuant to Section 505. *We Shall Overcome Found.*, 330 F. Supp. 3d at 968–69. Other courts considering a plaintiff's reasonable, yet unsuccessful, efforts to advance a novel interpretation of the DMCA which would preclude a defendant's ability to access the DMCA's safe harbors have declined to award fees where the plaintiff's position was "not legally untenable," but there "ha[d] not been a great deal of caselaw interpreting under what circumstances" a particular safe harbor applied.[10] *UMG Recordings, Inc. v. Veoh Networks, Inc.*, 2010 WL 1407316, at *1–2 (C.D. Cal. Apr. 6, 2010). And in a related context, the Second Circuit has denied fees on appeal to a prevailing plaintiff where a defendant advanced an unpersuasive interpretation of Section 1202(b)(3) of the DMCA—which creates liability for the distribution of "improperly attributed copyrighted material"—because "the interpretation of Section 1202(b)(3) [was] a relatively novel issue and a question of first impression for this Court." *Mango v. BuzzFeed, Inc.*, 970 F.3d 167, 171, 174 (2d Cir. 2020).

*Athos Overseas Ltd. Corp. v. YouTube, Inc. ("Athos I")* provides a close—and persuasive—analogue to the instant case. 2023 WL 5607936 (S.D. Fla. Aug. 29, 2023), *R. & R.*

---

[10] Courts have reached the same conclusion in cases in which a plaintiff has advanced a reasonable, yet unpersuasive, interpretation of other provisions of the DMCA which raised issues of first impression. *See, e.g.*, *Arista Recs., Inc. v. Launch Media, Inc.*, 2008 WL 11474982, at *1 (S.D.N.Y. Mar. 31, 2008) (denying fees to a prevailing defendant, in a case involving the proper definition of "interactive services" under the DMCA, because the "construction" of that term "presented a question of first impression for the federal courts"); *Digit. Drilling Data Sys., L.L.C. v. Petrolink Servs., Inc.*, 2020 WL 13612289, at *3 (S.D. Tex. Dec. 9, 2020) (denying fees to a prevailing defendant, in a case involving the DMCA's anti-circumvention provisions, in part because "[t]he law interpreting the DMCA [was] still nascent" and "[t]here was no controlling Fifth Circuit law at the time [the parties litigated the case] and very little guidance from the district courts in this Circuit," and where plaintiff's position on the meaning of the DMCA's text was "not objectively unreasonable"); *Victor Elias Photography, LLC v. Ice Portal, Inc.*, 2023 WL 2562659, at *5 (S.D. Fla. Mar. 1, 2023) ("As the Eleventh Circuit noted in affirming summary judgment [against the plaintiff, the] interpretation of Section 1202(b) [of the DMCA] is an issue of first impression in this Circuit. A claim based on an issue of first impression is not objectively unreasonable."), *R. & R. adopted*, 2023 WL 2560909 (S.D. Fla. Mar. 17, 2023).

*adopted*, 2023 WL 5607935 (S.D. Fla. Aug. 29, 2023), *aff'd*, 162 F.4th 1330 (11th Cir. 2026). There, the plaintiff argued that "because YouTube has automated software that scans videos to help users identify potentially infringing clips, [the plaintiff's] DMCA notices imputed on YouTube knowledge of each and every single clip that infringed on a noticed film," in addition to the video for which a given DMCA notice had been sent. *Id.* at *5. Noting that the case raised an issue of first impression in the Eleventh Circuit, Magistrate Judge Torres rejected the plaintiff's argument that YouTube had red flag knowledge of infringement, relying in part on the Second Circuit's rulings in *Vimeo III* and *Viacom*, and granted summary judgment to YouTube. *Id.* at *6–13. Notwithstanding the fact that YouTube had prevailed on all claims, Judge Torres denied YouTube's request for attorneys' fees—even while recognizing that YouTube had previously removed videos for which the plaintiff had submitted DMCA takedown requests—because the plaintiff's claims were "contingent on the resolution of an issue of first impression in the Eleventh Circuit." *Athos Overseas Ltd. Corp. v. YouTube, Inc. ("Athos II")*, 2024 WL 3431912, at *6 (S.D. Fla. May 2, 2024), *R. & R. adopted*, 2024 WL 3425763 (S.D. Fla. July 16, 2024), *appeal docketed*, No. 24-12636 (11th Cir. Aug. 14, 2024).

Taken together, far from being "clearly without merit or otherwise patently devoid of a legal or factual basis," as Vimeo argues, the claims asserted by Plaintiffs—both those on which they initially obtained partial summary judgment before this Court, and those on which they did not—were predicated on objectively reasonable legal arguments, particularly given the uncertain state of the relevant law at the time they were made. *Cf. Ametex Fabrics, Inc. v. Just In Materials, Inc.*, 1996 WL 428391, at *6–7 (S.D.N.Y. July 31, 1996) (finding a party's conduct that forced briefing on a legal issue "that [was] not subject to debate" to be "inexcusable" and "undertaken in bad faith" and thus not objectively reasonable). The Court thus concludes that Plaintiffs' claims—

based on plausible interpretations of the DMCA, and raising several issues of first impression in this Circuit—were reasonable.

**2. Litigation Conduct—Stage I**

Next, Vimeo claims that Plaintiffs "over-litigated [their] claims on summary judgment, requiring Vimeo to expend an inordinate amount of hours responding to Plaintiffs' burdensome submissions." Defs. Br. at 15.

In general, courts have found that a party's "unreasonable conduct," such as "frivolous and burdensome stall tactics" "not connected to any reasonable dispute between the parties," can support an award of fees. *ReDigi*, 2022 WL 1046463, at *7; 5 Nimmer on Copyright § 14.10[D][5][a][iii] ("The larger principle at stake in these cases is that hard-ball litigation tactics (such as to cripple defendant with litigation expenses) merit an award of fees[,] . . . [b]ut the allegation of improper litigation tactics is much more widespread than the reality."). The guiding question is whether a party's "conduct in this litigation . . . was truly in bad faith" or "sanctionable." *Matthew Bender & Co. v. W. Publ'g Co.*, 240 F.3d 116, 125 (2d Cir. 2001).

Vimeo points, as evidence of Plaintiffs' unreasonable conduct, to the facts that (1) Plaintiffs' Local Rule 56.1 statement consisted of "403 paragraphs," even though, as it argues, "most of the supposedly 'undisputed' facts were immaterial to Plaintiffs' motion"; and (2) Plaintiffs submitted an unauthorized reply to Vimeo's Rule 56.1 response, which "contest[ed] each of Vimeo's responses that asserted a factual dispute." Defs. Br. at 15–16; *see* Dkt. 52 (Plaintiffs' Rule 56.1 statement); Dkt. 104 (Plaintiffs' Rule 56.1 reply).

These filings, though, did not demonstrate the kind of bad faith or sanctionable conduct, or other types of unwanted, hardball litigation tactics, that would warrant a fee award. The Court denied Vimeo's motion to strike Plaintiffs' Rule 56.1 statement because it found that the statement

was not unduly "lengthy" "in light of the numerous and complex issues raised in this case and the large body of evidence Plaintiffs have supplied in connection with their motion." *Vimeo I*, 972 F. Supp. 2d at 509. And Vimeo did not contemporaneously object to Plaintiffs' reply to Vimeo's Rule 56.1 statement, which is a filing that is neither expressly permitted nor prohibited by the Local Rules.[11] *See* Dkt. 210.

**3. Litigation Conduct—Stage II**

In *Vimeo III*, the Circuit remanded this case to the Court. Vimeo faults Plaintiffs for "relitigating red-flag knowledge based on evidence the Second Circuit already deemed insufficient" through an "explosion of filings," and thus seeks, in the alternative, an award of $1,202,768.98 for the post-remand legal expenses it incurred. Defs. Br. at 16–19.

In *Vimeo III*, the Second Circuit held that:

> [A] showing by plaintiffs of no more than that some employee of Vimeo had some contact with a user-posted video that played all, or nearly all, of a recognizable song is not sufficient to satisfy plaintiffs' burden of proof that Vimeo forfeited the safe harbor by reason of red flag knowledge with respect to that video. . . . Vimeo is entitled to summary judgment on those videos as to the red flag knowledge issue, unless plaintiffs can point to evidence sufficient to carry their burden of proving that Vimeo personnel either knew the video was infringing or knew facts making that conclusion obvious to an ordinary person who had no specialized knowledge of music or the laws of copyright.

826 F.3d at 97–98. It further explained that "the mere fact that a video contains . . . copyrighted music and was to some extent viewed . . . by some employee of a service provider would be insufficient (without more) to sustain the copyright owner's burden of showing red flag knowledge." *Id.* at 97. As a result, the Circuit held that the mere fact that a Vimeo employee had "interact[ed]" with a video—through liking, commenting, or other methods—was insufficient to

[11] Plaintiffs also filed an unauthorized reply, post-remand, to Vimeo's response to Plaintiffs' Rule 56.1 Supplemental Statement of Undisputed Facts, which Vimeo moved to strike. The Court denied Vimeo's motion, "[i]n the interest of a full consideration of all the issues in this case," and allowed Vimeo to respond—which it did—curing any potential prejudice. Dkt. 210; *see* Dkt. 211.

establish red flag knowledge, *id.* at 96–98 & n.12, contrary to this Court's earlier conclusion that such an interaction was sufficient to raise a triable issue of fact. The Circuit further held that "[t]he copyright owner is entitled to discovery in order to obtain the specific evidence it needs to sustain its burden of showing that the service provider did in fact know of the infringement or of facts that made infringement obvious," *id.* at 97, though it did not specify what combination of the "innumerable facts that might make infringement obvious" would satisfy a plaintiff's burden here. *Id.* at 94.

In connection with the renewed motion for summary judgment, Vimeo faults Plaintiffs for filing what it characterizes as a "motion glutting the record with thousands of convoluted cross-referenced facts as to 307 videos, all of which at most merely showed a Vimeo employee was aware of the presence of copyrighted music, not that infringement was objectively obvious." Defs. Br. at 16–17.[12] The Court takes little issue, though, with the form in which Plaintiffs presented their evidence: indeed, the Court itself requested that Plaintiffs amend their "chart" to include additional cross-references, "as to each video," to "the facts known to the employee(s) who interacted with the video that would make infringement objectively obvious." Dkt. 213.

Vimeo's contention that Plaintiffs unreasonably continued to litigate this case, post-remand, because they purportedly "knew they had no evidence that any Vimeo employee knew each video at issue was infringing" presents a closer question. Defs. Br. at 16. In their post-remand summary judgment motion, Plaintiffs argued, in short, that "the Court of Appeals did not

[12] As Vimeo explains, Plaintiffs "submitted: (1) a 57-page statement containing more than 270 paragraphs (including sub-parts, such as a 13-page chart with 70 subparts); and (2) a massive 'summary chart' consisting of an Excel table with 318 rows (one for each asserted work) and 35 columns—over 11,000 data cells that supposedly reflected every interaction any Vimeo employee ever had with each of the 307 videos." Defs. Br. at 17; *see* Dkt. 187; Dkt. 189 (original summary chart); Dkt. 219 (modified summary chart). Vimeo prepared a response to this summary chart. Dkt. 200 (original response chart); Dkt. 225 (modified response chart).

discuss," in *Vimeo III*, many of the pieces of evidence which "evidence[d] the existence of a triable issue of fact on red flag knowledge" when viewed in their totality. Dkt. 186 at 1–2.[13]

This Court concluded, though, that this "evidence, construed in the light most favorable to Plaintiffs, demonstrates only that some employees at the company were broadly familiar with the concept of copyright and that there was some general awareness within the company that copyright infringement was occurring on Vimeo.com." *Vimeo IV*, 2021 WL 2181252, at *5. "Neither showing," though, was "sufficient to raise a triable issue of fact as to red flag knowledge." *Id.* The Court further found that, while Plaintiffs had offered "categories of evidence [that] may well demonstrate that a Vimeo employee was aware of the content of a Video-in-Suit and that it was objectively obvious that such a video contained copyrighted music[,] . . . these modes of interaction with infringing videos say nothing about the employee's knowledge as to whether the use of such music was authorized or fair," as the Second Circuit had held was required. *Id.* at *7; *see Vimeo III*, 826 F.3d at 96–97. It did, nevertheless, find that there remained issues of material fact "on the set of videos Plaintiffs have identified as uploaded by Vimeo or Connected Ventures employees" under a separate prong of the Section 512(c) safe harbor provision: the requirement that infringement occur "by reason of the storage at the direction of a user of material." *Vimeo IV*, 2021 WL 2181252, at *3, *12.

Plaintiffs then appealed (1) *Vimeo IV*'s grant of summary judgment to Vimeo on the basis that Plaintiffs had failed to raise an issue of disputed fact as to Vimeo's red flag knowledge of infringement, and (2) *Vimeo I*'s grant of summary judgment to Vimeo on the basis that Plaintiffs

[13] They argued, for example, that the Circuit "did not view or consider the nature and content of the videos themselves; did not review the information disclosed on the web pages where the videos appeared, including obvious 'music credits' identifying the music used in the video; did not discuss the duration, placement, and importance of the music in the videos; and did not take into account the surrounding circumstances of the 'interaction' by Vimeo employees with specific videos, including in the form of 'comments' and 'likes,' or the knowledge, experience, job duties, and admissions of those employees who viewed the videos at issue." Dkt. 186 at 1.

had failed to raise an issue of disputed fact as to whether Vimeo had the right and ability to control infringing activity, which also would have disqualified it from the Section 512(c)(1) safe harbor. (As Vimeo points out, Plaintiffs could have sought leave to raise this second issue on interlocutory appeal from *Vimeo I*, but did not do so.) Defs. Br. at 19 n.6. In 2025, the Second Circuit affirmed the Court's grant of summary judgment on both issues. *Vimeo V*, 125 F.4th at 422, 428–29.[14]

To summarize this history, the Court found, in *Vimeo IV*, that Plaintiffs did not present evidence in support of their claims that was sufficient to survive summary judgment. But it is difficult to fault them for continuing to litigate these claims given the circumstances of this case. As previously noted, the Second Circuit's decision in *Vimeo III* gave little guidance as to the kinds of evidence a plaintiff must bring forward about a defendant's red flag knowledge to survive summary judgment—only the overall burden of proof a plaintiff must shoulder. What combination of direct or circumstantial evidence might surmount this bar remained a question of first impression. *Vimeo III* left open, for instance, the issue of what evidentiary showing would demonstrate that specific employees had "knowledge as to whether the use of such music was authorized or fair." *Vimeo IV*, 2021 WL 2181252, at *7.

Plaintiffs tried, in the Court's view, to make reasonable arguments that they had met this burden based on the evidence they had garnered, and to fit this evidence into the framework the Circuit announced in *Vimeo III*. And, as Plaintiffs note, they raised new arguments in this phase of the litigation, based on evidence not considered in *Vimeo I* and *Vimeo III*, such as the videos

[14] In *Vimeo V*, the Circuit agreed that Plaintiffs had not met their burden of showing "that Vimeo employees were aware of facts making it obvious to (a) a person who has no specialized knowledge or (b) a person that Plaintiffs have demonstrated does possess specialized knowledge that: (1) the videos contained copyrighted music; (2) the use of the music was not licensed; and (3) the use did not constitute fair use." 125 F.4th at 420. The Circuit similarly upheld the grant of summary judgment on the "right and ability to control" issue. It further noted that Plaintiffs had raised a "potentially forceful argument" that "Vimeo's policy to encourage lip-dub videos constituted (or contributed to) the 'right and ability to control' infringements," but held that this argument had been waived. *Id.* at 427–28.

themselves and their captions, comments, and web pages.[15] This new evidence spoke to what a Vimeo employee would have encountered when viewing a given video, not whether the employee interacted with it. Nevertheless, the Court concluded that Plaintiffs had come forward with "no evidence" that Vimeo employees "were aware of the licensing practices that affect the music uploaded onto their site, and, where relevant, were able to distinguish between fair and infringing use." *Vimeo IV*, 2021 WL 2181252, at *11.

Vimeo's attempts to cast Plaintiffs' behavior as unreasonable because they "refus[ed] to follow the Second Circuit's mandate," or "thumb[ed their] nose at the Second Circuit's mandate," Defs. Repl. at 6–7, however, reach too far, and its comparison to the *ReDigi* case is inapposite. In that case, Judge Sullivan found a party's decision to "assert legal arguments that had been foreclosed by the Court's decision, introduce[] new affirmative defenses that were clearly without merit, and attempt[] to burden Plaintiffs and the Court with frivolous motions and discovery requests" to be unreasonable, with "five of those [new affirmative] defenses . . . premised on arguments regarding the fair use and first sale doctrines that the Court had already rejected in its summary judgment opinion." *ReDigi*, 2022 WL 1046463, at *4, *7. The *ReDigi* defendant also made "factual contentions . . . in its summary judgment briefing" that "were at odds with the record, and therefore objectively unreasonable." *Id.* at *6.[16]

As discussed, though, Plaintiffs' post-remand conduct in this case bears little resemblance to the conduct canvassed in *ReDigi*. Plaintiffs' position that they had raised a triable issue of fact

[15] Though the parties engaged in a limited discovery exchange post-remand, they informed the Court, prior to briefing the renewed cross motions for summary judgment, that they otherwise did not "intend to seek any further . . . discovery on 'red flag' knowledge." Dkt. 163, *see* Dkt. 164.

[16] Despite this patently unreasonable behavior, Judge Sullivan awarded attorneys' fees only "with respect to a portion of the summary judgment proceedings and all post-summary-judgment proceedings in this Court." *ReDigi*, 2022 WL 1046463, at *9. As to the pre-summary-judgment proceedings, he noted that the defendant's "legal arguments before summary judgment were not objectively unreasonable, as they pertained to a complex area of unsettled law," and that the defendant had otherwise acted reasonably in "legitimately contesting issues of unsettled law." *Id.* at *7.

as to red flag knowledge under the *Vimeo III* framework (or that they had affirmatively carried their burden and should have been granted summary judgment) had not been litigated before this Court.[17] And as a general matter, it was reasonable, in the Court's view, for Plaintiffs to test the sufficiency of their evidence against this novel framework. Though they were ultimately unsuccessful, Plaintiffs were then, as they were pre-remand, "entitled to appeal an adverse ruling on a novel question of copyright law" to the Second Circuit in *Vimeo V. ReDigi*, 2022 WL 1046463, at *10. In sum, while Plaintiffs' Stage II conduct was arguably less reasonable than their Stage I conduct, the Court finds that their post-remand conduct was "not so patently devoid of legal or factual basis as to be objectively unreasonable." *Id.*

**B. Motivation and Bad Faith**

The Court next considers Plaintiffs' motivation and potential bad faith in prosecuting the instant suit. These factors also weigh against a fee award.

Vimeo argues that it is entitled to fees because "Plaintiffs harbored an improper strategic motive in filing their Complaint": to "manufacture favorable judicial precedent that would allow them to [forgo] the burden of affirmatively detecting instances of infringement and sending DMCA notices." Defs. Br. at 11. Plaintiffs respond that they brought this case in good faith to "obtain judicial interpretation of a complex statute and assess whether Vimeo was legally entitled to a DMCA defense." Pls. Opp'n at 24.

[17] In this respect, too, this case is unlike *Nwosuocha v. Glover*, relied on by Vimeo in its Reply for the proposition that a defendant should be awarded fees when a plaintiff, despite being put on notice of "fundamental flaws" in its case, "continue[s] to press [its] claim." 2026 WL 468746, at *2 (2d Cir. Feb. 19, 2026) (summary order); *see* Defs. Repl. at 6. In *Nwosuocha*, the district court found the plaintiff's conduct unreasonable when, in "pre-motion letters," defense counsel identified that the plaintiff's claim failed as a matter of law because he "did not possess a copyright registration for his musical composition, only a registration for the sound recording of his song." *Nwosuocha v. Glover*, 2025 WL 560846, at *4 (S.D.N.Y. Feb. 20, 2025). The *Nwosuocha* plaintiff, in other words, acted unreasonably by continuing to litigate his case in the face of a clear legal standard which barred his claim. The question of whether the evidence adduced by Plaintiffs was sufficient to meet the evidentiary standard set by *Vimeo III* was less clear, and different in kind from a plaintiff's decision to litigate a case despite notice of a clear legal defect.

In general, "the presence of improper motivation in bringing a lawsuit or other bad faith conduct weighs heavily in favor of an award of costs and fees." *Ariel (UK) Ltd. v. Reuters Grp. PLC*, 2007 WL 194683, at *4 (S.D.N.Y. Jan. 24, 2007); *see also Cloth v. Hyman*, 146 F. Supp. 185, 193 (S.D.N.Y. 1956) (noting that "[a]n attorney's fee is properly awarded when the infringement action has been commenced in bad faith, as where the evidence establishes that the plaintiff's real motive is to vex and harass the defendant"). Courts commonly find improper motivation where a plaintiff "gambl[es] on an unreasonable legal theory in order to achieve a secondary gain," such as a nuisance settlement, *Walsh v. Townsquare Media, Inc.*, 2022 WL 1302216, at *3 (S.D.N.Y. May 2, 2022); *see Baker v. Urban Outfitters, Inc.*, 431 F. Supp. 2d 351, 357–58 (S.D.N.Y. 2006), or "a competitive advantage" in the marketplace. *Maljack Prods., Inc. v. GoodTimes Home Video Corp.*, 81 F.3d 881, 889 (9th Cir. 1996).

The crux of Vimeo's argument is that Plaintiffs, by bringing this suit instead of sending individual DMCA takedown notices for each of the Videos-in-Suit, attempted an impermissible "end-run" around the DMCA's notice-and-takedown regime. Defs. Repl. at 3. If Plaintiffs had simply availed themselves of the remedies clearly available to them under the DMCA, Vimeo says, they "could have avoided this entire 16-year lawsuit," particularly since Vimeo had complied with previous DMCA notices sent by Plaintiffs. *Id.* at 4. Accordingly, Vimeo argues that "Plaintiffs' refusal to send Vimeo DMCA notices" for the Videos-in-Suit "reveals they never endeavored to efficiently and fairly resolve the litigation." Defs. Br. at 12.

As Vimeo acknowledges, though, there is no statutory requirement that a plaintiff exhaust its notice-and-takedown remedies against a defendant before bringing suit under the Copyright Act. Defs. Repl. at 4; *see, e.g.*, *UMG Recordings, Inc. v. Shelter Cap. Partners LLC*, 718 F.3d 1006, 1020 (9th Cir. 2013). Indeed, as Plaintiffs observe, the DMCA merely created a conditional

limitation on liability under the Copyright Act for internet service providers. As Congress explained when adopting the DMCA:

> There have been several cases relevant to service provider liability for copyright infringement [under the Copyright Act]. . . . Rather than embarking upon a wholesale clarification of these doctrines, the Committee decided to leave current law in its evolving state and, instead, to create a series of "safe harbors," for certain common activities of service providers. A service provider which qualifies for a safe harbor, receives the benefit of limited liability. . . . [T]he limitations of liability apply if the provider is found to be liable under existing principles of law.

S. Rep. No. 105-190, at 19 (1998). As commentators have elaborated, the DMCA thus

> does not disturb the line of cases [defining the contours of service-provider liability under the Copyright Act]. It simply provides a means of avoiding their reach. Thus, service providers who meet the terms of [the DMCA safe-harbor] escape liability, regardless of how their conduct would have been treated under that line of cases. Conversely, service providers who eschew the new standards are not automatically to be held culpable as a consequence; instead, their conduct is evaluated under the preexisting line of cases, and judged infringing or immune accordingly.

4 Nimmer on Copyright § 12B.01[B][3]. The Second Circuit expressed a similar view in *Vimeo III*, in which it explained that the DMCA's text reflects a "compromise" between providers and rightsholders which "make[s] economically feasible the provision of valuable Internet services while expanding protections of the interests of copyright owners through the new notice-and-takedown provision." 826 F.3d at 90.

There is nothing inherently improper, though, in a copyright holder's effort to hold a service provider liable under the Copyright Act and to argue reasonably, as Plaintiffs did here, that Vimeo's conduct prevented it from invoking the limitations on liability in the DMCA. As the Second Circuit noted, the notice-and-takedown provisions merely "augment[ed] the arsenal of copyright owners" by creating an alternative remedy. *Vimeo III*, 826 F.3d at 97. And because the limitation on liability conferred by the DMCA is qualified, rather than absolute, there remains a place for good-faith lawsuits under the Copyright Act to test whether a service provider is entitled

to that immunity. From a rightsholder's perspective, the two remedies are far from the same: unlike a claim brought under the Copyright Act, a DMCA takedown notice does not provide a rightsholder with monetary relief for past infringement or injunctive relief against future infringement, both of which Plaintiffs sought in this action. *See* Dkt. 1 ("Compl.") at 21–22. Penalizing a rightsholder for seeking a remedy available to it under the Copyright Act—without an exhaustion requirement—would not serve the Act's purposes.

Plaintiffs' decision to commence this suit without filing DMCA takedown notices as to the Videos-in-Suit, despite Vimeo's history of complying with such notices, does not change this conclusion. As the Second Circuit has explained, a party is entitled to "vigorously . . . challenge any actions by [a defendant] that might infringe on its copyrights," and "[a] party's good faith refusal to cooperate with a suspected infringer prior to the filing of suit is not a proper ground for the award of attorneys' fees to the prevailing party in the subsequent suit." *Matthew Bender & Co.*, 240 F.3d at 125; *see also id.* (noting that a claimant did not act with an improper purpose by pursuing a copyright claim based on a "legitimate[] belie[f]" that its "products were protected," notwithstanding "open question[s]" regarding the validity of its claim). Though *Matthew Bender* did not involve the DMCA, Vimeo provides no compelling reason why this principle should apply with any less force in the DMCA context. In *Ventura Content, Ltd. v. Motherless, Inc.*, for example, the Ninth Circuit held that a plaintiff asserting that a DMCA safe harbor did not apply to a defendant, to which it had not previously sent takedown notices, did not act with improper motivation because the plaintiff "had, after all, been the victim of copyright infringement[,] . . . sued parties that played a role in the infringement, . . . [and] was thwarted only because of the complexities of the safe harbor rules that had not yet been fully explicated in the case law." 885 F.3d 597, 620 (9th Cir. 2018). The same is true here.

Further, Vimeo's previous compliance with Plaintiffs' takedown notices does not necessarily mean that it qualified for safe-harbor immunity. A defendant could, for example, repeatedly comply with takedown notices while having red flag or actual knowledge of infringement for non-noticed videos, which is precisely what Plaintiffs alleged here. In that circumstance, a plaintiff may be entitled to additional remedies—damages and an injunction under the Copyright Act—which it could receive only by filing suit. The fact of previous DMCA notice-and-takedown compliance, standing alone, is simply insufficient to support a finding of bad faith or improper motive, particularly where, as here, Plaintiffs advanced a colorable argument that Vimeo did not qualify for a DMCA safe harbor.[18] *Cf. Veoh Networks*, 2010 WL 1407316, at *1 ("That [the plaintiff] declined to avail itself of the DMCA's notice and takedown procedures could as easily reflect a good-faith belief on [the plaintiff's] part that [the prevailing defendant] did not qualify for DMCA safe-harbor protection as it could permit a finding of willful indifference to applicable legal standards and requirements."). And, as discussed above, at least one other court has declined to award fees to a prevailing defendant where a plaintiff had sued under the Copyright Act even after the defendant had previously complied with DMCA takedown notices.[19] *Athos II*, 2024 WL 3431912, at *6. Vimeo provides no authority to the contrary. Indeed, presuming bad faith whenever a plaintiff sues a defendant that has complied with earlier takedown notices would

---

[18] It is true, as Vimeo points out, that "[a] copyright holder's failure to notify the service provider of infringement[,] through the notice and takedown procedure, . . . strips it of the most powerful evidence of actual knowledge" available to it. *Mavrix Photographs, LLC v. LiveJournal, Inc.*, 873 F.3d 1045, 1057 (9th Cir. 2017). Nevertheless, it is not unreasonable or improper to commence litigation without first seeking relief through the notice-and-takedown procedure. *See Ventura Content, Ltd. v. Motherless, Inc.*, 2013 WL 12122569, at *3 (C.D. Cal. Oct. 30, 2013), *aff'd*, 885 F.3d 597 (9th Cir. 2018).

[19] Vimeo contrasts the instant case with *Ventura Content*. 2013 WL 12122569, at *3. There, the prevailing defendants argued that the plaintiff "brought this case in bad faith because . . . [the plaintiff] did not file DMCA notices for the thirty-three clips at issue before filing suit." *Id.* at *3. The *Ventura Content* court concluded that because "an owner of copyrighted works is not required to file a DMCA notice before filing suit," and because the plaintiff's claims that the defendants were not entitled to safe-harbor protection were "not unreasonable," the plaintiff's "decision to forego the notice and takedown protocol . . . does not suggest bad faith." *Id.* By the same token, though, a plaintiff is not required to choose between the DMCA notice-and-takedown procedure and the Copyright Act for relief, and *Ventura Content* does not suggest otherwise.

penalize rightsholders for having used the very mechanism the DMCA created for their benefit. Put another way, Vimeo's proposed presumption would make it more likely that an unsuccessful Copyright Act plaintiff would be ordered to pay fees merely because it had previously invoked the notice-and-takedown procedure—an outcome that would not serve the purposes of the Copyright Act. Accordingly, the Court finds that Plaintiffs did not act with an improper motive, or in bad faith, by commencing this suit without sending takedown notices as to the Videos-in-Suit.

Next, in its Reply, Vimeo seizes on one justification for bringing suit advanced by Plaintiffs, that they chose to "proceed with litigation against an aggregator of infringing content[,] rather than engaging in the ineffective 'whack-a-mole' strategy of seriatim takedown notices," Pls. Opp'n at 15, declaring that it constitutes definitive evidence that they brought this suit to "reform the DMCA through litigation," Defs. Repl. at 4, and "subvert" the compromise underpinning the safe-harbor regime. Defs. Br. at 12. Plaintiffs characterize their motivation in bringing suit, though, as an effort to "test[]" the liability of a "service provider asserting questionable DMCA compliance," Pls. Opp'n at 23, which the Court views as reasonable.

Even crediting Vimeo's argument that Plaintiffs filed suit to achieve a favorable ruling which would expand the potential for platform liability under the DMCA and Copyright Act, that motivation would also be insufficient to warrant a fee award. In this litigation, Plaintiffs did not seek to overturn settled precedent through a long-shot legal argument. Instead, as previously discussed, they advanced reasonable interpretations of the law—against an unsettled legal landscape—which ultimately did not prevail. Plaintiffs' maintenance of a reasonable, yet unpersuasive, litigation position does not mean, as Vimeo argues, that they did not "endeavor[] to efficiently and fairly resolve this litigation." Defs. Repl. at 4 (quoting *Hughes v. Benjamin*, 2020 WL 4500181, at *4 (S.D.N.Y. Aug. 5, 2020)). Plaintiffs were entitled to advance a reasonable

interpretation of the DMCA which favors rightsholders, just as Vimeo advanced a reasonable interpretation of the DMCA which favors platforms.

Further, the circumstances of this case are nothing like *Hughes*, upon which Vimeo relies. There, the court had "little difficulty concluding that [the plaintiff's] dual goals in bringing her baseless suit were to inflict financial harm on [the defendant] and to raise her own profile in the process" because she "openly discussed her improper motivations on both Twitter and her website." *Hughes*, 2020 WL 4500181, at *4. Here, unlike *Hughes*, there is no evidence that Plaintiffs acted with an "intent to abuse the legal system in order to further a personal agenda that had little to do with the Copyright Act." *Id.*

At bottom, therefore, the Court finds that Plaintiffs' decision to file suit under the Copyright Act without first availing themselves of the notice-and-takedown provisions of the DMCA—even where Vimeo had complied with previous DMCA notices—is not evidence of the kind of improper purpose justifying the imposition of fees. The Court sees no need to penalize Plaintiffs for electing a remedy to which they were entitled under the Copyright Act, or for advancing a reasonable interpretation of a statute favorable to their interests. This litigation simply did not present the kind of facially "unreasonable legal theory" that would lead the Court to conclude that Plaintiffs were acting opportunistically to extract a settlement from Vimeo, or otherwise harass it through litigation.[20] *Walsh*, 2022 WL 1302216, at *3. Accordingly, this factor weighs in Plaintiffs' favor.

[20] Finally, Vimeo faults Plaintiffs for demanding, in the Complaint, "maximum statutory damages . . . for each copyright infringed" and argues that this is further evidence that they sought a "legally unjustified windfall." Defs. Br. at 13 (quoting *Baker*, 431 F. Supp. 2d at 358). But a plaintiff's attempt to seek the monetary remedy to which it may be entitled, if its reasonable claims are meritorious, is not inherently improper. In *Baker*, for example, the court pointed to evidence demonstrating that the plaintiff "had actual personal knowledge" that certain allegations in the complaint were untrue, and that he had filed and maintained the suit in a transparent "attempt to extract a significant payment from perceived 'deep pocketed' defendants," as evidence that he sought "a legally unjustified windfall." *Baker*, 431 F. Supp. 2d at 357–58. Here, Plaintiffs sought, as many plaintiffs do, an award of "Defendants' profits and for damages in such amount as may be determined; alternatively, for maximum statutory damages in the amount

### C. Compensation and Deterrence

The Court next considers compensation and deterrence, "[a] final relevant pair of factors." *Beastie Boys v. Monster Energy Co.*, 112 F. Supp. 3d 31, 44 (S.D.N.Y. 2015). These factors similarly weigh against a fee award.

First, as to compensation, Vimeo argues that the fact that it is a prevailing defendant weighs in favor of a fee award. Vimeo relies on out-of-Circuit cases for the proposition that "where a defendant prevails, courts show greater inclination to award fees because, while a prevailing plaintiff can be awarded damages, a prevailing defendant receives no such reward." Defs. Br. at 19 (discussing and citing *Small Just. LLC v. Xcentric Ventures LLC*, 873 F.3d 313 (1st Cir. 2017), *Harner v. Wong Corp.*, 2015 WL 11111300 (D.N.M. June 4, 2015), and *Figure Eight Holdings, LLC v. Dr. Jay's, Inc.*, 2011 WL 5839655 (C.D. Cal. Nov. 18, 2011)). It is true that in some other circuits, such as the Seventh Circuit, "a defendant that prevails in copyright litigation is presumptively entitled to fees under § 505." *FM Indus., Inc. v. Citicorp Credit Servs., Inc.*, 614 F.3d 335, 339 (7th Cir. 2010); *see also Katz v. Chevaldina*, 127 F. Supp. 3d 1285, 1300 (S.D. Fla. 2015) (similar). But the Second Circuit has explicitly declined to "creat[e] such a presumption," as doing so would be contrary to the principle that "the standard governing the award of attorneys' fees under [S]ection 505 should be identical for prevailing plaintiffs and prevailing defendants." *Lava Recs., LLC v. Amurao*, 354 F. App'x 461, 462 (2d Cir. 2009) (summary order). Indeed, the Supreme Court's decisions in "*Fogerty* and *Kirtsaeng* are clear that district courts must make

of $150,000 with respect to each copyrighted work infringed, or for such other amount as may be proper pursuant to 17 U.S.C. § 504(c)." Compl. at 21; *cf. Baker*, 431 F. Supp. 2d at 357–58 (finding unreasonable motivation where a plaintiff rejected a settlement offer "more than double the amount of [the defendant's] gross profit" on the sales of the infringing products). Absent evidence of bad faith—for example, evidence from which the Court could conclude that Plaintiffs knew that they could not receive maximum statutory damages for their claims, which Vimeo does not offer, or that Plaintiffs rejected a settlement offer well in excess of the reasonable damages to which they would be entitled—there is no reason for the Court to find that it was improper for Plaintiffs to seek damages in this amount. *See Baker*, 431 F. Supp. 2d at 357–58, 363–64.

particularized, case-by-case assessments of attorney's fees—a mandate that is at odds with a presumptive entitlement to fees in certain types of cases." *Otto v. Hearst Commc'ns, Inc.*, 2020 WL 377479, at *3 (S.D.N.Y. Jan. 23, 2020); *see Kirtsaeng*, 579 U.S. at 209 (holding that a "presumption" that fees should not be awarded upon "a finding of reasonableness" "goes too far in cabining how a district court must structure its analysis and what it may conclude from its review of relevant factors"). Although the Court recognizes that the "protracted nature" of this case and the "degree of success" Vimeo achieved are factors which weigh in its favor, *Small Just.*, 873 F.3d at 329, consistent with the Circuit's guidance in *Lava Records*, 354 F. App'x at 462, it will not assume that Vimeo is presumptively entitled to fees merely because it is a prevailing defendant.[21]

Next, as to deterrence, Vimeo argues that a denial of fees would reward Plaintiffs for "intentionally skirting its available DMCA remedies," because without a fee award, "Plaintiffs and others will have no reason to comply with the DMCA's notice-and-takedown procedure" as they could instead "file a complaint and gamble on a chance to earn a massive payout or coerce a settlement." Defs. Br. at 21. This argument, too, fails to persuade. A plaintiff who sues under the Copyright Act rather than the DMCA's notice-and-takedown procedure necessarily takes "a risk that it would end up with nothing to show for its costs in prosecuting its claim." *Canal+ Image UK Ltd.*, 792 F. Supp. 2d at 685. And if a plaintiff nevertheless brings an unreasonable claim in bad faith, such as in Vimeo's hypothetical, a defendant will likely be entitled to shift the cost of

[21] Plaintiffs also argue that Vimeo's success on an *affirmative defense*, rather than on the merits of Plaintiffs' claims, weighs against an award of fees. *Cf. Mavrix Photographs LLC v. LiveJournal, Inc.*, 2014 WL 12639099, at *1 (C.D. Cal. Nov. 5, 2014) (denying fees to a defendant who prevailed by asserting the applicability of a DMCA safe harbor in part because the defendant "prevailed on an affirmative defense at summary judgment—not for failure of [the plaintiff's] prima facie claims of copyright infringement, which were in fact legally sufficient"). The Court agrees with Vimeo, though, that prevailing on an affirmative defense grounded in the applicability of a DMCA safe harbor is not a "lesser form of success," Defs. Repl. at 2, because it is not a "technical defense, such as the statute of limitations, laches, or the copyright registration requirements" that is unrelated to the conduct which gives rise to liability for infringement. *Fantasy, Inc. v. Fogerty*, 94 F.3d 553, 556 (9th Cir. 1996).

its attorneys' fees under Section 505.[22] Moreover, as previously discussed, the questions raised by the instant case were close and complex, and there is no indication that Plaintiffs pursued their claims in bad faith to "gamble" on a payout or "coerce" a settlement, as Vimeo implies. Defs. Br. at 21; *see also Insurent Agency Corp.*, 2020 WL 86813, at *7 (noting that there is no "need for deterrence" where a plaintiff advances "at least an arguably reasonable litigation position"). So too with Vimeo's overheated argument that Plaintiffs and other rightsholders must be "deterred" from the "continued overreach" of their attempts to "secure a reading of the DMCA that would undermine [its] goals." Defs. Br. at 21. Here, Vimeo does not offer much more than unpersuasive rhetoric, recasting Plaintiffs' effort to clarify the terms of "the bargain the DMCA struck" as one to "subvert," "undermine," "skirt" and "shirk[]" the statute. *Id.* at 12, 21. But there is no need to deter a plaintiff from advancing a reasonable interpretation of a statute that favors its interests.

Finally, in opposition, Plaintiffs also argue that a fee award in this case would not advance the purposes of the Copyright Act because it would discourage future parties from litigating "novel or close" cases to judgment. Pls. Opp'n at 25. Vimeo argues the opposite: that its efforts to "stand[] up to Plaintiffs" and protect the DMCA's notice-and-takedown regime "not only on its own behalf, but on behalf of all other platforms that host user-generated content" should be rewarded because doing so promotes the "Copyright Act's underlying goals." Defs. Repl. at 8.

Vimeo's argument—that by litigating this case to judgment, it vindicated the rights of platforms under the DMCA, and thus promoted the goals of the Copyright Act—strikes the Court, in the context of this indisputably novel and challenging case, as a version of the fee-shifting

[22] Vimeo further argues in its Reply that "the plain chilling effect of looming multimillion dollar lawsuits on defendants like Vimeo, rather than sending a cost-free DMCA notice, particularly warrants deterrence." Defs. Repl. at 8. But the potential "chilling effect of imposing a large fee award on a plaintiff, who, in a particular case, may have advanced a reasonable, albeit unsuccessful, claim" under the Copyright Act is equally salient. *Insurent Agency Corp.*, 2020 WL 86813, at *5 (quoting *Lotus Dev. Corp. v. Borland Int'l, Inc.*, 140 F.3d 70, 75 (1st Cir. 1998)).

consideration the Supreme Court rejected in *Kirtsaeng*. In that case, the prevailing defendant argued that a lawsuit's "role in settling significant and uncertain legal issues" should weigh in favor of a fee award for the prevailing party. *Kirtsaeng*, 579 U.S. at 205. Justice Kagan, writing for a unanimous Court, agreed that litigating hard cases to judgment "can help ensure that the boundaries of copyright law are demarcated as clearly as possible, thus advancing the public interest in creative work." *Id.* But she did not "agree that fee-shifting will necessarily, or even usually, encourage parties to litigate those [close] cases to judgment. . . . [T]he hallmark of hard cases is that no party can be confident if he will win or lose. That means [the defendant's] approach could just as easily discourage as encourage parties to pursue the kinds of suits that meaningfully clarify copyright law." *Id.* at 206. Vimeo's decision to continue litigating this case—culminating in its victory on a series of significant and uncertain legal issues—"meaningfully clarif[ied] copyright law," but, as in *Kirtsaeng*, that fact does not counsel in favor of awarding it fees. *Id.*; *accord Agence France Presse*, 2015 WL 13021413, at *4.

**D. Balancing the Factors**

In sum, few relevant factors weigh in favor of awarding Vimeo fees in this litigation. It is true, of course, that Vimeo ultimately achieved complete victory on all of Plaintiffs' claims after many long, hard-fought years spent litigating this dispute. And the Court recognizes that Plaintiffs chose to continue to litigate this case aggressively on remand even though they were unable to meet the high evidentiary bar established by *Vimeo III*. But these considerations are outweighed by the objective reasonableness of Plaintiffs' claims, the reasonableness of their conduct throughout Stage I of this proceeding, the new and complex questions of law repeatedly put at issue by this litigation, the lack of an improper motivation or other bad-faith conduct, and the limited need for compensation and deterrence. In view of the "totality of circumstances in [this]

case" and the "purposes of the Copyright Act," *Kirtsaeng*, 579 U.S. at 203, and exercising its "equitable discretion," *Fogerty*, 510 U.S. at 534, the Court concludes that an award of attorneys' fees to Vimeo is not warranted, either in total or for the fees Vimeo incurred in Stage II alone. Accordingly, Vimeo's motion for such relief is denied.[23]

**II. Costs on Appeal**

Finally, Plaintiffs dispute Vimeo's ability to recover certain costs associated with its interlocutory appeal. They argue that, under Rule 39 of the Federal Rules of Appellate Procedure, a party is entitled to recover only certain costs associated with the production of appellate briefs, such as "[r]eproduction," "[c]overs," and "[b]inding." Pls. Bill of Costs Opp'n at 1–2. As a result, Plaintiffs object to Vimeo's inclusion of line items for "[p]aralegal hours" and "[t]ypesetting," and request that "the Court allow taxable costs of no more than $8,379.20, rather than the $16,461.70 in costs that Vimeo has improperly requested." *Id.* at 2. For the reasons that follow, the Court will award Vimeo $16,461.70 in costs.

**A. Entitlement to Costs**

The Court begins with the question of Vimeo's entitlement to costs.[24] In *Vimeo III*, which resolved Vimeo's interlocutory appeal, the panel ordered that "the district court's rulings" be "affirmed in part and vacated in part," though it ruled in Vimeo's favor on all questions presented. 826 F.3d at 99–100. Rule 39 "governs the taxation of appellate costs," which depend in part on the disposition of an appeal. *Whitfield v. Scully*, 241 F.3d 264, 274 (2d Cir. 2001), *abrogated on other grounds*, *Bruce v. Samuels*, 577 U.S. 82 (2016). When the parties briefed this issue, Rule

[23] Because the Court concludes that Vimeo is not entitled to fees, it does not reach the parties' arguments concerning the reasonableness of the amount of fees sought, including Vimeo's request for the fees incurred in preparing this motion.

[24] The Second Circuit delegated to the Court the authority to decide Vimeo's entitlement to costs under Rule 39(a) as part of "the issue of costs." Costs Referral Order at 1; *see City of San Antonio*, 593 U.S. at 342–43 ("In all events, if a court of appeals thinks that a district court is better suited to allocate the appellate costs listed in Rule 39(e), the court of appeals may delegate that responsibility to the district court.").

39(a), which "provides a series of default rules that govern 'unless the law provides or the court orders otherwise,'" read as follows: "(4) if a judgment is affirmed in part, reversed in part, modified, or vacated, costs are taxed only as the court orders." *City of San Antonio v. Hotels.com, L.P.*, 593 U.S. 330, 333 (2021). Under the old Rule 39(a)(4), which governed affirmances in part, the Court of Appeals was empowered to "apportion costs in accordance with the parties' relative success, so that if, for example, the appellant wins what is essentially a 75% victory, the appellant can be awarded 75% of its costs." *City of San Antonio*, 593 U.S. at 337; *accord L-3 Commc'ns Corp. v. OSI Sys., Inc.*, 607 F.3d 24, 29 (2d Cir. 2010) ("[I]n a situation in which Rule 39(a)(4) applies, the appellate court may award all costs to one party, may award costs to no party, or may award costs in whatever combination it sees fit."). As the Supreme Court noted, this rule "tracks the venerable presumption that prevailing parties are entitled to costs." *City of San Antonio*, 593 U.S. at 336 (quoting *Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 377 (2013)).

In December 2025—long after the parties had filed their briefs on the taxation of appellate costs in July 2016—certain amendments to Rule 39 became effective, which provided a new default rule for the allocation of costs for partial affirmances and reversals. *See* Order Adopting Amendments to the Federal Rules of Appellate Procedure at 3 (2025), *available at* https://www.supremecourt.gov/orders/courtorders/frap25_5ifl.pdf ("Order Adopting 2025 Amendments"). In relevant part, new Rule 39 provides that "the following rules apply to allocating taxable costs among the parties unless the law provides, the parties agree, or the court orders otherwise: . . . (4) if a judgment is affirmed in part, reversed in part, modified, or vacated, each party bears its own costs." Fed. R. App. P. 39(a).

The transmittal order provides that new Rule 39 applies in pending proceedings "insofar as just and practicable." Order Adopting 2025 Amendments at 3. Under either version of the

Rule, however, the Court would award Vimeo costs: in *Vimeo III*, though the Circuit "affirmed in part and vacated in part," it ruled in Vimeo's favor on all three questions presented. 826 F.3d at 99–100. Further, Plaintiffs do not appear to dispute that Vimeo is entitled to its costs on appeal. As a result, given the Supreme Court's guidance to "apportion costs in accordance with the parties' relative success," *City of San Antonio*, 593 U.S. at 337, the Court will award Vimeo all its properly taxable costs.

**B. Amount of Costs**

The Court next turns to Plaintiffs' objections as to whether certain of Vimeo's costs are properly taxable. Although former Rule 39 provided little guidance on the question of what costs may be taxed by the Court of Appeals, the Second Circuit has noted that "in the absence of a specific textual reference in Rule 39, an expense can be an allowable cost of appeal when it is analogous to one of the costs specifically authorized by Rule 39(e)." *Phansalkar v. Andersen, Weinroth & Co.*, 356 F.3d 188, 190 (2d Cir. 2004); *see also Adsani v. Miller*, 139 F.3d 67, 74 (2d Cir. 1998) (holding that "Rule 39 does not exhaustively define 'costs,'" and noting that "[s]pecific costs are mentioned only in the context of how that cost should be taxed, procedurally speaking," in the District Court or the Court of Appeals). A court should also consider "whether the party seeking disallowance has clearly consented to the expense; whether a court has previously approved the expense; and whether the alternative arrangement costs less than the expense specifically authorized by the Rule." *Phansalkar*, 356 F.3d at 191. New Rule 39, by contrast, provides that the following "costs on appeal" are properly taxable: "(A) the production of necessary copies of a brief or appendix, or copies of records authorized by Rule 30(f); (B) the docketing fee; and (C) a filing fee paid in the court of appeals." Fed. R. App. P. 39(e).[25]

[25] The comments to the 2025 amendments clarify that new Rule 39(e) was intended to "specify which costs are taxable in the court of appeals." Fed. R. App. P. 39 advisory committee's note to 2025 amendment.

Plaintiffs object to Vimeo's inclusion of the costs of (1) typesetting covers and tables of contents, (2) the printer's labor, and (3) a CD-ROM included in the Joint Appendix. Regardless of whether old or new Rule 39 applies to this motion, though, these costs are properly taxable.

The Court begins by considering these costs under old Rule 39. First, Plaintiffs' argument that typesetting of briefs is not a taxable cost appears foreclosed by Second Circuit precedent. Plaintiffs object to "five line items for 'Typesetting' covers and tables of contents, for a total of $5,190.00." Pls. Bill of Costs Opp'n at 1; *see* Defs. Bill of Costs, Ex. A. Vimeo states that these costs were incurred to "render[] copies printable," and seeks "reasonable costs for the . . . typesetting of those materials." Defs. Bill of Costs Repl. at 2. In *Young v. Matsushita Elec. Indus. Co.*, the Circuit reaffirmed that "costs of typeset/printed briefs [are] taxable," which the Court understands to include the costs to typeset a brief before it is printed. 951 F.2d 509, 510 (2d Cir. 1991); *see also PepsiCo, Inc. v. Swan, Inc.*, 720 F.2d 746, 747 (2d Cir. 1983) (noting that the "cost of traditional typesetting and printing" is recoverable); *Phansalkar*, 356 F.3d at 189 ("As appellants who have won a reversal, they are clearly entitled to costs for . . . printing."). Further, the Second Circuit's own instructions contemplate that a party should attach, to its Bill of Costs, "printer's bills, which must state the minimum charge per printer's unit for a page, a cover, foot lines by the line, and an index and table of cases by the page"—in other words, directing the party to include evidence of the costs to typeset the briefs. *Capitol Recs., LLC v. Vimeo, LLC*, No. 14-1048 (2d Cir. June 16, 2016), Dkt. 268-2 ("Bill of Costs Instructions"). Plaintiffs' objections to Vimeo's typesetting costs are thus overruled.[26]

[26] Though the Second Circuit's fee schedule sets maximum allowable costs per page for "[r]eproduction," the Court does not understand the fee schedule to set a limit on the allowable costs of preparing a document for printing in the first instance, an "analogous" cost permitted by the Second Circuit. *Phansalkar*, 356 F.3d at 190; *Young*, 951 F.2d at 510.

Second, Plaintiffs object to the inclusion of "paralegal hours" for "labor by the printer's staff in connection with preparing printed materials" at non-overtime rates. Defs. Bill of Costs Repl. at 4–5; *see* Pls. Bill of Costs Opp'n at 1–2. The Court views the printer's reasonable labor costs as a "cost of traditional typesetting and printing" that is recoverable. *PepsiCo*, 720 F.2d at 747; *see also In re Penn Cent. Transp. Co.*, 630 F.2d 183, 191 (3d Cir. 1980) (noting that "taxable expenses are deemed to include reasonable labor"); *cf.* Bill of Costs Instructions at 1 (directing that a party should not include "overtime" charges). For the same reasons, Plaintiffs' objection to Vimeo's charged costs of the printer's labor is overruled.[27] And third, Plaintiffs appear to object to Vimeo's inclusion of the cost to reproduce a CD-ROM exhibit included in the Joint Appendix, totaling $125.00. *See* Defs. Bill of Costs Repl. at 5. This objection is also overruled. Because the CD-ROM was part of the Joint Appendix, this cost is fairly included in the taxable costs of preparing the same.

This result would be the same under new Rule 39: Vimeo is entitled to all three line items to which Plaintiffs object, as they are all fairly part of the costs of "the production of necessary copies of a brief or appendix." Fed. R. App. P. 39(e). Accordingly, the Court finds that Vimeo is entitled to the full $16,461.70 it sought in its Bill of Costs.

## CONCLUSION

For the foregoing reasons, Vimeo's motion for attorneys' fees is denied. Furthermore, Plaintiffs' objections to Vimeo's bill of costs for its interlocutory appeal are overruled. Vimeo is awarded $16,461.70 in costs as a prevailing party under Federal Rule of Appellate Procedure 39.

[27] Plaintiffs do not object to the rates paid by Vimeo for labor and typesetting services in its Bill of Costs, and so the Court does not consider whether these rates impermissibly "exceed that generally charged for such work in the area where the clerk's office is located." Fed. R. App. P. 39.

The Clerk of Court is respectfully directed to terminate the motion pending at Docket No. 251 in Case No. 09-CV-10101 and Docket No. 241 in Case No. 09-CV-10105.

SO ORDERED.

Dated: September 3, 2026
New York, New York

Ronnie Abrams
United States District Judge